LAW OFFICES OF
JEFFREY B. PINE ESQ.
A PROFESSIONAL CORPORATION

COPY

Jeffrey B. Pine
*Attorney General 1993-1999*

Harris K. Weiner
*Of Counsel*

321 South Main Street, Suite 302, Providence, RI 02903
TELEPHONE 401.351.8200 FAX 401.351.9032
www.pinelaw.com

*Attorneys are admitted in Rhode Island and Massachusetts*

December 16, 2004

Thomas Carlotto, Esq.
Schechtman Halperin Savage, LLP,
86 Weybosset Street Suite 2
Providence, RI 02903

*Re: United States of America v. Moneta Capital Corporation, C.A. 99-565-L United States District Court, District of Rhode Island*

Dear Mr. Carlotto:

Enclosed please find the Petition of Peter M. Scotti and Associates, Inc., to Receiver for Real Estate commission in connection with the above-referenced matter. As you know, Judge Lagueux instructed Peter M. Scotti and Associates, Inc. to petition the receiver prior to seeking redress with the Court. A determination can be made by the SBA based on the Petitions, affidavits and attachments thereto so that the parties can decide whether to proceed in the federal court. To date, the SBA has not responded to any of the demands for the commission earned as submitted by the bankruptcy trustee and by Mr. Scotti. Kindly respond to this petition in a timely and substantive fashion. Thank you for your attention to this matter.

Sincerely yours,

Harris K. Weiner

Cc: Peter M. Scotti, MAI

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No.: 99-565L** |
| **Plaintiff** | ) | |
| **vs.** | ) | |
| **MONETA CAPITAL CORPORATION** | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

**PETITION OF PETER M. SCOTTI & ASSOCIATES, INC. TO RECEIVER FOR REAL ESTATE COMMISION**

Pursuant to the instructions of the United States District Court for the District of Rhode Island overseeing the above-referenced receivership, and in view of the imminent private sale of the relevant property, petitioner Peter M. Scotti & Associates, Inc. ("Scotti") hereby repeats its demand for a real estate commission, or alternatively, acknowledgement of Scotti's earned commission and confirmation that it will be paid upon the pending sale to Vanderbilt Capital, LLC, and formally petitions the Small Business Administration as Receiver for Moneta Capital Corporation for a prompt substantive response and ruling on the claim.

**Introduction**

Scotti was the procuring and efficient cause of the currently pending sale of Rocky Point to Vanderbilt Capital, LLC for twenty-five million dollars ($25,000,000). Scotti, upon information and belief, was the only real estate broker involved in the transaction. Scotti marketed the property to agents of Vanderbilt Capital, LLC including its manager, Arnold Goodstein and its

co-venturer, Toll Brothers. The Receiver, the Small Business Administration (the "Receiver" or "SBA"), knew about Scotti's engagement and marketing efforts at all pertinent times before and during the existence of the receivership. Notwithstanding this knowledge, however, the SBA and the buyer, Vanderbilt Capital, LLC, falsely represented to the district court that no real estate broker was involved in this transaction. See Purchase and Sales Agreement at paragraph 32. In fact, the SBA'S counsel (Arlene Embrey, Esq.) and local counsel (Thomas Carlotto, Esq. of Schechtman Halperin Savage, LLP) were aware of Scotti's delivery of professional services under the auspices of the Bankruptcy Court and thereafter for the benefit of the Receiver. The Moneta Capital Corporation receivership has benefited from Scotti's professional services in cultivating this buyer and generating price competition among Scotti's many identified prospective buyers, which included Goodstein and Toll Brothers. Scotti is the legally efficient cause of this proposed sale. It would be grossly inequitable to deny this procuring agent the value of its services.

## Background

Peter M. Scotti is the principal of Peter M. Scotti & Associates, Inc., a Providence, and Rhode Island real estate brokerage and appraisal firm. Scotti Affidavit paragraph 1. Mr. Scotti received his Rhode Island real estate sales license in 1974 and has been a licensed Rhode Island real estate broker since 1988. Scotti Affidavit paragraph 2. He was engaged by the Federal Bankruptcy Trustee in February 1999 to provide professional real estate brokerage services for <u>In re: C.R. Amusements, LLC</u>, BK 99-10157, District of Rhode Island. Scotti Affidavit paragraph 3.

With the Bankruptcy Court's approval, Mr. Scotti and his staff spent hundreds of hours marketing the bankrupt's principal asset, the Rocky Point property in Warwick, Rhode Island which included Warwick Assessors Plat 79, Lot 8, 9, 158, 159, 425, 426, and 425, Plat 380, Lot 1, and Plat 381, Lots 38, 39, 40 and 41 ("Rocky Point"). Scotti Affidavit paragraph 4. The bankruptcy was subsequently converted to a federal receivership in the name of Defendant Moneta Capital Corporation, which was the majority owner of C.R. Amusements, LLC. The current receiver, Small Business Administration (SBA), was a major creditor of C.R. Amusements, LLC.

From April 1999 to July 2003, Scotti aggressively marketed the 124-acre Rocky Point property. These efforts included, but were not limited to, researching the property, developing marketing packages, identifying prospects, soliciting prospects, coordinating negotiations between prospects and local government officials regarding permitting, targeting mailings and advertisements, serving as an information clearing house, showing the property to prospects, negotiating terms, attempting to orchestrate an auction under the auspices of the Bankruptcy Court, serving as a liaison to the Bankruptcy Court Trustee. Scotti Affidavit paragraph 5.

All these actives were undertaken with the knowledge of the Small Business Administration. Scotti Affidavit paragraph 6. Richardson Affidavit paragraph 4.

Scotti's marketing strategy included development of a prospects list and efforts to identify the best prospects and to generate competition among them. Scotti Affidavit paragraph 7.

Prior to the auction, several of Scotti's prospects, through Mr. Scotti, made offers for as much as $12.5 million dollars, but the Small Business Administration's prohibitive conditions, including a non-refundable $500,000 deposit, frustrated any such sales. Scotti Affidavit paragraph 8.

The receiver decided however, to conduct its own auction in July 2003. On July 8, 2003, Mr. Scotti worked with the Receiver's auctioneer, M.C. Ponte Jr. of Irving Schechtman and Company Inc., and provided him with Scotti's prospect list, attached hereto to the Scotti Affidavit. Arnold Goodstein and his local representative, Frank Caprio Esq., were included on the list. So too were Toll Brothers who were working jointly with Goodstein. Scotti Affidavit paragraph 10. In July 2003, the receiver conducted an auction at which the Small Business Administration purchased the property for $8.5 million.

On or about November 4, 2002, outside Judge Lagueux's courtroom immediately after a receivership proceeding, Arlene Embrey, Esq. of the Small Business Administration assured Mr. Scotti that he would be paid for his services if one of his prospects was a successful buyer. Thomas Carlotto, Esq., the SBA'S local counsel, was at the same meeting and also independently acknowledged Scotti's services and assured him of payment. Bankruptcy Trustee Andrew Richardson also attended the meeting and inquired about Scotti's fees. Scotti Affidavit paragraph 12. Richardson Affidavit paragraphs 5,6.

The SBA was aware of Scotti's extensive activities on behalf of the Bankruptcy Trustee and for the benefit of the creditors. Richardson Affidavit paragraph 4. The SBA encouraged and accepted Scotti's continued professional services even after the bankruptcy was converted to a

federal receivership. Id. The SBA encouraged Scotti to submit a list of his prospects to protect his fee. Richardson Affidavit paragraphs 5-7.

On April 18, 2003 Bankruptcy Trustee Andrew Richardson wrote to Arlene Embrey, Esq. of the SBA with a copy to Schechtman Halperin Savage, LLP notifying the SBA of Scotti's claim for payment. Scotti Affidavit paragraph 13. Richardson Affidavit paragraph 10. Neither the SBA nor Schechtman Halperin Savage, LLP responded to that letter. Scotti Affidavit paragraph 15, Richardson Affidavit paragraph 11. On April 7, 2004, Scotti directly notified the SBA, the Department of Justice and the Receiver's agent, Stephen Jones, of Scotti's claim by letter detailing the basis for the earned commission. Scotti Affidavit paragraph 14. Scotti received no response to that claim.

In May 2004 Scotti learned of the SBA's intention to file a Purchase and Sales Agreement with the United States District Court. Upon review and the discovery that the Purchase and Sales Agreement at paragraph 32 improperly and inaccurately disavowed any real estate agent or broker involvement in the proposed sale, Scotti moved to intervene in the receivership.

In a ruling on September 8, 2004 Senior Judge Lagueux of the United States District Court denied Scotti's motion to intervene but instructed Scotti to petition the SBA, for determination of the fee, subject, if necessary to review and an evidentiary hearing by the District Court. Thus, this petition seeks a determination by the SBA as receiver for Moneta Capital Corporation of Scotti's entitlement to an earned real estate commission on the sale of Rocky Point.

**Discussion**

"It the well-settled rule of law that when a broker is the effective agent in bringing about a sale or, stated otherwise, if he is the procuring cause, that is, a sale results from his efforts or negotiations, he is entitled to a commission even though the sale was actually accomplished through other persons." Gettler v. Caftier, 165 A.2d 730 (R.I. 1960). "That such a broker was the effective agent, or the procuring cause, may be established by showing that he was the first broker to interest the prospective purchaser in the property, that he caused such purchaser to inspect or view the property, that he conducted negotiations concerning a sale thereof." Kirby vs. Weiler, 276 A2d 285 (R.I. 1971). These indicia of procuring cause are all present in Scotti's claim.

In this dispute, the contract between the SBA and Scotti is implied-at-law and enforceable. The services were provided by Scotti to the Receiver under circumstances that gave the SBA reason to understand what that they were performed on its behalf and gave the SBA notice that these services were not gratuitous. Scotti acted upon the SBA's instruction to present a list of prospects that Scotti had developed over more than four years and hundreds of hours of professional labor. The SBA continued to accept Scotti's services and reaped the benefit of those efforts. See Smith v. Boyd, 553 A.2d 131 (R.I. 1989) (court shall look to external interpretation of parties' interest as manifested by their actions in determining whether a contract has been formed); See also, The Fred Ezra Co. v. Theodore Pedro et al., 682 A.2d 173 (D.C. App. 1996) (recognizing viability of implied in-fact contract for real estate broker's commission). Thus, as a matter of law, Scotti is entitled to its commission.

It would also be grossly inequitable to unjustly enrich the receivership by avoiding payment of Scotti's earned fee. See, Rustigian v. Celona, 478 A.2d 187 (R.I. 1984). The Small Business Administration, the local counsel and the buyer have known about Scotti's claim throughout this litigation but have chosen to ignore Scotti's earned commission. Furthermore, both the Small Business Administration and its counsel assured Scotti his fee would be paid, only to contradict these representations in the submitted Purchase and Sales Agreement. As a matter of equity, Scotti's claim is warranted under principles of promissory estoppel, reliance and unjust enrichment.

Estoppel is an equitable doctrine that will bar a party from denying liability when the party makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance and when injustice can only avoided by enforcing the promise. General Accident Ins. Co. of America v. American Nat. Fireproofing, Inc., 716 A.2d 751 (R.I. 1998).

In the Scotti claim, the SBA's authorized personnel made representations in the courthouse to Peter Scotti and Andrew Richardson promising to honor Scotti's fee if one of his prospects purchased Rocky Point. Arlene Embrey and Thomas Carlotto encouraged Scotti to list his prospects and they knew he was continuing to market the property for the benefit of the Receiver. Scotti reasonably relied on the promise, one of his prospects has agreed to purchase Rocky Point, and the receivership will be unjustly enriched at Scotti's expense unless the commission is paid.

" A quasi-contract, or constructive contract, is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In this respect, the terms "unjust enrichment" and "restitution" are modern designation for the doctrines of "quasi-contract" and the basis for an action for unjust enrichment lies in a promise, which is implied in law, that one will pay to the person entitled thereto which is equity and good conscious is his. 17 C.J.S. Contracts § 6." Magnolia Federal Savings & Loan Assoc. v. Randall Craft Realty Co., Inc., 342 So. 2d 1308, 1311 (Miss. 1977) (awarding a realtor's fee from an inference of a promise).

Quantum merit arises out of the need to avoid unjust enrichment. The elements of proof are: (1) defendant was benefited, (2) the defendant unjustly failed to pay the plaintiff for the benefits, and (3) the failure of payment was to the plaintiff's detriment. Alliance Partners, Inc. v. Voltare Technologies, Inc., 2001 Conn. Super. LEXIS 1431 (awarding an unlicensed broker its fee for the value of services provided in sale of property even absent required writing). See also Palmer v. Daraz, 1998 Conn. Super. LEXIS 488 (even if a different entity than the realtor's prospect purchases listed property, a commission is due when the buyer and the prospect have a common principal).

In the current controversy, under the equitable principles outlines above, a commission is due even if *arguendo*, the Statue of Frauds is not satisfied, there is no written contract or express promise and the buyer is different from but related to the realtor's prospect.

Consequently, as a matter of law and equity, Scotti's entitlement to the standard broker's fee must be acknowledged and affirmed by the Receiver and paid upon sale of the property to Scotti's prospect.

Respectfully submitted,

[signature]

Harris K. Weiner, Esq. # 3779
Law Office of Jeffrey B. Pine, P.C.
321 S. Main St. – Suite 302
Providence, RI 02903
Tel: 401-351-8200
Fax: 401-351-9032

**CERTIFICATION**

I, Leslie Ann Odom, hereby certify that on this 16 day of December 2004 a true copy of the foregoing *Petition of Peter M. Scotti &Associates, Inc., to Receiver for Real Estate Commission* was mailed, postage pre-paid to Thomas Carlotto, Esq., Shechtman Halperin Savage, LLP, 86 Weybosset Street Suite 2 Providence, RI 02903.

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No.: 99-565L** |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| **MONETA CAPITAL CORPORATION,** | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## AFFIDAVIT OF PETER M. SCOTTI

I, Peter M. Scotti, upon oath, do depose and swear as follows:

1. I am the president and owner of Peter M. Scotti & Associates, Inc., a Providence Rhode Island real estate sales, brokerage and appraisal firm which was established in 1988.

2. I received my Rhode Island real estate sales license in 1974 and have been a licensed real estate broker in Rhode Island since 1988 and hold the Appraisal Institute MAI designation. An accurate copy of my *curriculum vitae* is attached as Exhibit 1.

3. My firm was engaged in February 1999 by the federal bankruptcy trustee to provide professional real estate brokerage services for <u>In re: C. R. Amusements, LLC.</u>, BC 99-10154, District of Rhode Island. See Exhibit 2 attached hereto.

4. With the Bankruptcy Court's approval, I marketed the bankruptcy's principal asset, the Rocky Point property in Warwick, Rhode Island which included

Warwick Assessor's Plat 379, Lots 8, 9, 158, 159, 425, 426 and 425, Plat 380, Lot 1, and Plat 381, Lots 38, 39, 40 and 41.

5. I aggressively marketed the property from April 1999 through July 2003. These efforts included, but were not limited to, researching the property, developing marketing packages, identifying prospects, soliciting prospects, coordinating negotiations between prospects and local government officials regarding permitting, targeting mailings and advertisements, service as the information clearing house, showing the property to prospects, negotiating terms, attempting to orchestrate an auction under the auspices of the Bankruptcy Court and serving as a liaison to the Bankruptcy trustee.

6. All these activities were undertaken with the knowledge of the Small Business Administration which was a major creditor.

7. As part of my marketing strategy, I took steps, including but not limited to an attempt to conduct an auction under the auspices of the Bankruptcy Court, to identify the best prospects and generate competition among them.

8. Prior to the auction, several of my prospects, through me, offered as much as $12.5 million, but the Small Business Administration's prohibitive conditions, including a non-refundable $500,000 deposit, frustrated any such sales.

9. At the suggestion of Attorney Arlene Embry, Esq. of the Small Business Administration and the SBA's local counsel, Thomas Carlotto, Esq. I wrote to the receiver's auctioneer, M. C. Ponte, Jr., of Irving Schechtman & Co., Inc. on July 18, 2003 and provided him with a list of my prospects prior to the auction. See Exhibit 3 attached hereto.

10. My prospects' list included Arnold Goodstein and his local legal representative, Frank Caprio, Esq. It also includes Toll Brothers who were working jointly with Goodstein and with whom I maintained regular contact.

11. In July 2003, the receiver conducted an auction at which the Small Business Administration purchased the property for $8.5 million.

12. On or about November 4, 2002, outside Judge Lagueux's chambers immediately after a receivership proceeding, Arlene Embrey, Esq. of the Small Business Administration assured me that I would be paid for my services if one of my prospects was the successful buyer. Thomas Carlotto, Esq. of Schectman Halperin Savage, LLP, the local counsel for the SBA was at the same meeting and also independently acknowledged my services and assured me of payment. Bankruptcy Trustee Andrew Richardson also attended the meeting and inquired about Scotti's fee.

13. On April 18, 2003, Bankruptcy Trustee Andrew Richardson wrote to Arlene Embrey of the Small Business Administration, with a copy to Schechtman Halperin Savage, LLP, notifying the Small Business Administration of my claim for payment. See Exhibit 4 attached.

14. On April 7, 2004, through my attorney, I again notified Attorney Embrey, the Small Business Administration, the Department of Justice and their agent, Stephen Jones, of my claim in a letter detailing the reasons I should be paid. See Exhibit 5 attached.

15. I received no response to either notice.

16. My staff and I spent hundreds of hours on the sale of Rocky Point and I have received no compensation to date.

17. I first learned that the Small Business Administration was filing a Purchase and Sales Agreement with Goodstein's firm on or about May 27, 2004. At that time the parties had misrepresented to the Federal Court that no real estate broker was involved in this transaction. I learned my services were not included in the proposed transaction.

18. No other party to the receivership represents my interests.

Signed under the pains and penalties of perjury this 3rd day of December 2004.

PETER M. SCOTTI

STATE OF RHODE ISLAND
COUNTY OF

Subscribed and sworn to before me this 3rd day of December, 2004.

NOTARY PUBLIC
My Commission Expires: 4/21/2005