IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MONETA CAPITAL CORPORATION<br><br>Defendant. | ) | Civil Case No. 99-565-L<br><br>Judge Lagueux |

**RECEIVER'S SUPPLEMENTAL OPPOSITION TO THE MOTION OF PETER M. SCOTTI AND PETER M. SCOTTI & ASSOCIATES FOR REAL ESTATE COMMISSION**

The United States Small Business Administration as Receiver (the "Receiver") for Moneta Capital Corporation hereby submits its Supplemental Opposition to the motion (the "Motion") of Peter M. Scotti and Peter M. Scotti & Associates, Inc. seeking payment of a real estate commission relative to the sale of property located in the City of Warwick and commonly known as Rocky Point. The Receiver's Supplemental Opposition is founded upon the statute of frauds under R.I.G.L. § 9-1-4 which prohibits an oral promise for the payment of a real estate commission. In further support of its Supplemental Opposition, the Receiver relies upon the Memorandum of Law filed contemporaneously herewith and incorporated herein by reference.

WHEREFORE, the Receiver respectfully requests that this Court sustain the Receiver's Objection to the Motion and deny the requested real estate commission.

Respectfully submitted,

Dated: September 20, 2005 By: ______________________

Preston W. Halperin, #5555
Shechtman Halperin Savage, LLP
As Attorneys for the Receiver of
Moneta Capital Corporation
86 Weybosset Street
Providence, RI 02903
Telephone: (401) 272-1400
Facsimile: (401) 272-1403

**CERTIFICATE OF SERVICE**

*I HEREBY CERTIFY*, that a true and correct copy of the foregoing Receiver's Supplemental Opposition To The Motion Of Peter M. Scotti and Peter M. Scotti & Associates For Real Estate Commission and Supporting Memorandum of Law was furnished via facsimile and U.S. Mail, postage pre-paid to the following counsel of record on this 20th day of September, 2005.

Harris K. Weiner, Esquire
Law Office of Jeffrey B. Pine, P.C.
321 South Main Street, Ste. 302
Providence, RI 02903

______________________

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 99-565-L** |
| | ) | |
| **MONETA CAPITAL CORPORATION** | ) | **Judge Lagueux** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**RECEIVER'S MEMORDUNDUM IN SUPPORT OF ITS SUPPLEMENTAL OPPOSITION TO THE MOTION OF PETER M. SCOTTI AND PETER M. SCOTTI & ASSOCIATES FOR REAL ESTATE COMMISSION**

In support of its Supplemental Response to the motion ("Scotti's Motion") filed by Peter M. Scotti and Peter M. Scotti & Associates, Inc. (together, "Scotti") seeking allowance of a real estate commission[1] in the above-captioned action, the United States Small Business Administration ("SBA") as Receiver ("the Moneta Receiver") for Moneta Capital Corporation ("Moneta") submits this Memorandum of Law. In the interest of brevity and because the Receiver is not asserting any new or additional facts, the Receiver has attempted to limit the factual background to only those facts which support the legal analysis herein.

[1] The document filed is entitled as "Appeal of Peter M. Scotti and Peter M. Scotti & Associates, Inc. from Receiver's Denial of Entitlement to Real Estate Commission" but appears to be in the nature of motion seeking an administrative claim for a real estate commission.

## BACKGROUND

After its appointment in February, 2000, the Receiver was made aware that Moneta held an interest in a syndicated loan ("the Loan") made to C.R. Amusements, LLC ("CRA"), which loan was collateralized by a mortgage on real property consisting of 124 acres in Warwick, Rhode Island ("the Property"). At the time of the Receiver's appointment, the Property was being administered by Andrew Richardson, the bankruptcy trustee appointed for CRA. In February, 1999, the Trustee engaged Scotti to "assist the trustee in selling the real estate owned by the debtor…" Trustee's Application to Employ Real Estate Broker, Exhibit 2 to Affidavit of Peter M. Scotti ("Scotti Affidavit"). Scotti asserts that from April 1999 to July, 2003, it marketed the Property and provided other related services "under the auspices of the Bankruptcy Court and serving as a liaison to the Bankruptcy trustee." Paragraph 5 of Affidavit of Peter M. Scotti. As to the Small Business Administration, Scotti alleges only that its activities "were undertaken with the knowledge of the Small Business Administration which was a major creditor." Paragraph 6, Scotti Affidavit.

By Scotti's own admission, while assisting the Trustee, the most he was able to secure as an offer for the Property was $12.5 Million Dollars, "but that the Small Business Administration's prohibitive conditions, including a non-refundable $500,000 deposit, frustrated any such sales." Scotti Affidavit, Paragraph 8. There is no dispute that Scotti did not submit an offer on behalf of any of its clients that was acceptable to the SBA. There should also be no dispute, that the Trustee's efforts and authority to sell the Property ceased on or about June 2, 2003, when the Bankruptcy Court allowed the Receiver's motion for relief from stay to conduct a foreclosure of the Property. Once the Trustee's authority to administer the Property ended, Scotti's engagement by the Trustee to assist in the sale of the Property necessarily ended as well.

Prior to obtaining relief from stay from the Bankruptcy Court in June, 2003, the Receiver sought and obtained leave from this Court in November, 2002 to seek relief in the bankruptcy case to foreclose its interest in the Property. It was after the November, 2002 hearing, that Scotti alleges that the SBA assured it of payment for his services if one of its prospects was the successful buyer. Scotti Affidavit, Paragraph 12. It is this verbal assurance that Scotti relies upon for the basis of its claim that it is entitled to a commission from the SBA's eventual sale of the Property. Following the purported statement to Scotti in November, 2002, the SBA conducted its foreclosure sale on or about July 29, 2003 (eight months after the "assurance" to Scotti). Having been the successful bidder at the July, 2003 foreclosure sale, the SBA subsequently conducted a private telephone auction of the Property on or about November 4, 2003, approximately one year after the "assurance" to Scotti. Scotti does not claim to have made any effort to market or sell the Property after the July, 2003 foreclosure sale. Scotti claims only that he supplied the SBA's auctioneer with a copy of his prospect list on or about July, 2003 and that he eventually learned that one or more of his prospects entered into a purchase and sale agreement with the Receiver. With no assistance from Scotti, the Receiver entered into two purchase and sale agreements for the Property in May, 2004.

## I. R.I. Gen Laws 1956 § 9-1-4(6) Bars Claims For Real Estate Commissions In The Absence Of A Signed Written Agreement

It is well established in Rhode Island that no action shall be brought to enforce a promise for the payment of a real estate commission unless the promise is in writing and signed by the party charged with paying the commission. Metro Properties, Inc. v. Yatsko, 763 A.2d 617, 620 (R.I. 2000). In other words, any claim by a broker for alleged commissions owed must be founded upon some writing that contains evidence of an obligation for the payment of same.

Dooley v. Lachut, 234 A.2d 366, 368 (R.I. 1967). This principle is set forth in the Rhode Island statute of frauds, R.I. Gen. Laws 1956 (1969 Reenactment) § 9-1-4, which provides, in relevant part, the following:

> No action shall be brought:
>
> ...* * *
>
> (6) Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate,
>
> unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized.

R.I. Gen Laws 1956 § 9-1-4 (6).

The legislature enacted §9-1-4(6) "for the purpose of protecting the public against the unfounded claims of a specific class of persons, namely, real estate brokers and agents." Heyman v. Adeack Realty Company, 228 A.2d 578, 580-81 (R.I. 1967). Brokers are "presumed to know that contracts for real estate commissions are invalid and unenforceable unless put in writing and subscribed by the person to be charged." Heyman, 228 A.2d at 582 (quoting Pacific Southwest Development Corp. v. Western Pacific R.R., 301 P.2d 825, 831 (Cal. App.2d 1956). Because of the nature of the abuse §9-1-4(6) seeks to protect against it must be strictly construed and applied against brokers. Dooley, 234 A.2d at 368.

The strict application of the directive in the statute of frauds that "[n]o action shall be brought," precludes claims in law or equity for commissions based on an oral agreement. Id. at 368. Claims founded upon estoppel, quantum meruit, performance, and part performance will not save a broker's claim from the bar provided in the statute of frauds. Metro Properties, Inc. v. Yatsko, 763 A.2d at 9 (rejecting brokerage commission claim founded in fraud and doctrines of equitable relief and implied or oral contract); Heyman, 228 A.2d at 582 (denying claim for

estoppel and quantum meruit); Dooley, 234 A.2d at 368 (denying claim for performance and part performance). In Heyman, the Supreme Court held that §9-1-4(6) acted as a complete bar to estoppel and quantum meruit claims because "the overriding public policy of the statute requires that it be strictly construed and enforced. To do otherwise would defeat the basic purpose of the statute." 228 A.2d at 581-82. In Dooley, the Supreme Court barred a claim for commissions based on theories of performance or part performance and held that a contrary holding "would completely frustrate the legislature's intent to protect the public and thereby render ineffective the very purpose for which the sixth clause of the statute was enacted." Dooley, 234 A.2d at 368. Even a broker's claims of fraud or deceit provide no refuge from the strict requirement of a written agreement for commissions. Metro Properties, Inc. v. Yatsko, supra; Dooley, supra. In so holding, the Supreme Court provided the following warning:

> Real estate brokers who enter into oral agreements in contravention of clause sixth of our statute of frauds can expect no assistance from the courts in their effort to extricate themselves from their own folly. If a real estate broker fails to obtain a written contract of employment from his customer, he proceeds at his own peril.

Id. at 368.

There is no dispute that Scotti was never engaged in writing by the Receiver as a real estate broker. Scotti has provided no contracts, documents, or other materials other than a list of prospects to support his claim to a real estate commission. There is also no dispute that Scotti and the Receiver never discussed or agreed to any specific amount of a commission nor any specific terms under which Scotti would be compensated. As no written agreement exists between the parties, Scotti's claimed commission is barred by the statute of frauds unless he can meet the singular exception set out by the Rhode Island Supreme Court in Adams-Riker, Inc. v. Nightingale, 383 A.2d 1042, 1044-45 (R.I. 1978). *See* Section B, below.

**B. Unless the Receiver Admits the Existence Of A Commission Agreement, Scotti's Claims Must Fail.**

The Rhode Island Supreme Court has created one exception to the requirement that a contract for a real estate commission must be in writing. If the party to be charged admits in a pleading or on the witness stand that an oral agreement exists, and its essential terms defined, then the condition that there be a "writing" is satisfied under the statute of frauds. Adams-Riker, Inc. v. Nightingale, 383 A.2d 1042, 1044-45 (R.I. 1978).

Scotti asserts that it was assured of a commission if one of its prospects purchased the Property. Contrary to Scotti's assertions, the Receiver claims that the only discussion with Scotti took place in November 2002, months prior to the foreclosure sale at which time the Receiver told Scotti that it would pay it an unspecified amount of compensation in the event that its efforts resulted in one of its clients purchasing the Property as a result of its Scotti's efforts. The Receiver denies that it agreed to compensate Scotti in the event that a potential prospect with whom Scotti had contact was the ultimate buyer of the Property, nor was there any discussion of a commission being paid as a result of an auction following the foreclosure sale. Under Rhode Island law, the Receiver's denial of an oral agreement to pay a commission to Scotti is dispositive of Scotti's claims. "In the absence of such an admission, there is no substitute for complete compliance with the requirements of § 9-1-4 [the statute of frauds]." Robert MacKnight et al v. Antoinette Pansey, et al, 122 R.I. 774, 786; 412 A.2d 236 (1980).

Regardless of whether this Court accepts Scotti's or the Receiver's version of the discussion regarding a commission being paid by the Receiver to Scotti, as a matter of law, Scotti's claims are barred by the Statute of Frauds. The Receiver does not admit to having made an agreement to pay Scotti in the event that a "prospect" was the ultimate buyer. In addition the essential terms of the purported brokerage agreement (most notably the amount of a commission)

with the Receiver were never agreed discussed or agreed upon. See Peacock Realty Company v. E. Thomas Crandall Farm, Inc., 108 R.I. 593; 278 A.2d 405 (1971) (written agreement, along with judicial admission as to the amount of commission held to satisfy statute of frauds). Without an agreement in writing or via judicial admission as to the amount of its compensation, Scotti cannot prevail as a matter of law. Id. Moreover, to the extent that Scotti relies on equitable theories such as estoppel, reliance, unjust enrichment and quantum meruit, Rhode Island law is clear that such theories cannot form the basis of any recovery of a real estate commission. Heyman v. Adeack Realty Company, 228 A.2d 578, 580-81 (R.I. 1967); Dooley v. Lachut, 234 A.2d 366, 368 (R.I. 1967).

## CONCLUSION

Because Scotti's allegations for commissions owed are made without evidence of either (1) a signed written agreement, or (2) an admission by the Receiver affirming the existence of an oral agreement and the essential terms thereof, R.I. Gen Laws 1956 § 9-1-4 (6) bars Scotti's claim for commissions.

Respectfully submitted,

Dated: September 20, 2005

Preston W. Halperin, #5555
Shechtman Halperin Savage, LLP
As Attorneys for the Receiver of
Moneta Capital Corporation
86 Weybosset Street
Providence, RI 02903
Telephone: (401) 272-1400
Facsimile: (401) 272-1403