# PARTICIPATION AGREEMENT

This Participation Agreement (the "Agreement") is entered into on ~~September~~ November 25, 1991, between Fairway Capital Corporation, a federally licensed Small Business Company under the Small Business Investment Act of 1958, having its offices at 99 Wayland Avenue, Providence, Rhode Island 02906 ("Lender") and Nancy Troy Lovett, having a mailing address at 64 Boylston Street, Providence, Rhode Island 02906 (the "Participant").

## RECITALS

The Lender has entered into a term loan agreement with Rocky Point Amusements, Inc., Captain Rocky, Inc., Rocky Point Amusements Corporation, Cliff House, Inc., and Kiddy-Park, Inc., each a Rhode Island corporation (the "Borrowers"), pursuant to which the Lender has agreed to make a Loan (as defined below) to the Borrowers in the amount of Five Million Dollars ($5,000,000). Participant has agreed to buy from Lender and Lender has agreed to sell to Participant an interest in the Loan, upon the following terms and conditions.

NOW, THEREFORE, the parties hereto, in consideration of the terms and conditions hereof, each agreeing to be legally bound hereby, agree as follows:

## SECTION 1. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meanings set forth below:

1.1 "Collateral": shall mean all collateral security for the loan now or hereafter granted pursuant to and as evidenced

by the Loan Documents, including but not limited to guaranties and real estate mortgages.

1.2 "Collections": shall mean all amounts received by Lender in repayment of principal or interest on the Loan and in repayment of fees and expenses, whether received from the Borrowers or as proceeds of the Collateral or otherwise received. All Collections shall be held by Lender in trust for all Preferred Participants and all Junior Participants.

1.3 "Junior Participation Amount": shall have the meaning set forth in Section 3.1(a) hereof.

1.4 "Junior Participant": shall mean the holder of a Junior Participation Amount.

1.5 "Junior Interest Rate": shall have the meaning set forth in Section 3.1(a) hereof.

1.6 "Loan": shall mean the Five Million Dollar ($5,000,000) loan to the Borrowers under the Loan Documents.

1.7 "Loan Documents": shall mean those documents set forth on Exhibit A hereto and incorporated herein by reference, as the same may be modified or amended.

1.8 "Participant's Investment": shall mean a sum equal to the total of the purchase price paid by the Participant for participation in the Loan less all amounts paid or credited by the Lender to Participant of Collections pursuant to this Agreement.

1.9 "Participation Percentage": shall mean Participant's undivided fractional interest in the Loan, Collateral and Collections, in the proportion that the Participant's Investment bears to the principal balance due to the Lender

from the Borrowers under the Loan Documents.

1.10 "Preferred Interest Rate": shall have the meaning set forth in Section 3.1(a) hereof.

1.11 "Preferred Participation Amount": shall have the meaning set forth in Section 3.1(a) hereof.

1.12 "Preferred Participant": shall mean the holder of a Preferred Participation Amount.

1.13 "Pro Rata": shall mean, when used to indicate the basis upon which a payment or expense shall be shared among other participants in the Loan, a fraction, the numerator of which shall be the then-outstanding principal amount of the Junior Participation Amount or Preferred Participation Amount, as applicable for such participant, and the denominator of which shall be the then-outstanding principal amount of all Junior Participation Amounts or each Preferred Participation Amounts, respectively.

SECTION 2. SALE OF PARTICIPATION

Contemporaneously with the execution of this Agreement, Lender sells to Participant and Participant buys, without recourse, from Lender a participation, for the purchase price of Six Hundred Fifteen Thousand Dollars ($615,000.00).

Such participation hereby is designated as a "Preferred Participation Amount" and shall be treated as such for all purposes hereunder.

SECTION 3. PRINCIPAL, INTEREST, ETC.

3.1 The Preferred Particpation Interest.

(a) Participant acknowledges that Lender has sold participation interests in the Loan, certain of which interests in the aggregate amount of Two Million Dollars ($2,000,000) are each designated as a "Preferred Participation Amount" and which each such holder of a Preferred Participation Amount shall receive priority treatment, on a Pro Rata basis with each other Preferred Participant, in accordance with the terms and conditions herein specified. Any participation interest not designated as a Preferred Participation Amount shall be designated, and treated for all purposes hereunder, as a "Junior Participation Amount". Interest on each Preferred Participation Amount is payable at a fixed annual rate of twelve and one-half percent (12.5%) (the "Preferred Interest Rate"). Interest on the Junior Participation Amount is payable at a fixed annual rate of fifteen and one-half percent (15.5%) (the "Junior Interest Rate"). In addition, each Junior Participant shall receive the Excess Interest Amount in accordance with Section 3.1(c) hereof.

(b) Subject only to Section 5.2 hereof, the Participant agrees that any payments paid to the Lender by the Borrowers in connection with the Loan, whether regularly scheduled payments or in the event of prepayment or upon acceleration or otherwise, shall be received and held by Lender

in trust for the Preferred Participants and the Junior Participants, and shall be applied and paid in the following order:

First, to the Preferred Participants, on a Pro Rata basis, until all accrued but unpaid interest at the Preferred Interest Rate on the Preferred Interest Amount is paid in full;

Second, to Lender and all other Junior Participants, on a Pro Rata basis, until all accrued but unpaid interest at the Junior Interest Rate and any unpaid Excess Interest Amount on their respective participations in the Loan is paid in full;

Third, to the Preferred Participants, on a Pro Rata basis, until the entire principal amount of the Preferred Participation Amount is paid in full; and

Fourth, to Lender and all other Junior Participants, on a Pro Rata basis, until the entire principal of their respective Junior Participation Amounts, and any prepayment premium thereon is paid in full.

(c) Lender shall pay to each Junior Participant a Pro Rata share (among the Lender and all other Junior Participants in the Loan) of each interest payment made by the Borrowers to the Lender equal to the difference between: (a) the amount of each such payment received from the Borrowers; and (b) the amount of each such payment payable to all of the Preferred Participants pursuant to Section 3.1(a) hereof (the "Excess Interest Amount"). Prior to any payment to any Junior Participant in respect of a prepayment premium, Lender shall be entitled to thirty percent (30%) of any such prepayment premium

paid by the Borrowers, and all Junior Participants, including Lender, shall share Pro Rata in the remaining seventy percent (70%) of any such prepayment premium. The Preferred Participants shall not share with the Junior Participants in any Excess Interest Payment or any prepayment premium payable under the Loan Documents.

3.2 Interest Rate and Distributions. Out of any amounts received by Lender as charges or interest on the Loan, Lender shall transmit to Participant as Participant's sole share thereof, subject to Sections 3.1(b) and 5.2 hereof, an amount equivalent to interest computed upon Participant's Investment at the Preferred Interest Rate (if Participant is designated as a Preferred Participant herein) or at the Junior Interest Rate (if Participant is designated as a Junior Participant herein); provided, however, that if the Participant is designated herein as a Junior Participant, said Junior Participant agrees to pay to James Murphy, Esquire from the first interest payment otherwise payable to said Junior Participant a Pro Rata share of the legal fees and expenses for legal services of James Murphy, Esquire on behalf of the Preferred Participants in connection with the Loan. In no event shall Participant receive hereunder interest on its Participation Investment at a rate in excess of the interest rate received by Lender under the Loan Documents (as adjusted by the Lender's share of the Excess Interest). Such interest shall be paid by the Lender to

the Participant within a reasonable time after receipt by the Lender. Lender shall have the right to determine whether payments received by Lender from the Borrowers, other than regularly scheduled payments of principal and interest which are paid as and when due, relate to principal, interest or other charges payable by the Borrowers.

3.3 Lender's Title subject to Participant's Interest. The Loan, the Collateral, the Collections, and the charges or interest on the Loan shall be retained by Lender: (a) in its own name with respect to the Junior Participation Amount in the Loan owned by Lender; and (b) to the extent of Participant's interest therein, as agent of Participant, and subject to Participant's rights with respect thereto as herein set forth.

3.4 Costs and expenses. All reasonable and customary costs and expenses incurred by the Lender in monitoring, servicing and collecting the Loan, shall be borne by Lender and Participant Pro Rata in accordance with their respective participations to the extent not reimbursed by the Borrowers. Lender shall make a good faith effort to recover all such costs and expenses from Borrowers.

3.5 Books and Records. Lender will keep a record of all of the Loan and of the Collateral apart from its records of its other assets, appropriately so marked as to show the interest of the Participant therein; in recording the ownership of the Loan on its books and in all statements and reports as to its

condition and assets, Lender will include only such amount of the Loan and the Collateral as shall equal its own Junior Participation Amount therein.

SECTION 4. MANAGEMENT

4.1 Lender's Rights and Duties with respect to the Loan Documents; Participant's Rights and Obligations.

(a) Lender, without notice to the Participant, will have the sole right:

(i) to hold the Loan Documents; and

(ii) to manage, perform and enforce the terms of the Loan Documents; and

(iii) to exercise and enforce all privileges and rights exercisable or enforceable by it thereunder including without limitation:

1. Declaration of default;

2. Acceleration of the Loan;

3. Commencement of foreclosure action, or action in lieu of foreclosure, with respect to any collateral for the Loan;

4. Retention of legal counsel, accountants and other professionals as it determines appropriate, in accordance with prudent lending standards for the joint benefit of Lender and Participant, according to Lender's

discretion and the exercise of its business judgment.

(b) Lender may not, however, without the prior written consent of Participant: amend or modify the Loan Documents; or release from liability any party liable under any of the Loan Documents; or permit the substitution or withdrawal of Collateral; or permit any liens to become imperfected by virtue of the expiration of any applicable perfection periods.

(c) Lender will use its ordinary course of lending business prudence and judgment in the servicing and collection of the Loan and the realization upon the Collateral and in the carrying out of the terms and provisions of the Loan Documents.

(d) The Lender shall keep the Participant advised of any actions taken or forborne by the Lender (other than actions taken in the ordinary course of servicing a performing loan) and will consult with the Participant concerning such actions.

4.2 Examination of Books and Records. At any reasonable time during business hours, Lender will permit such agents as may be designated to it in writing by Participant to examine its books, records and accounts relating to transactions with the Borrowers and guarantors of the Loan, including without limitation all books, records and accounts relating to the Loan, and will from time to time, at the request of Participant, furnish to Participant such information as it may have or be able to obtain with respect to the Loan, the

carrying out of the provisions thereof and/or the condition and operations of the Borrowers and any guarantors of the Loan.

SECTION 5. LIQUIDATION AND COLLECTIONS

5.1 Events of Liquidation.

(a) Upon default by the Borrowers in the payment or performance of its obligations under the Loan Documents, Lender shall take such action which it is entitled to take under the Loan Documents or by law for the protection or realization of the Collateral or for the repayment of the Loan or the enforcement of any of the terms and provisions of the Loan Documents. Without limiting the generality of the foregoing, if the Borrowers are in default of their payment obligations to Lender for a period of seventy-five (75) or more consecutive days, Lender shall commence and diligently pursue the foreclosure and sale of all collateral security granted to Lender to secure the Loan. The foregoing to the contrary notwithstanding, Lender: (a) may discontinue such foreclosure and sale such default is cured during the pendency of such proceedings, and (b) shall defer such foreclosure and sale if directed in writing by each of the Preferred Participants.

(b) Any provision hereof to the contrary notwithstanding, any Collateral purchased by Lender at any foreclosure sale and not sold by Lender within two (2) years thereafter shall be transferred jointly to the Preferred Participants together with all rights of Lender remaining in

the Loan Documents, including without limitation, any deficiency claim against the Borrowers.

5.2 Application of Collections. Subject to Section 5.1(b) hereof, if Lender: declares the Borrowers in default under the Loan Documents; takes action to realize upon the Collateral or enforce Lender's rights against the Borrowers; exercises Lender's rights pursuant to the Loan Documents; or gives notice to Participant that it is treating the account as "in liquidation," THEN all Collections thereafter shall be received and held by Lender in trust for the Preferred Participants and the Junior Participants and shall be applied and paid in the following order:

(a) First to Lender on a Pro Rata basis until all expenses incurred by Lender are paid in full;

(b) Second, to the Preferred Participants on a Pro Rata basis until all accrued interest at the Preferred Interest Rate on the Preferred Participation Amount is paid in full;

(c) Third, to the Preferred Participants on a Pro Rata basis until all principal of the Preferred Participation Amount is paid in full;

(d) Fourth, to Lender and all other Junior Participants, on a Pro Rata basis, until all accrued but unpaid interest on their respective participations in the Loan is paid in full; and

(e) Fifth, to Lender and all other Junior Participants, on a Pro Rata basis, until all principal of their respective participations in the Loan is paid in full.

SECTION 6. REPURCHASE

At any time Lender shall have the option to repurchase from Participant its participation in the Loan at a price equal to the balance of:

(i) the sum of (a) Participant's Investment then outstanding, plus (b) Participant's share of all charges or interest earned but undistributed on the Loan to such date, minus

(ii) Participant's share of all outstanding expenses thereunder to such date.

If Lender exercises its option as aforesaid, upon payment thereof this Participation Agreement shall terminate for all purposes and each of the parties will be relieved of any liability to the other arising from any prior transactions hereunder.

SECTION 7. REPRESENTATIONS, WARRANTIES AND LIMITATIONS ON LIABILITY, DUTY AND RIGHTS

7.1 Limitations on Lender's Duties. The Lender shall have no duties or responsibilities with respect to the Participant except as expressly set forth in this Agreement and shall not,

by reason of this Agreement or otherwise, have any implied duties to or fiduciary relationship with the Participant.

7.2 Limitations and Acknowledgements regarding Lender's Liability and Representations; Lender's and Participant's Representations and Warranties.

(a) Limitations on Liability. Any other term or provision hereof to the contrary notwithstanding:

(i) the Lender shall not be liable to the Participant for any action taken or omitted or for any error in judgment, except for its own bad faith or wilfull misconduct under the Loan Documents or hereunder or any of the transactions covered thereby;

(ii) the Lender does not assume and shall have no responsibility or liability, express or implied, for the repayment price of the Participant's Investment, the repayment of any sum, the collectibility, enforceability, genuineness or validity, priority or the financial condition of the Borrowers or continued solvency thereof or of any obligor pursuant to the financing documents, or the accuracy of any credit or other information furnished by the Borrowers to the Lender, or the continued existence, sufficiency or value of any Collateral. The Participant acknoweldges that it is relying on the opinion of the Borrowers' counsel: (A) that the Loan Documents are good and valid instruments, binding upon and enforceable against the Borrowers and any guarantors, and constitute valid liens on the Collateral; (B) that upon execution and delivery

of the Loan Documents by Borrowers and Lender, no default will exist thereunder; and (C) that the Borrowers are not aware of any material information that has not been disclosed to the Participant and that might affect the decision of a prudent and reasonable lender to enter into this Agreement.

(b) Participant's Acknowledgements, Representations and Warranties.

The Participant acknowledges all of the foregoing and further acknowledges that being fully familiar with all of the details of the Loan Documents, Participant approves of all of the Loan Documents and all transactions reflected therein. Participant acknowledges that having reviewed the Loan Documents listed on Exhibit A annexed hereto and that having had (i) access to all of the records of the Borrowers and Lender as Participant wished to have had, and (ii) an opportunity to make such inquiry of Borrowers as to their financial condition and the arrangements between Borrowers and Lender, and, inquiry of Lender in connection therewith to the extent Participant feels necessary or appropriate. The Participant represents and warrants that Participant has made an independent evaluation of the underlying credit, and the existing value and lien status of the Collateral. The Participant further represents and warrants that Participant has received the Lender's explanation of and is satisfied with the Lender's customary practice in handling, supervising and

controlling loans and collateral of the type similar to the Loan and the Collateral; and that the execution hereof has been duly authorized.

(c) Lender's Representations and Warranties. The Lender represents and warrants to the Participant:

(i) that it has unencumbered ownership of the Loan documents and the authority to sell the Participation Percentage in the Loan and that any required consents from the Borrowers and any guarantors of the Loan have been obtained;

(ii) that it will continue to maintain the perfection and priority of all liens granted it pursuant to the Loan Documents;

(iii) that it will in the future promptly furnish the Participant with copies of all financial and other data it receives from the Borrowers and the guarantors and that it has the authority to furnish such financial information to Participant;

(iv) that it will continuously provide the Participant with prompt notification of the following to the extent that the Lender has actual notice thereof:

(1) any material adverse change in any of the Borrowers' financial condition;

(2) any change in the perfection or priority of the lien status or material change in value of the Collateral or change in the status of any Collateral or insurance relating thereto;

(3) any request by the Borrowers or the Lender to alter the terms of the Loan or release or substitute Collateral or any obligor of the Loan;

(4) any payment failure and the occurrence of any event of default or condition which on notice or passage of time or both could become an event of default; and

(5) any information required from the Borrowers under the Loan Documents, as well as, upon request of the Participant, copies of records reflecting payments on the Loan, or any other information in the Lender's possession bearing on the Borrowers' credit-worthiness and the value and lien status of the Collateral.

The Lender makes no representations or warranties, express or implied, except as set forth in this Agreement.

7.3 General Purchase Representations. Nothing herein contained shall confer upon Lender or Participant any interest in, or subject Lender or Participant to any liability for, the assets or liabilities of the other except only as to the Loan in which participant is participating with Lender hereunder. Participant represents that it is entering into this Agreement and is purchasing the participation for its own account.

SECTION 8. MISCELLANEOUS

8.1 Acknowledgement of Senior Debt. Participant acknowledges that in consideration of the Lender making the Loan without requiring the Borrower to pay certain other pre-existing indebtedness of the Borrowers in the aggregate principal amount of Three Hundred Ninety-Five Thousand Dollars ($395,000) in full, and discharge the mortgages securing repayment thereof, the Borrowers have agreed to pay to the Lender all principal, interest in advance and other charges due and payable with regard to the such indebtedness. Anything contained herein to the contrary notwithstanding, the Lender, at its discretion, may pay any holder of such senior indebtedness on account of such senior indebtedness prior to making payments to any Participant required under this Agreement.

8.2 Successors and Assigns; Controlling Law; Amendment. This Participation Agreement shall be binding upon and shall enure to the benefit of the respective successors and permitted assigns of the parties hereto and shall be governed by and interpreted in accordance with the laws of the State of Rhode Island. This Agreement, and the documents executed and delivered pursuant hereto, constitute the entire agreement between the Parties, supercedes any other agreement or commitment heretofore made by Lender, and may be amended only by a writing signed on behalf of each party.

8.3 Survival. All of the representations, warranties and covenants set forth herein shall survive until the completion of all proceedings for termination or liquidation hereunder.

8.4 Notices. All notices hereunder shall be in writing and shall be deemed delivered if mailed to the respective parties at the addresses herein given (unless such address is changed by written notice hereunder) by certified mail, postage prepaid, return receipt requested.

8.5 Incorporation by Reference. Incorporated herein by reference are all of the terms and provisions of the Loan Documents, the provisions of which shall be construed as complementary hereto.

IN WITNESS WHEREOF, the parties hereto have caused their duly authorized officers to execute this Agreement the day and

year first above written.

WITNESS:

____________________________

FAIRWAY CAPITAL CORPORATION

By: ____________________________
Arnold Kilberg
Investment Advisor

WITNESS:

____________________________

By: ____________________________
Nancy Troy Lovett, individually