**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Case No. 99-565-L** |
| | ) | |
| **v.** | ) | **Judge Lagueux** |
| | ) | |
| **MONETA CAPITAL CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

# FIFTH RECEIVER'S REPORT FOR THE PERIOD JANUARY 1, 2005 TO MARCH 31, 2006

## I. Introduction

This Fifth Receiver's Report ("Receiver's Report") is being filed with this Court by the United States Small Business Administration ("SBA"), which was appointed Receiver ("Receiver") for Moneta Capital Corporation ("Moneta") pursuant to the Order of this Court dated February 2, 2000. This Receiver's Report details the activities of the receivership for the period from January 1, 2005 through March 31, 2006 and summarizes the background of the receivership and its current cash position. This Receiver's Report also includes Zeus Realty Holdings, LLC ("Zeus"), a wholly-owned subsidiary of Moneta, although there has been no activity by Zeus during this reporting period. Where significant events occurred subsequent to the period covered by this Receiver's Report, but before the submission of this report to this Court, they are also reported herein.

## II. Background

Moneta, a Rhode Island corporation, was licensed as a Small Business Investment Company ("SBIC") by SBA on May 4, 1984 under §301(c) of the Small Business Investment Act of 1958 (the “Act”), as amended. The sole shareholder of Moneta is Northeast Capital Corporation Profit Sharing Trust. In accordance with the Act, SBA guaranteed a total of four subordinated debentures issued by Moneta, which were issued between 1988 and 1989 in the total amount of $5.5 million. These debentures required Moneta to make semi-annual interest payments from the date of issuance through and including payment in full at the maturity of the debentures.

By letter dated September 12, 1997, Moneta was informed that SBA had determined that Moneta was in violation of 13 C.F.R. §107.203(b), having defaulted on the payment of its debentures. SBA also informed Moneta that, pursuant to 13 C.F.R. §107.203(b)(1), SBA had accelerated Moneta’s entire debt. The default remained uncured, and a complaint seeking the appointment of SBA as receiver for Moneta was filed on November 11, 1999. After a hearing before this Court, SBA was appointed Receiver on February 2, 2000.

## III. Operation of the Receivership

### A. <u>General Operations</u>

The overall function of the Receiver is to identify, marshal and liquidate the assets of Moneta. The Receiver has analyzed records kept by the former management of Moneta as well as records kept by SBA; prepared schedules and analyses of Moneta’s assets; analyzed, commenced and defended legal proceedings involving Moneta; and has analyzed claims against Moneta and recommended to this Court their appropriate

disposition. The Receiver has continued to sell assets where possible, to collect monies due to Moneta and to otherwise administer the Receivership, in order to effectuate an orderly liquidation of Moneta subject to the approval of this Court. Specific actions taken by the Receiver are discussed in greater detail below.

Upon completion of the liquidation of Moneta, the proceeds will be used to satisfy the administrative expenses of the Receivership and the claims of creditors, including SBA, in the order of priority established by this Court. Any excess proceeds will be distributed to the sole shareholder as ordered by this Court.

B. **Personnel**

The Receiver maintains all of Moneta's corporate and financial records at its Receivership Office, located at 666 Eleventh Street, N.W., Suite 200, Washington, D.C. 20001. The Receiver shares office space and administrative services with approximately 30 other receiverships.

Pursuant to paragraph 5 of the Receivership Order, the Receiver utilizes the services of lawyers, accountants and other professionals to assist in operating the Receivership. In February 2000, Stephen D. Jones was retained as Principal Agent to operate the Receivership. Subsequently, The Carisbrooke Company, LLC was retained as principal agent, with Stephen Jones acting as consultant to The Carisbrooke Company with respect to certain assets and aspects of the daily operation of the receivership. The agents assist the Receiver in (1) the administration of the assets and accounts of Moneta; (2) carrying out Moneta's receivership functions and responsibilities, including the liquidation of Moneta's assets in an orderly manner; and (3) the pursuit of claims belonging to Moneta which may result in monetary recovery for the receivership estate.

In addition to The Carisbrooke Company, LLC and Mr. Jones, the Receiver currently retains other professionals to render assistance, including The Riggs Group, P.C., which maintains the books and accounting records of the Receiver, and Shechtman Halperin Savage, a Providence, RI law firm retained to pursue various claims of Moneta and assist the Receiver with certain legal aspects of the sale of receivership assets.

**C. <u>Corporate Compliance, Accounting and Tax Matters</u>**

Moneta's principal place of business was Providence, Rhode Island. The Receiver notified the Secretary of State for Rhode Island that Moneta is in receivership. The Receiver also changed Moneta's registered agent in Rhode Island and other jurisdictions where Moneta has or had business relationships, and served notice accordingly. The Receiver notified all taxing authorities that Moneta had been placed in federal receivership, and that this Court has jurisdiction over all matters involving the Moneta receivership estate. Moneta's tax year ends on March 31, and Moneta is current in its tax filings through the period ending March 31, 2005; the return for the period ending March 31, 2006 is not yet due.

**D. <u>Claims Matters</u>**

The Receiver filed a Motion for an Order approving the form and manner of notice to claimants and establishing a claims bar date with this Court. By Orders of this Court, three claims bar dates were established: May 23, 2001, June 6, 2001, and a final date of August 23, 2001, by which time all claims were to be submitted or be forever barred. A notice to claimants and creditors was published, and the Receiver also mailed claims bar notices to numerous individuals and entities whose names and addresses the Receiver had gleaned from the files provided by the former management of Moneta. Sixty-six

individual claims were received, many in the form of multi-part claims. The Receiver recommended to this Court that nineteen claims should be paid, in the aggregate amount of $533,314.83, plus interest in certain instances; that nine claims should be denied, as they related to loan participations, while still acknowledging a valid participation interest; that twenty-four claims should be denied; and that fourteen claims should be ignored as they had been withdrawn. In addition, a claim relating to Marsh Landings was awaiting a final determination of this Court, and therefore no recommendation could be made by the Receiver. This Court accepted these recommendations by an Order dated December 19, 2003.

Claimants Callaghan, Vara and DiMento filed an objection to the Court-ordered claims disposition as it related to their claim. This objection was overruled by this Court, but the claimants appealed to the First Circuit. Claimant Nancy Lovett also filed an objection, seeking permission to file a claim against Moneta as an alter ego of other entities controlled by Arnold Kilberg ("Kilberg"), former principal of Moneta. This objection was also overruled by this Court, and Lovett also appealed to the First Circuit. Both of these cases were argued before the United States Circuit Court of Appeals for the First Circuit on February 9, 2005, and the First Circuit upheld this Court's ruling in both cases.

## IV. ASSET ACCOUNTS

At the beginning of the Receivership, the assets taken over by the Receiver consisted of real estate acquired in foreclosure, one paying loan and two non-performing loans, and various positions in syndicated loans and in assets acquired through

foreclosure. In addition, Moneta's cash account, with a minimal balance, was turned over to the Receiver shortly after the inception of the receivership, while that of Zeus closed by the Receiver. The current status of these assets is as follows.

**A. Cash**

All cash is deposited into an account at BB&T Bank, in the name of SBA as Receiver for Moneta Capital Corporation. There is another inactive BB&T account in the name of SBA as Receiver for Moneta Capital Corporation, Managing Member of Zeus Realty Holdings which the Receiver intends to merge into the Moneta account. The balance in the Moneta account as of March 31, 2006 was $210,709.44, of which $99,410.03 is restricted funds, as explained later in this Report. The balance in the Zeus account as of March 31, 2006 was $161,143.92.

The Receivership began operations on February 2, 2000, with a zero cash balance, and the Receiver immediately borrowed $50,000 from SBA, pursuant to a Receiver's Certificate, to fund operations. Moneta's minimal cash on hand in Sovereign Bank in Rhode Island was left in the bank to cover outstanding payroll liabilities. Total borrowings incurred prior to this reporting period totaled $5.6 million, of which $1,750,000 was borrowed specifically for the purpose of purchasing a first mortgage on real property owned by Zeus that was under threat of foreclosure, and this was repaid plus $174,529.54 in interest; $250,000 was used to provide vital funding for Hotel on the Cay; $3.1 million was borrowed specifically to pay off secured Rocky Point creditors and to pay numerous Rocky Point expenses; and the remaining $500,000 was used for operational and administrative purposes. During the period covered by this Receiver's Report, Moneta issued, on April 25, 2005 and with the approval of this Court, a

Receiver's Certificate for, and borrowed from SBA, $250,000 to fund ongoing Rocky Point expenses. During the period of this Receiver's Report, receipts from receivership operations totaled $1,116,065.95, while receivership expenditures, net of financing and borrowing costs, totaled $1,140,513.90. A detailed listing of the Receiver's financial affairs is attached as Exhibit A to this Report.

**B. <u>Performing Debt Instruments</u>**

1. <u>American Shipyard Company, LLC</u> Principal balance at 3/31/06: $0

American Shipyard Company ("ASC"), now called Newport Shipyard, is a working shipyard in Newport, Rhode Island. The history of this asset has been detailed in previous reports to this Court. In October 2003, ASC paid the loan off in full. The Receiver has paid all the participants their pro-rata share of the loan proceeds, with the exception of $99,410 which the Receiver is holding in a restricted account. This amount is due Northeast Capital Pension Trust and is being held by the Receiver at the request of the Department of Labor, which is involved in litigation against Mr. Kilberg.

After this reporting period, but prior to the date of this report, at least one of the loan participants has requested an accounting of the monies received from the October, 2003 payoff. The Receiver is currently compiling the information requested.

**C. <u>Non-Performing Debt Instruments</u>**

1. <u>Antonelli Plating Company</u> Principal Balance at 5/31/06: $38,050.68
$159,981.18

The history of this asset, consisting of two loans, has been detailed in previous reports to this Court. Both of the loans made by Moneta to Antonelli Plating Company ("Antonelli") were in default at the inception of the Receivership, and the Receiver has

foreclosed on them. Antonelli granted Moneta a first mortgage on a farm in Bridport, Vermont, and the Receiver retained the Vermont law firm of Deppman & Foley to foreclose on the farm. The Receiver won its foreclosure action and was granted title to the property; however, under Vermont law Antonelli was entitled to a six-month stand-still and redemption period, during which time the property could be redeemed in exchange for payment in full of the amount owed. That period expired in December 2004.

Antonelli made assurances to the Receiver that the amount owed would shortly be paid, but such payment was not forthcoming during 2005. Therefore, the Receiver proceeded to obtain the three appraisals required for the sale of real property by a federal receiver in accordance with 28 U.S.C. §2001. The three appraisals were obtained in early 2006 and the Receiver is currently in negotiations with an interested party to sell this property.

2. Roseland Acres Principal Balance at 3/31/06: $171,584

The history of this asset has been detailed in previous reports to this Court. Roseland Acres ("Roseland") is a 25-acre working horse farm and equestrian center in Tiverton, Rhode Island. Moneta had bought from Fairway Capital Corporation ("Fairway"), a Kilberg-controlled SBIC now also in receivership, a $175,000 sub-participation in a $600,000 syndicated loan to Roseland, with Wallace Capital Corporation ("Wallace"), another SBIC that was placed in federal receivership, the lead lender. Wallace foreclosed on its mortgage and sold the property, eventually paying Fairway the pro-rata amount due on its fifty percent participation. However, the Receiver

has been unable to locate a participation agreement between Fairway and Moneta, and the Fairway Receiver informed the Receiver that therefore, under the terms of an Order of this Court in September 2002, the Fairway Receiver could not pay the Receiver as a loan participant. Instead, Moneta is now an unsecured general creditor of the Fairway receivership estate. It is unlikely that this amount will ever be paid. The Receiver filed a claim against Mr. Kilberg in his personal bankruptcy for the losses incurred due to his failure to obtain an executed sub-participation agreement.

**D. <u>Real Estate Owned</u>**

1. <u>205 Front Street, Pawtucket, RI.</u>

The history of this asset has been detailed in prior reports to this Court. This property was acquired by foreclosure following a default on the loan made by Moneta to the principals of Front Street Auto Sales. The property was operated as a used car lot and auto repair facility. Upon foreclosure, title to the property was taken in the name of Northeast Capital Corporation ("Northeast"), an entity controlled by Mr. Kilberg, but Moneta's first mortgage was not discharged. Northeast assigned the property to Moneta upon the Receiver's request and a purchase and sale agreement was signed with a buyer in July 2000. The sale of this property was confirmed by this Court in September 2000. Following an environmental study of the site a new purchase and sale agreement was signed in March 2001 at a price of $170,000, with the Moneta Receiver agreeing to undertake a number of environmental remediation actions.

The Receiver discovered that the assignment of the property from Northeast to Moneta was unsatisfactory, by which time a special master had been appointed for Northeast and 205 Front Street was claimed as Northeast receivership property. The

Northeast special master finally agreed to complete the sale and remit the proceeds to Moneta, as Moneta had a valid first mortgage that far exceeded the value of the property. The Northeast special master eventually completed the sale, but the proceeds were not forthcoming until July 25, 2005 when the Receiver finally received its sales proceeds totaling $150,000. This asset is closed.

2. 164 Front Street, Pawtucket, RI.

This property was also acquired by foreclosure following a default on the loan made by Moneta to the principals of Front Street Auto Sales, and is located next to a large scrap and garbage facility. Upon foreclosure, title to the property was taken in the name of Northeast, which also made a loan to the principals of Front Street Auto Sales. As discussed above, a special master was subsequently appointed for Northeast. The property is run down and of questionable value, due to the costs likely to be required to bring it into saleable condition; therefore the Receiver decided to abandon it. However, the Northeast special master did manage to find a local buyer, and Moneta still had a valid first mortgage. The Northeast special master completed the sale, and subsequent to the period covered by this report the Receiver was paid approximately $120,000 in sale proceeds. This asset is now closed.

3. Somerset Avenue, Dighton MA.

This 29-acre plot of raw land, zoned commercial, on the outskirts of the small town of Dighton, Massachusetts, was acquired in foreclosure following the default by Taunton Coin on a syndicated loan made to the company by Moneta. Other participants in the defaulted loan included were Wallace Capital Corp., Stevens Capital and Joan Kilberg. Prior to the Moneta receivership, title to this property was taken by Northeast. A

small part of the land adjoins the Taunton River at a point approximately six miles from Narragansett Bay, but the great majority of the land consists of wetlands or is otherwise unsuitable for building. Appraisals commissioned by the Receiver concluded that only a small portion of the property could be built upon. There has been virtually no interest in the property. The Northeast special master has asserted that this property is an asset of the Northeast receivership estate, but subsequent to the period covered by this report, has informed the Receiver that it has no interest in selling this property. Therefore, the Receiver will determine how best to proceed to dispose of this asset, and if it is determined to be cost-effective for the receivership estate, may seek to obtain title from Northeast in order to liquidate this property.

## E. Other Assets

### 1. Rocky Point Amusement Park

This property is a defunct landmark amusement park situated on 124 acres of waterfront land on Warwick Neck, overlooking Narragansett Bay. The more detailed history of this asset is contained in the First Receiver's Report to this Court. This asset was owned by CR Amusements, LLC ("CR"), an entity in bankruptcy of which Moneta owns fifty-one percent.

With the permission of this Court and of the United States Bankruptcy Court, the Receiver held a foreclosure sale in July 2003, in which the Receiver was the successful bidder. Following a telephone auction in November 2003 Vanderbilt Capital, LLC., emerged as the successful buyer. Two purchase and sale agreements were finally signed in May 2004, one the portion of the property commonly known as Rocky Beach and the other for the remaining portion commonly known as Rocky Point. The agreements are

contingent upon Vanderbilt certain required permits to develop the land. This Court approved the sale in November 2004, and no counter-offers were received as a consequence of the Receiver's advertising of the sale. To date, Vanderbilt has pushed forward with various aspects of site work and with efforts to secure the appropriate permits, which efforts thus far appear to be fruitful.

Subsequent to this Court's Order approving the sale, the Rocky Beach Association (the "Association"), an association comprised of owners of the structures on the Rocky Beach portion of the property, filed an objection to the sale and sought to intervene on the basis that the price for the proposed sale transaction of the Rocky Beach property was arbitrary and improperly interfered with their right of first refusal under Rhode Island law. This Court granted the motion to intervene for a limited purpose, but overruled the Association's objection, upon which the Association appealed to the First Circuit.

The Association and the Receiver finally reached a settlement agreement, under which the Receiver agreed to pay the Association the sum of $85,000, which amount was paid by the Receiver on October 6, 2005, to be divided among the members of the Association as the Association saw fit. Further under the terms of the agreement reached, the Association dismissed its appeal and its members were allowed to remain on the property for the summer of 2006, with the last permitted occupancy date being November 1, 2006. At that time, members will be required to take any personal effects with them, as well as their structures if they are able to do so. Otherwise the structures will be demolished.

Non-members are not covered by this agreement, and were sent eviction notices by the Receiver. As of the date of this report, only one family remains and it has been

served an eviction notice.

One other objection to the sale was raised during this reporting period. Scotti & Associates ("Scotti"), a real estate brokerage firm retained by the bankruptcy trustee for CR, objected to the sale and filed a motion with this Court and sought to intervene on the basis that Scotti was allegedly entitled to a commission from the Receiver on the sale. The Receiver opposed this motion. At a hearing, this Court denied Scotti's motion, overruled his objection and instructed him to file a claim with the Receiver. Scotti did so and, after the Receiver rejected his claim, this Court ordered a hearing for both parties to present their arguments. That hearing was held on September 22, 2005. The Receiver vehemently argued that Scotti did nothing to bring about the sale by the Receiver of Rocky Beach or Rocky Point and therefore was not entitled to a commission. Both Scotti and the Receiver filed their post-hearing briefs in October 2005. A decision is pending.

**2. <u>Hotel on the Cay/Legend Resort, LP, Christiansted, St. Croix, USVI.</u>**

In 1991, Fairway made a $1.7 million loan to TSA Acquisition, Inc. and Legend Resorts, LP (collectively "Legend"), the operator of Hotel on the Cay, a time share resort on its own island, Protestant Cay, in Christiansted Harbour, St. Croix, U.S. Virgin Islands. Fairway sold participations in the loan, and Moneta bought a $400,000 participation. Fairway took a security interest in various unsold time share unit weeks, and in the ground lease between Legend and the Government of the Virgin Islands ("GVI"). The background and history of this asset are detailed in prior reports to this Court.

Early in 2005 the Fairway Receiver filed its recommended disposition of claims made against it in Fairway's claims bar proceeding. The GVI objected to Fairway's

recommendations, and the Fairway Receiver was given until July 1, 2005 to file a response. This the Fairway Receiver did, refuting all of the GVI's arguments. A decision is still pending.

There have been intermittent conversations between the Fairway Receiver and the GVI's attorneys regarding the need to settle these issues, but there has been no significant settlement progress.

3. **Joshua Sears Manor/Vancisin.**

The previous Receiver's Report ("Fourth Receiver's Report for the Period June 1, 2003 to December 31, 2004") detailed how Moneta's $121,488 sub-participation in the loan to Vancisin was destroyed by Mr. Kilberg's failure to ensure that Moneta had an executed sub-participation agreement. The Fairway Receiver has refused to pay the Moneta Receiver, and Moneta is now an unsecured general creditor of the Fairway receivership estate.

4. **Lopes Liquors, Pawtucket RI.**

In July 1996 Moneta bought a loan Fairway made to Lopes Liquors in 1991 in the original amount of $100,000. Moneta paid the outstanding principal balance, $77,214, to Fairway to purchase this loan, and Fairway agreed to assign to Moneta its first mortgage on the Lopes property at 151 Benefit Street in Pawtucket, Rhode Island. While Moneta's accounting records do show an outstanding principal balance on this loan of $76,174 in March 1999, no assignment documents have been located. As of March 31, 2006, the outstanding principal balance of this loan was $45,084.94.

Lopes makes fairly regular payments to the Receiver and has recently contacted the Receiver, as Lopes is trying to refinance the loan with the intention of paying it off.

The Receiver will keep this Court apprised of any developments. It is anticipated that, if the refinance is successful and the loan paid off, the Receiver and the Fairway Receiver will file a joint motion with respect to the disposition of the sale proceeds.

**5. Other Asset Items**

*Land in Brewster, MA:*

The history of this asset has been reported in previous Receiver's Reports. After several contempt hearings against Mr. Kilberg and Acropolis Enterprises, Inc. held before, and Contempt Orders issued by, this Court, the Receiver successfully attached the proceeds of the sale of certain properties owned by Hamlet Properties, LLC, a Kilberg alter-ego. The sum of $427,399.60 was placed in the Registry of this Court to satisfy the Receiver's Contempt Orders. The majority of this money was to satisfy the Receiver's demands for Moneta's proceeds from the sale of real property in Brewster, Massachusetts, which was collateral for a loan in which Moneta owns a participation interest. The remainder was for American Shipyard monies that were collected by Mr. Kilberg and Acropolis but never turned over to Moneta. On March 16, 2006, the Registry dispersed to Moneta $440,808.09 (the difference between the two figures being interest earned). As of the date of this writing, the funds have been processed into the Receiver's bank account and the Receiver is now in the process of ascertaining the precise amount of the interests due the participants for the Brewster portion of the recovery.

*Marsh Landing:*

Governor Financial Center ("Governor"), a company controlled by Mr. Kilberg, was placed in state court receivership, as previously reported to this Court. Among other assets, Governor owned the leasehold interest in land supporting two waterfront

restaurants and a small marina in Providence. Prior to the inception of this receivership, Moneta transferred its interest in this asset to Governor. However, Moneta still had a valid first mortgage, and upon the sale of the property by the state court receiver, that receiver was ordered by the state court to pay proceeds to Moneta to satisfy its mortgage.

On September 16, 2005, the Receiver was paid $928,724.91, and on October 31, 2005, an additional $31.17 was received. On December 20, 2005, the Receiver paid the U.S. Small Business Administration $343,080.93, representing the pro-rata amount due to Wallace Capital, a participant in the original loan, because the Wallace receivership estate had closed in January 2005, and its participation interest in this loan was assigned to the SBA.

## V. CLOSED ASSETS

The following assets were sold, paid in full or written off prior to the period covered by this Report, as more fully detailed in the previous Receiver's Reports to this Court.

A). William J. O'Brien, Inc.;

B). 50 Clark Point Road, Southwest Harbor, ME;

C). 46 Clark Point Road, Southwest Harbor, ME;

D). Poppasquash Road, Bristol, RI;

E). 4 Lafayette Avenue, Titusville, NJ;

F). Country Crest Place, Cumberland, RI;

G). 843 Reservoir Avenue and 7 Riverfarm Road, Cranston, RI;

H). Providence Land Company;

I). 310 Main Street, East Hartford, CT.

## VI. RECEIPTS AND DISBURSEMENTS

All receipts and disbursements for the period from January 1, 2005 to March 31, 2006 are detailed in Exhibit A, which is attached hereto.

## VII. CONCLUSION

This Fifth Receiver's Report was prepared by Stephen D. Jones, consultant to The Carisbrooke Company, LLC, Principal Agent for the Receiver.

Respectfully submitted,

U.S. SMALL BUSINESS ADMINISTRATION,
RECEIVER FOR MONETA CAPITAL CORPORATION

The Carisbrooke Company, LLC
By: CHARLES P. FULFORD
Its: MEMBER

Stephen D Jones, Consultant

## VII. CONCLUSION

This Fifth Receiver's Report was prepared by Stephen D. Jones, consultant to the Carisbrooke Company, LLC., Principal Agent for the Receiver.

Respectfully submitted,

U.S. SMALL BUSINESS ADMINISTRATION,
RECEIVER FOR MONETA CAPITAL CORPORATION

The Carisbrooke Company, LLC
By:
Its Principal

Stephen D. Jones, Consultant