UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 99-565L |
| MONETA CAPITAL CORPORATION | ) | |
| Defendant. | ) | |

**VANDERBIILT CAPITAL, LLC'S PARTIAL OBJECTION TO THE MOTION FOR DETERMINATION AND ORDER REGARDING THE DEMAND OF THE CITY OF WARWICK TO DEMOLISH CERTAIN STRUCTURES**

Vanderbilt Capital, LLC ("Vanderbilt") hereby objects to the United States Small Business Administration's ("SBA") motion for a determination and order regarding the demand of the City of Warwick to demolish and remove certain structures at the Rocky Point property, to the extent the motion seeks to require Vanderbilt to pay for such remediation. The grounds for this objection are set forth in the accompanying memorandum of law and supporting Declaration of Jason Witham.

Respectfully submitted,

*/s/ David A. Wollin*

David A. Wollin (#4950)
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Date: January 4, 2007

Attorneys for Vanderbilt Capital, LLC

**ORAL ARGUMENT REQUESTED: 30 MINUTES**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent via U.S. Mail, postage pre-paid, this 4th day of January, 2007, to the following:

| | | |
|---|---|---|
| Blish & Cavanagh, LLP<br>30 Exchange Terrace<br>Providence RI 02903 | Paul Agatiello, 401K Pension Plan<br>220 Sanctuary Drive<br>East Greenwich, RI 02818 | Thomas Almeida, Town Solicitor<br>Town of Cumberland<br>P.O. Box 7<br>Cumberland, RI 02864 |
| Cheryl Asquino, Esq.<br>Narragansett Bay Commission<br>One Service Road<br>Providence RI 02905 | Belisle Group<br>c/o Donovan M. Hamm, Jr.<br>Hamm & Barry<br>5030 Anchor Way, Christianstead<br>U.S. Virgin Islands 00820 | Phillip Belisle<br>1916 Rimsdale Drive<br>Myrtle Beach, SC 29575 |
| Rodio & Brown, Ltd.<br>Stephen A. Rodio, Esq.<br>91 Friendship Street<br>Providence, RI 02903 | Christine Bush, Esq.<br>Duffy & Sweeney, LTD<br>One Turks Head Place<br>Suite 1200<br>Providence, RI 02903 | James Callahan<br>269 Chapman Street<br>Canton, MA 02021 |
| City of Providence<br>Tax Collector<br>City Hall<br>25 Dorrance<br>Providence, RI 02903 | Pamela Lynn Colon<br>Law Office of Lee Rohn<br>1101 King Street<br>Christiansted, St Croix,<br>U.S. Virgin Islands 00820 | Patrick Conley, Esq.,<br>1445 Wampanoag Trail<br>Suite 203<br>East Providence, RI 02915 |
| Karen Davidson, Esq.<br>1 Ship Street<br>Providence, RI 02903 | John Dean, Esq.<br>Boisseau, & Dean LLP<br>155 South Main Street, Ste. 405<br>Providence, RI 02903 | Town of Dighton, Massachusetts<br>Attn: Brendan Herbeck<br>Office of Town Clerk<br>979 Somerset Avenue<br>Dighton, MA 02715 |
| Francis and Rita DiMento<br>c/o DiMento & Sullivan<br>7 Fanueuil Hill Marketplace<br>Boston, MA 02169 | Domestic Bank<br>815 Reservoir Avenue<br>Cranston, RI 02910 | John Earle, Esq.<br>City Solicitor<br>City of Warwick<br>3275 Post Road<br>Warwick, RI 02886 |

| | | |
|---|---|---|
| Joseph Ferrucci, Esq.<br>Ferrucci Russo<br>49 Weybosset St.<br>Providence, RI 02903 | Jeannine Bourassa<br>71 Bliss Road<br>Newport, RI 02840 | Arnold Goodstein<br>Vanderbilt Capital, LLC<br>136 West Richardson Avenue<br>Summerville, SC 29483 |
| Lawrence L. Goldberg, Esq<br>96 Jefferson Boulevard<br>Warwick, Rhode Island 02888 | John C. Gyorgy, Esq.<br>Noel & Gyorgy, LLP<br>50 South Main Street<br>Providence, RI 02903 | Allan E. Hanson, Esq.<br>U.S. Small Business Administration<br>380 Westminster Street<br>Providence, RI 02903 |
| 167 Hotel on the Cay Timeshare<br>c/o Donovan M. Hamm, Jr.<br>Attorney at Law<br>5030 Anchor Way, Gallows Bay<br>St Croix, U.S. Virgin Islands 00820 | Liu & Lu Realty, LLC<br>2856 Main Street<br>Glastonbury, CT 06033 | Joan Kilberg<br>3554 Pine Lake CT<br>Delray Beach, FL 33445-9045 |
| Metacom Medical Assoc., Inc.<br>Paul Agatiello Pension Plan<br>c/o Paul Agatiello, M.D.<br>220 Sanctuary Drive<br>East Greenwich, RI 02818 | Richard Michaels, Esq.<br>Mintz Levin<br>1 Financial Center<br>Boston, MA 02111 | Ann Marie Mitchell, Esq.<br>Toll Bros., Inc.<br>250 Gibraltar Road<br>Horsham, PA 19044 |
| Keven McKenna, Esq.<br>23 Acorn Street<br>Providence, RI 02903 | Steven M. McInnes, Esq.<br>Attorney for American Shipyard<br>Company, LLC<br>38 Bellevue Ave.<br>Newport, RI 02840 | Neal J. McNamara, Esq.<br>Holland & Knight, LLP<br>One Financial Plaza<br>Suite 1800<br>Providence, RI 02903 |
| Waste Management of Rhode Island<br>575 West Street # 210<br>Mansfield, MA 02048-1164 | Ocean State Planners<br>1255 Oaklawn Avenue<br>Cranston, RI 02920 | Gina Martin, Esq.<br>GOODWIN PROCTER, LLP<br>53 State Street<br>Exchange Place<br>Boston, MA 02109 |
| Andrew S, Richardson, Esq.<br>Ch. 7 Trustee<br>C.R. Amusements, LLC<br>182 Waterman Street<br>Providence, RI 02906 | Richmond Square Capital Corp.<br>Attn: Harold Schein<br>1 Richmond Square<br>Providence, RI 02906 | Thomas W. Rigby, III, Esq.<br>SBA as Receiver for Fairway Cap.<br>Office of General Counsel<br>4093rd Street, SW, 7th Floor<br>Washington, DC 20416 |

| | | |
|---|---|---|
| Estate of Arthur Schonbrun<br>c/o Lynn Stand, Executrix<br>555 North Avenue<br>Fort Lee, NJ 07024 | Ruth Haber Schonbrun<br>3507 Oak Way<br>Palm Air<br>Apartment 508<br>Pompano Beach, FL 33068 | Craig M. Scott, Esq. and<br>Stacey Nakasian, Esq.<br>Duffy, Sweeney & Scott,<br>Ltd.<br>300 Turks Head Building<br>Providence, RI 02903 |
| David B. Sholem<br>Meyer Capel<br>306 West Church Street<br>P.O. Box 6750<br>Champaign, IL 61826-6750 | Everett A. Petronio, Sr.<br>Law Offices of A. Petronio, Inc.<br>1239 Hartford Avenue<br>Johnston, RI 02919 | Tax Collector<br>Cumberland Fire District<br>1530 Mendon Road<br>Cumberland, RI 02864 |
| United States Department of<br>Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room -375<br>Boston, MA 02203 | Henry Varra<br>350 Chestnut Street<br>West Newton, MA 02465 | |

The following parties were served via electronic notice on January 4, 2007:

| | |
|---|---|
| Joseph Avanzato | javazanto@apslaw.com, vlanctot@apslaw.com |
| Peter G. Berman | peter@raskinberman.com |
| Edward J. Bertozzi, Jr. | ebertozzi@eapdlaw.com |
| Jeffrey S. Brenner | jbrenner@nixonpeabody.com<br>proefile@nixonpeabody.com;<br>myrone@nixonpeabody.com |
| Christopher R. Bush | cbush@riag.rii.gov; randrade@riag.ri.gov |
| Frank Caprio | frankcaprio@hotmail.com |
| Thomas E. Carlotto | tcarlotto@shslawfirm.com |
| Eugenia M. Carris | Eugenia.carris@usdoj.gov |
| Michael W. Carroll | msc@carroll-law.net |
| Robert Clark Corrente | Robert.corrente@usdoj.gov |
| William J. Delaney | wdelaney@tllaw.com |
| John William Dineen | jwdineen1@yahoo.com |
| Joseph Michael DiOrio | jmdiorio@dioriolaw.com |
| John G. Earle | jearle@bselaw.com |
| Arlene Embrey | Arlene.embrey@sba.gov |
| Mark A. Fay | mark@murphyandfay.com |
| Jeffrey H. Gladstone | jhg@psh.com |
| William R. Grimm | wgrimm@haslaw.com |
| Preston W. Halperin | phalperin@shslawfirm.com;<br>dsmith@shslawfirm.com |

| | |
|---|---|
| Kevin D. Heitke | kdh@kevinheitke.com |
| Vincent A. Indeglia | vaindeglia@aol.com |
| Stephen A. Izzi | sizzi@mosesafonso.com |
| James P. Redding | reddingj@gtlaw.com |
| Jeffrey C. Schreck | jschreck@msn.com |
| K. Joseph Shekarchi | Joe@shekarchilaw.com |
| Thomas A. Tarro, III | ttarro3rd@tarrolawfirm.com |
| Robert K. Taylor | rkt@psh.com; tlc@psh.com |
| H. Marc Tepper | marc.tepper@bipc.com |
| Harris K. Weiner | hkw@pinelaw.com; llk@pinelaw.com |
| Robert D. Wieck | rwieck@mandwlaw.com |

*/s/ David A. Wollin*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 99-565L |
| | ) | |
| MONETA CAPITAL CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**VANDERBIILT CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL OBJECTION TO THE MOTION FOR DETERMINATION AND ORDER REGARDING THE DEMAND OF THE CITY OF WARWICK TO DEMOLISH CERTAIN STRUCTURES**

Vanderbilt Capital, LLC ("Vanderbilt") submits this memorandum of law in support of its partial objection to the United States Small Business Administration's ("SBA") motion for a determination and order regarding the demand of the City of Warwick to demolish and remove certain structures at the property commonly known as the Rocky Point property.[1] Vanderbilt objects to the SBA's motion to the extent it seeks an order requiring Vanderbilt to pay for such remediation.

As set forth more fully below, SBA's motion should be denied for three independent reasons. First, Vanderbilt is not responsible under the purchase and sale agreement to pay for the remediation being sought by the City of Warwick. Simply put, Vanderbilt has absolutely no obligation under the purchase and sale agreement to

[1] Vanderbilt and the SBA were parties to two purchase and sale agreements, one for the Rocky Point property and one for property commonly known as the Rocky Beach property. The nearly identical purchase and sale agreement for the Rocky Beach property is not implicated because the entirety of the structures at issue in this matter are located at the Rocky Point property.

demolish any structures at the Midway. That obligation belongs to the SBA, the owner of the Rocky Point property.

Second, Vanderbilt is not responsible for demolition and removal because, even if section 10 of the purchase and sale agreement was broad enough to cover such costs and expenses, those costs and expenses never came "due and payable" under section 10 prior to the termination of the purchase and sale agreement on December 12, 2006.

Third, Vanderbilt is not liable for demolition and removal because the associated costs and expenses did not "accrue" under section 10 on or after the September 12, 2005 Final Court Order Date. The undisputed evidence before this Court shows that, prior to September 12, 2005, the SBA and its predecessor allowed the Midway structures at the Rocky Point property to deteriorate to a condition requiring demolition and removal. Since Vanderbilt had no obligations prior to September 12, 2005, the SBA, as the owner of the property, is responsible to pay for the remediation that the City of Warwick seeks. To the extent there is any question on this latter point, the portion of the SBA's motion seeking to impose these remediation costs on Vanderbilt should be held in abeyance pending a reasonable period of discovery on this issue and then an evidentiary hearing at the appropriate time.

## I. BACKGROUND

### A. Procedural History

On February 2, 2000, this Court appointed the SBA as the Receiver of Moneta Capital Corporation. Moneta currently holds title to approximately 124 acres of real property commonly known as "Rocky Point" located in Warwick, Rhode Island, which

was formerly owned by C.R. Amusements, LLC. The property is the site of the former Rocky Point Amusement Park and contains numerous buildings, the majority of which were erected prior to 1980. The Amusement Park closed on or about 1996 and the structures located in an area of the Park commonly known as the Midway have been vacant since that time. Since the closing, several structures located on or around the Midway have been damaged or destroyed by fire, particularly in 2000, 2004 and one building recently in 2006.

From 1999 through July 2003, ownership of the property was vested in C.R. Amusements, an entity that was under the protection of the United States Bankruptcy Court for the District of Rhode Island. From the inception of the bankruptcy proceedings through July 2003, Andrew Richardson held possession of the property in his capacity as Chapter 7 Trustee of C.R. Amusements.

On July 29, 2003, the SBA became the title holder of the property as a result of a foreclosure sale. After the SBA bid on the outstanding mortgage at the foreclosure sale and became the titled owner, the SBA sought to negotiate the sale of the property.

On May 19, 2004, Vanderbilt entered into a purchase and sale agreement with the SBA to purchase a portion of the property ("the Rocky Point property") for a purchase price of $13,750,000. On the same date, Vanderbilt entered into a second purchase and sale agreement with the SBA to purchase the other portion of the property ("the Rocky Beach property") for a purchase price of $11,250,000. Both agreements combined shall be referenced as the "P&S agreements." The P&S agreements, which are identical in all material respects, are attached as Exhibits 1 and 2 hereto. The SBA also granted the

Rocky Beach Homeowners' Association, some of whose members lived at the Rocky Beach parcel, a right of first refusal with respect to that parcel.

On June 2, 2004, the SBA provided notice to the Association of its intent to sell the Rocky Beach parcel as part of the overall sale of the properties to Vanderbilt. On June 3, 2004, the SBA moved for approval and confirmation of the sale contemplated by the P&S agreements. The Association intervened and objected to the SBA's motion. This Court overruled the Association's objections. By order dated November 10, 2004, the Court approved the sale subject to, among other things, higher offers made on the same terms and conditions as contained in the existing P&S agreements. No such offers were forthcoming. The Association filed a notice of appeal with the United States Court of Appeals for the First Circuit, but that appeal eventually was settled. The First Circuit issued its mandate on September 2, 2005, a copy of which is attached as Exhibit 3.

B. The P&S Agreements

As indicated above, the SBA entered into the P&S agreements with Vanderbilt for both the Rocky Point property and the Rocky Beach property. As in any real estate transaction, the SBA retained ownership of the properties before the closings.[2] In this case, the closings never occurred and Vanderbilt never took possession of either of the properties. Declaration of Jason Witham ("Witham Decl.") at ¶ 5. Rather, on December 12, 2006, pursuant to section 11 of the P&S agreements and all other relevant provisions, Vanderbilt notified the SBA that it was terminating both of the P&S agreements because

[2] Under section 4 of the P&S agreements, the closing was scheduled to occur the earlier of: a) the eighteen month anniversary of the Final Court Order Date as defined in the P&S agreements; b) thirty days following the date on which Vanderbilt received the Approvals as defined in the P&S agreements; or c) thirty days following the date when Vanderbilt provided the SBA written notice that it elected to close this transaction prior to Vanderbilt's receipt of the Approvals.

Vanderbilt is unable to obtain the Approvals[3] on or before the Approvals deadline as set forth in the P&S agreements. Witham Decl. at ¶ 5 & Exh. 1.

More importantly, the SBA and Vanderbilt agree that, prior to the September 12, 2005 Final Court Order Date,[4] Vanderbilt had no responsibilities under the P&S agreements in connection with any aspect of the Rocky Point property or the Rocky Beach property including maintenance, safety or security. *Id*. at ¶ 6; *see* SBA Memo of Law at 3 (defining Vanderbilt's assumption of operational costs as applicable "[f]rom and after September 12, 2005"). Vanderbilt was neither in possession of nor owner of the properties. Witham Decl. at ¶ 6. Nor did Vanderbilt ever conduct any site construction activities on the properties prior to that date. *Id*. Likewise, during that period, Vanderbilt was not responsible for, and in fact was never invoiced by the SBA for, any costs or fees associated with the properties. *Id*. Rather, any work or costs, including those for maintenance, safety or security, were the sole responsibility of the SBA. *Id*.

Indeed, throughout the SBA's entire ownership of the properties, the SBA was not only the owner of the parcels, but was the property manager as well. *See* P&S agreements at ¶ 25 (noting the SBA's role as "property manager"). In fulfilling this role,

---

[3] The term "Approvals" is defined in section 11 as the Buyer obtaining, "at Buyer's sole cost and expense, in such form and content as Buyer shall require in its reasonable discretion, the necessary final and non-appealable approvals" from the City of Warwick Zoning Board and Planning Board, City of Warwick City Council, the U.S. Army Corps of Engineers, the Rhode Island Department of Environmental Management, the Coastal Resources Management Council, the U.S. Environmental Protection Agency, all public and quasi-public sewer and water authorities with jurisdiction over the properties and all other local, state and federal governmental agencies and quasi-governmental entities with jurisdiction over the properties.

[4] The SBA and Vanderbilt agree that, under section 10 of the P&S agreements, the Final Court Order Date is September 12, 2005, which is ten days following the September 2, 2005 date the First Circuit issued its mandate in the Rocky Beach Homeowner's Association's appeal. *See* SBA Memo of Law at 3; Witham Decl. at ¶ 6.

the SBA has hired a caretaker, Ken Perry, who has worked at the Rocky Point property since prior to the Final Court Order Date. Witham Decl. at ¶ 9.

On or after the September 12, 2005 Final Court Order Date, pursuant to sections 6 and 10 of the P&S agreements, Vanderbilt was entitled to enter the properties as a licensee. Further, under section 10, Vanderbilt was responsible to pay certain limited operational costs and expenses accruing on or after the Final Court Order Date when they became due and payable. That section reads as follows:

> 10. Early Possession and Operational Costs of the Premises. From and after ten (10) days following the Court Order having become final (the "Final Court Order Date") Buyer shall be entitled to possession of the Premises, pursuant to the license granted in Section 6 hereof, and in any event, regardless of whether Buyer takes possession of the Premises pursuant to such license, Buyer shall immediately assume and pay *when the same become due and payable* all operational responsibilities and all costs and expenses associated with ownership of the Premises (other than those otherwise allocated to Seller hereunder, if any) *accruing on or after the Final Court Order Date*, including, without limitation, payment of real estate taxes assessed against the Premises, payment of any unpaid betterment assessments, improvement assessments and/or special assessments constituting a lien against the Premises, whether now existing or hereafter arising, payment of all utility costs and water and sewer charges, maintenance of insurance as required by Section 20 hereof and performance of maintenance and repairs of the Premises (collectively, the "Operational Costs"). Operational Costs shall be adjusted as of the Final Court Order Date, with the Seller paying all amounts accruing prior to the Final Court Order Date, and the Buyer assuming payment of the same from and after the Final Court Order Date. Buyer acknowledges and agrees that any and all amounts paid pursuant to this Section 10 are nonrefundable, except as otherwise expressly provided herein. (emphasis added).

Nothing in this provision required Vanderbilt to assume responsibility for any structural or related problems at the Midway on the Rocky Point property antedating the September

12, 2005 Final Court Order Date. Nor did this provision require Vanderbilt to pay for any associated costs or expenses incurred prior to that date.[5]

Moreover, the P&S agreements explicitly contemplated that, even after the Final Court Order Date, the demolition of the structures at the Midway would be at Vanderbilt's sole discretion. Vanderbilt was not required to assume any demolition or improvement responsibilities from the SBA. Specifically, section 6 provides that:

> 6. Possession. Possession of the Premises shall be delivered to Buyer on the Closing Date; provided, however, that as of the Final Court Order Date, the Seller shall grant to the Buyer a license to occupy the Premises, which license shall remain in effect until the Closing Date, subject to revocation as set forth below. The Premises shall be delivered to Buyer in their "AS IS" and "WHERE IS" condition and "WITH ALL FAULTS". On or after the Final Court Order Date, Buyer *may,* at its sole cost, risk, and expense, (a) demolish building improvements, remedy environmental defects and environmental contamination, demolish asphalt parking surfaces, and remove other improvements on the Premises; provided that Buyer removes promptly all rubbish and debris that the Buyer does not intend to recycle or reuse and/or (b) subject to the written approval of the Seller which shall not be unreasonably withheld nor delayed, construct water, sewage and drainage-related infrastructure improvements at the Premises. In the event the sale of the Premises to the Buyer is not consummated for any reason, upon the expiration or termination of this Agreement, the Buyer's license to occupy the Premises shall be deemed revoked and the Buyer shall immediately remove all of Buyer's rubbish, if any, and vacate the Premises. (emphasis added).

Since Vanderbilt did not exercise its option to demolish the structures, that responsibility remained with the owner, the SBA, at all times.

---

[5] From the September 12, 2005 Final Court Order Date until the P&S agreements were terminated on December 12, 2006, pursuant to section 10, Vanderbilt paid for the cost of alarm services at the Shore Dinner Hall, the Palladium/Windjammer building and the Administration Building, municipal water services, electricity and gas, snow removal, sprinkler repair and for other minor repairs. Witham Decl. at ¶ 10. During that period, Vanderbilt has also paid for a Warwick Police Department detail to be present in six hour shifts four days a week (and sometimes in greater frequency) to ensure safety and security of the premises. *Id*. In addition, there was private security throughout 2006 of approximately 170-182 hours per month. *Id*. In total, Vanderbilt paid approximately $150,000 for such services. *Id*.

Indeed, the SBA has never invoiced Vanderbilt for any costs or expenses to demolish or remove the structures at the Midway. Witham Decl. at ¶ 12. The P&S agreements simply do not contemplate such a capital expense being passed through to Vanderbilt as an operational expense.

C. Condition Of The Midway Structures Prior To The Final Court Order Date

During the lengthy ownership and control of the Rocky Point property by the SBA and its predecessors prior to September 12, 2005, the buildings located at the Midway were in a terrible state of repair and had been allowed to deteriorate. Witham Decl. at ¶¶ 7-8. Attached to the Declaration of Jason Witham are photographs showing the deteriorated state of the Midway structures on August 12-13, 2004, February 17, 2005 and October 25, 2005, shortly after Vanderbilt became a licensee at the property. *Id*. at ¶ 7 & Exh. 2-4. Moreover, there were fires at the Rocky Point property prior to the Final Court Order Date in 2000 and 2004. *Id*. at ¶ 7. A copy of relevant newspaper articles is attached as Exhibit 5 to the Witham Declaration. One article on June 25, 2000 notes that the Park had been reduced to ruins. *Id*. In another article dated June 27, 2000, *over five years before the Final Court Order Date*, City Councilman Pisaturo proposed that "the building should be leveled with a bulldozer" given the "decrepit" state of the structures. *Id*.

At the time of the September 12, 2005 Final Court Order Date, the buildings in the Midway at the Rocky Point property were in a horrible condition. *Id*. at ¶ 8. Most, if not all, the conditions cited in the October 31, 2006 Field Inspection Report from John Pagliaro, Director and Building Official, Warwick Building Department, were present well in advance of the Final Court Order Date. *Id*. For instance, Mr. Pagliaro states that

the entire front of building no. 19, the fun house, had collapsed. In fact, the SBA had knocked down the façade prior to the Final Court Order Date to prevent teenagers from climbing the structure. *Id*. In addition, prior to the Final Court Order Date, ticket booths next to the merry-go-round were structurally unsound, and a number of buildings were open and accessible and full of debris and other building materials. *Id*.

Moreover, consistent with its role as property owner, the SBA, since the September 12, 2005 Final Court Order Date, has allowed the Warwick Fire Department and the Warwick Police Department to use the Midway as a training ground. *Id*. at ¶ 13. For instance, existing metal shutters which were covering the larger openings of the buildings were cut open by the Fire Department while practicing using their equipment to gain access. *Id*. The Warwick Police Department utilized the Palladium/Windjammer building to train their dogs in search and detection. *Id*.

D. <u>The City of Warwick's Demand for Demolition/Removal Remediation</u>

On October 17, 2006, a fire occurred at one of the abandoned buildings at the Midway. *Id*. at ¶ 14. The cause of the fire is currently unknown. *Id*. That building was dilapidated and had structural problems that antedated the Final Court Order Date. Among other problems, the second floor had caved in to the first floor prior to the 2006 fire and the Final Court Order Date. *Id*.

On October 19, 2006, the SBA received correspondence from the City of Warwick demanding that the SBA demolish and remove all the structures on the Midway on or before October 29, 2006. A copy of this letter is attached to the SBA's motion as Exhibit A. The SBA responded that the City was stayed from taking any action by virtue

of the receivership order and suggested that a site visit be arranged with City officials to understand the alleged hazards cited in the City's letter.

On November 3, 2006, the SBA and City officials conducted a site visit of the Midway area of the Rocky Point property. At the site visit, the SBA was provided a Field Inspection Report that identified certain conditions that allegedly violated state law. A copy of the report is attached to the SBA's motion as Exhibit B. On November 6, 2006, the SBA wrote to the City that the SBA and the City were precluded from taking any affirmative action relative to the City's demands without a determination by this Court that such measures are required under applicable law. A copy of the SBA's letter is attached as Exhibit 4. The letter indicated the SBA's intention to petition this Court for a determination as to the SBA's responsibilities to secure and/or demolish the structures identified in the Field Inspection Report, and for authorization for the SBA to take any action consistent with the Court's order. The letter made no mention of the SBA's intent to pass those costs on Vanderbilt. Subsequently, the SBA filed its motion, seeking, *inter alia*, to impose the entire cost of the demolition and removal of the structures on Vanderbilt.

## II. ARGUMENT

### A. Vanderbilt Is Not Contractually Liable For Demolition/Removal Of The Midway Structures At The Rocky Point Property

Under the P&S agreements, Vanderbilt is not responsible to pay for the remediation being sought by the City of Warwick. Simply put, Vanderbilt is not required to demolish any structures at the Midway. The agreements were carefully written so that Vanderbilt would not be responsible, prior to actually owning the properties, for the

many years of neglect that the Midway structures suffered during ownership by the SBA and its predecessor or for demolition and removal of all those buildings. The obligation to demolish and remove the Midway structures has always belonged to the SBA. Any obligation to demolish or remove the structures would have passed to Vanderbilt only post-closing.

Specifically, it is undisputed that, prior to the September 12, 2005 Final Court Order Date, Vanderbilt had no obligations under section 10 for maintenance, safety or security of the properties, and thus whatever building deterioration that occurred prior to that date was the responsibility of others. Further, even after the September 12, 2005 Final Court Order Date, the P&S agreements explicitly contemplated pursuant to section 6 that the demolition of the structures at the Midway would be at Vanderbilt's sole discretion and would *not* be a responsibility that Vanderbilt agreed to assume from the SBA unless it chose to do so. Section 6 provides that, on or after the Final Court Order Date, Vanderbilt "*may, at its sole cost, risk, and expense, (a) demolish building improvements, remedy environmental defects and environmental contamination, demolish asphalt parking surfaces, and remove other improvements on the Premises.*" (emphasis added). There is nothing in any other section of the P&S agreements that imposes upon Vanderbilt, as opposed to the SBA, the owner of the Rocky Point property and the Rocky Beach property, the obligation to demolish and remove the structures, and the SBA does not suggest otherwise.

Vanderbilt's obligations after the Final Court Order Date, as licensee, were limited and narrowly defined in section 10 of the P&S agreements. That section provides in relevant part that Vanderbilt is responsible to pay certain operational costs and

expenses accruing after the September 12, 2005 Final Court Order Date when they became due and payable such as utility costs, water and sewer charges, real estate taxes and insurance, unpaid betterment assessments such as sewer or water upgrades or any maintenance and repairs during the time Vanderbilt is a licensee of the property after September 12, 2005.[6] The phrase "Operational Costs" as used in section 10 denotes costs associated with everyday activities at the property. *See* Black's Law Dictionary 618 (8th ed. 2004) (defining "operating expense"). This is in contrast to a capital expense or expenditure that might be incurred when changes are made to improve a business or property or to provide a long-term benefit. *Id*. at 617 (defining "capital expense"); at 222 (defining "capital expenditure").

Contrary to the SBA's sole argument on this point, nothing in section 10 even remotely requires Vanderbilt to assume responsibility for demolition and removal of the buildings at the Midway, particularly due to structural and related problems resulting from many years of inactivity and decay that occurred prior to execution of the P&S agreements and the Final Court Order Date. Nor does the SBA claim that the structural problems that require demolition and removal were caused either in whole or in part by anything that occurred after the Final Court Order Date, save for the fire that totally destroyed a single building.

Vanderbilt's interpretation of the P&S agreements that demolition and removal obligations remain with the SBA, and particularly section 10, is consistent with the conduct of the SBA and Vanderbilt. The SBA, not Vanderbilt, is the property manager for the properties, and the SBA has hired a caretaker for that purpose. *See* P&S

---

[6] *See Terrano v. Department of Corrections*, 573 A.2d 1181, 1183 (R.I. 1990) (noting rule of statutory construction that an express enumeration of items indicates an intent to exclude all items not listed).

agreements at ¶ 25; Witham Decl. at ¶ 9. Pursuant to section 10, the SBA has only invoiced Vanderbilt for basic operational costs, not the costs for structural demolition and removal. Witham Decl. at ¶¶ 10-12. Prior to the SBA receiving notice in October of 2006 that the City of Warwick wanted certain structures on the Midway demolished and removed, the SBA had never asked Vanderbilt to demolish or remove the structures at the Midway. *Id.* at ¶ 11.

Indeed, consistent with its role as a title owner and property manager, the SBA has allowed the Warwick Fire Department and the Warwick Police Department to use the Midway as a training ground. *Id.* at ¶ 13. For instance, existing metal shutters which were covering the larger openings of the buildings were cut open by the Fire Department while practicing using their equipment to gain access. *Id.* The Warwick Police Department utilized the Palladium/Windjammer building to train their dogs in search and detection. *Id.*

In short, there is nothing in the P&S agreements that obligates Vanderbilt to pay for the demolition and removal work being sought by the City of Warwick. That obligation belongs with the SBA as owner of the Rocky Point property under the Court's February 2, 2000 receivership order, which authorizes the SBA to take control of and administer the receivership assets including the properties.

B. Demolition And Removal Costs Were Not "Due And Payable" Prior <u>To The Termination Of The P&S Agreements On December 12, 2006</u>

Even assuming *arguendo* section 10 of the P&S agreements were broad enough to cover demolition and removal, Vanderbilt is not responsible for such costs and expenses because they never became "due and payable" prior to the termination of the agreements on December 12, 2006.

As noted above, section 10 of the P&S agreements contains a crucial condition precedent to imposition of costs and expenses on Vanderbilt: Vanderbilt is only obligated to pay "Operational Costs" when they become "due and payable." Section 10 states in pertinent part: "Buyer shall immediately assume and pay *when the same become due and payable* all operational responsibilities and all costs and expenses associated with ownership of the Premises (other than those otherwise allocated to Seller hereunder, if any) accruing on or after the Final Court Order Date . . ."

In this case, Vanderbilt has no liability because no demolition or removal costs or expenses became "due and payable" prior to the termination of the P&S agreements on December 12, 2006. Witham Decl. at ¶ 5 & Exh. 1. The phrase "due and payable" denotes an obligation that constitutes a legally enforceable debt that must be paid. *See* Black's Law Dictionary 538, 1165 (8th ed. 2004) (defining "due" and "payable"). Additionally, section 10 states that the obligation is owed "when the same becomes due and payable." Here, neither the SBA nor the City of Warwick has ever even invoiced Vanderbilt for any demolition and removal costs, let alone incurred any costs themselves for such remediation. Witham Decl. at ¶¶ 11-12. Now that the P&S agreements have terminated, Vanderbilt no longer owes any contractual obligations to the SBA.[7] Thus, it is the SBA, not Vanderbilt, that is responsible for demolition and removal of the existing Midway structures. The SBA cannot simply ignore the temporal element of the contractual language.

[7] Moreover, there is no "survival" provision applicable to section 10 that continues to impose any obligations on Vanderbilt after the termination.

C. Even Assuming Section 10 Covers Demolition And Removal Costs, It Is The SBA, Not Vanderbilt, That Should Pay For The Remediation

Vanderbilt is not liable for demolition and removal because the associated costs and expenses did not "accrue" under section 10 on or after the September 12, 2005 Final Court Order Date. As noted above, section 10 of the P&S agreements contains a second condition precedent to imposition of costs and expenses on Vanderbilt: Vanderbilt is only obligated to pay "Operational Costs" "*accruing* on or after the Final Court Order Date . . ." (emphasis added).

The undisputed evidence before this Court shows that it was under the SBA's watch and that of its predecessor that the Midway structures at the Rocky Point property were allowed to deteriorate and required demolition and removal, and therefore accrued, *prior to* September 12, 2005. SBA concedes, as it must, that Vanderbilt did not have any operational obligations or responsibilities regarding the properties until September 12, 2005. Witham Decl. at ¶ 6; SBA Memo of Law at 3. Prior to that date, Vanderbilt was neither in possession of nor owner of the properties. Witham Decl. at ¶ 6. Nor did Vanderbilt ever conduct any site construction activities on the properties prior to that date. *Id*. Likewise, during that period, Vanderbilt was not responsible for, and in fact was never invoiced by the SBA for, any costs or fees associated with the properties. *Id*. Rather, any work or costs, including those for maintenance, safety or security, were the sole responsibility of the SBA. *Id*.

By September 12, 2005, the buildings in the Midway at the Rocky Point property were already in a horrible condition. *Id*. at ¶¶ 7-8. Most, if not all, the conditions cited in the October 31, 2006 Field Inspection Report from John Pagliaro, Director and Building Official, Warwick Building Department, were present at the time of the Final

Court Order Date. *Id*. at ¶ 8. For instance, Mr. Pagliaro states that the entire front of building no. 19, the fun house, had collapsed. *Id*. In fact, the SBA had knocked down the façade prior to the Final Court Order Date to prevent teenagers from climbing the structure. *Id*. In addition, prior to the Final Court Order Date, ticket booths next to the merry-go-round were structurally unsound, and a number of buildings were open and accessible and full of debris and other building materials. *Id*.

Attached to the Declaration of Jason Witham are photographs showing the deteriorated state of the Midway structures on August 12-13, 2004, February 17, 2005 and October 25, 2005, just after the Final Court Order Date when Vanderbilt became a licensee of the properties. *Id*. at ¶ 7 & Exh. 2-4. Moreover, there were fires at the Rocky Point property prior to the Final Court Order Date in 2000 and 2004. *Id*. at ¶ 7 & Exh. 5. One newspaper article dated June 25, 2000, attached to the Witham Declaration, notes that the Park had been reduced to ruins. *Id*. In another article dated June 27, 2000, *over five years before the Final Court Order Date*, City Councilman Pisaturo proposed that "the building should be leveled with a bulldozer" given the "decrepit" state of the structures. *Id*.

Indeed, the SBA concedes the structures at the Midway were allowed to deteriorate long before Vanderbilt ever had any responsibilities at the properties. The SBA writes in its memo of law:

> The Midway area of the Amusement Park has stood vacant for more than nine years. During this time, several fires have been set by criminal trespassers resulting in damage or destruction of structures on the midway. At least one such fire that occurred prior to the Receiver's possession of the Property left buildings partially collapsed and such structures have remained in such condition for years.

SBA Memo of Law at 7. Despite this acknowledgment – and years of neglect of the structures – the SBA now wants to foist the entire bill on Vanderbilt's shoulders, even though Vanderbilt holds no responsibility for the many years of neglect that has occurred.

In short, even assuming section 10 of the P&S agreements were read to cover demolition and removal, those costs "accrued" prior to September 12, 2005 and must be borne by the SBA, the current property owner, because it was during the tenure of the SBA and its predecessor, not after September 12, 2005, that the deterioration occurred necessitating the remediation. To the extent there is any question on this point, the portion of the SBA's motion seeking to require Vanderbilt to pay for the remediation should be held in abeyance pending a reasonable period of discovery and then an evidentiary hearing at the appropriate time.

## III. CONCLUSION

For the foregoing reasons, Vanderbilt respectfully requests that the Court deny that portion of the SBA's motion that seeks an order requiring Vanderbilt to pay for the demolition and removal sought by the City of Warwick. Alternatively, Vanderbilt requests that said portion of the SBA's motion be held in abeyance pending a reasonable period of discovery on this issue and then an evidentiary hearing at the appropriate time.

Respectfully submitted,

*/s/ David A. Wollin*
David A. Wollin (#4950)
Adler Pollock & Sheehan PC
One Citizens Plaza, 8th Floor
Providence, RI 02903
T: (401) 274-7200
F: (401) 351-4607
Date: January 4, 2007

Attorneys for Vanderbilt Capital, LLC

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via U.S. Mail, postage pre-paid, this 4th day of January, 2007, to the following:

| | | |
|---|---|---|
| Blish & Cavanagh, LLP<br>30 Exchange Terrace<br>Providence RI 02903 | Paul Agatiello, 401K Pension Plan<br>220 Sanctuary Drive<br>East Greenwich, RI 02818 | Thomas Almeida, Town Solicitor<br>Town of Cumberland<br>P.O. Box 7<br>Cumberland, RI 02864 |
| Cheryl Asquino, Esq.<br>Narragansett Bay Commission<br>One Service Road<br>Providence RI 02905 | Belisle Group<br>c/o Donovan M. Hamm, Jr.<br>Hamm & Barry<br>5030 Anchor Way,<br>Christianstead<br>U.S. Virgin Islands 00820 | Phillip Belisle<br>1916 Rimsdale Drive<br>Myrtle Beach, SC 29575 |
| Rodio & Brown, Ltd.<br>Stephen A. Rodio, Esq.<br>91 Friendship Street<br>Providence, RI 02903 | Christine Bush, Esq.<br>Duffy & Sweeney, LTD<br>One Turks Head Place<br>Suite 1200<br>Providence, RI 02903 | James Callahan<br>269 Chapman Street<br>Canton, MA 02021 |
| City of Providence<br>Tax Collector<br>City Hall<br>25 Dorrance<br>Providence, RI 02903 | Pamela Lynn Colon<br>Law Office of Lee Rohn<br>1101 King Street<br>Christiansted, St Croix,<br>U.S. Virgin Islands 00820 | Patrick Conley, Esq.,<br>1445 Wampanoag Trail<br>Suite 203<br>East Providence, RI 02915 |
| Karen Davidson, Esq.<br>1 Ship Street<br>Providence, RI 02903 | John Dean, Esq.<br>Boisseau, & Dean LLP<br>155 South Main Street, Ste. 405<br>Providence, RI 02903 | Town of Dighton, Massachusetts<br>Attn: Brendan Herbeck<br>Office of Town Clerk<br>979 Somerset Avenue<br>Dighton, MA 02715 |
| Francis and Rita DiMento<br>c/o DiMento & Sullivan<br>7 Fanueuil Hill Marketplace<br>Boston, MA 02169 | Domestic Bank<br>815 Reservoir Avenue<br>Cranston, RI 02910 | John Earle, Esq.<br>City Solicitor<br>City of Warwick<br>3275 Post Road<br>Warwick, RI 02886 |

| | | |
|---|---|---|
| Joseph Ferrucci, Esq.<br>Ferrucci Russo<br>49 Weybosset St.<br>Providence, RI 02903 | Jeannine Bourassa<br>71 Bliss Road<br>Newport, RI 02840 | Arnold Goodstein<br>Vanderbilt Capital, LLC<br>136 West Richardson Avenue<br>Summerville, SC 29483 |
| Lawrence L. Goldberg, Esq<br>96 Jefferson Boulevard<br>Warwick, Rhode Island 02888 | John C. Gyorgy, Esq.<br>Noel & Gyorgy, LLP<br>50 South Main Street<br>Providence, RI 02903 | Allan E. Hanson, Esq.<br>U.S. Small Business Administration<br>380 Westminster Street<br>Providence, RI 02903 |
| 167 Hotel on the Cay Timeshare<br>c/o Donovan M. Hamm, Jr.<br>Attorney at Law<br>5030 Anchor Way, Gallows Bay<br>St Croix, U.S. Virgin Islands 00820 | Liu & Lu Realty, LLC<br>2856 Main Street<br>Glastonbury, CT 06033 | Joan Kilberg<br>3554 Pine Lake CT<br>Delray Beach, FL 33445-9045 |
| Metacom Medical Assoc., Inc.<br>Paul Agatiello Pension Plan<br>c/o Paul Agatiello, M.D.<br>220 Sanctuary Drive<br>East Greenwich, RI 02818 | Richard Michaels, Esq.<br>Mintz Levin<br>1 Financial Center<br>Boston, MA 02111 | Ann Marie Mitchell, Esq.<br>Toll Bros., Inc.<br>250 Gibraltar Road<br>Horsham, PA 19044 |
| Keven McKenna, Esq.<br>23 Acorn Street<br>Providence, RI 02903 | Steven M. McInnes, Esq.<br>Attorney for American Shipyard<br>Company, LLC<br>38 Bellevue Ave.<br>Newport, RI 02840 | Neal J. McNamara, Esq.<br>Holland & Knight, LLP<br>One Financial Plaza<br>Suite 1800<br>Providence, RI 02903 |
| Waste Management of Rhode Island<br>575 West Street # 210<br>Mansfield, MA 02048-1164 | Ocean State Planners<br>1255 Oaklawn Avenue<br>Cranston, RI 02920 | Gina Martin, Esq.<br>GOODWIN PROCTER, LLP<br>53 State Street<br>Exchange Place<br>Boston, MA 02109 |
| Andrew S, Richardson, Esq.<br>Ch. 7 Trustee<br>C.R. Amusements, LLC<br>182 Waterman Street<br>Providence, RI 02906 | Richmond Square Capital Corp.<br>Attn: Harold Schein<br>1 Richmond Square<br>Providence, RI 02906 | Thomas W. Rigby, III, Esq.<br>SBA as Receiver for Fairway Cap.<br>Office of General Counsel<br>4093rd Street, SW, 7th Floor<br>Washington, DC 20416 |

| | | |
|---|---|---|
| Estate of Arthur Schonbrun<br>c/o Lynn Stand, Executrix<br>555 North Avenue<br>Fort Lee, NJ 07024 | Ruth Haber Schonbrun<br>3507 Oak Way<br>Palm Air<br>Apartment 508<br>Pompano Beach, FL 33068 | Craig M. Scott, Esq. and<br>Stacey Nakasian, Esq.<br>Duffy, Sweeney & Scott, Ltd.<br>300 Turks Head Building<br>Providence, RI 02903 |
| David B. Sholem<br>Meyer Capel<br>306 West Church Street<br>P.O. Box 6750<br>Champaign, IL 61826-6750 | Everett A. Petronio, Sr.<br>Law Offices of A. Petronio, Inc.<br>1239 Hartford Avenue<br>Johnston, RI 02919 | Tax Collector<br>Cumberland Fire District<br>1530 Mendon Road<br>Cumberland, RI 02864 |
| United States Department of Labor<br>Office of the Solicitor<br>John F. Kennedy Federal Building<br>Room -375<br>Boston, MA 02203 | Henry Varra<br>350 Chestnut Street<br>West Newton, MA 02465 | |

The following parties were served via electronic notice on January 4, 2007:

| | |
|---|---|
| Joseph Avanzato | javazanto@apslaw.com, vlanctot@apslaw.com |
| Peter G. Berman | peter@raskinberman.com |
| Edward J. Bertozzi, Jr. | ebertozzi@eapdlaw.com |
| Jeffrey S. Brenner | jbrenner@nixonpeabody.com<br>proefile@nixonpeabody.com;<br>myrone@nixonpeabody.com |
| Christopher R. Bush | cbush@riag.rii.gov; randrade@riag.ri.gov |
| Frank Caprio | frankcaprio@hotmail.com |
| Thomas E. Carlotto | tcarlotto@shslawfirm.com |
| Eugenia M. Carris | Eugenia.carris@usdoj.gov |
| Michael W. Carroll | msc@carroll-law.net |
| Robert Clark Corrente | Robert.corrente@usdoj.gov |
| William J. Delaney | wdelaney@tllaw.com |
| John William Dineen | jwdineen1@yahoo.com |
| Joseph Michael DiOrio | jmdiorio@dioriolaw.com |
| John G. Earle | jearle@bselaw.com |
| Arlene Embrey | Arlene.embrey@sba.gov |
| Mark A. Fay | mark@murphyandfay.com |
| Jeffrey H. Gladstone | jhg@psh.com |
| William R. Grimm | wgrimm@haslaw.com |
| Preston W. Halperin | phalperin@shslawfirm.com;<br>dsmith@shslawfirm.com |

| | |
|---|---|
| Kevin D. Heitke | kdh@kevinheitke.com |
| Vincent A. Indeglia | vaindeglia@aol.com |
| Stephen A. Izzi | sizzi@mosesafonso.com |
| James P. Redding | reddingj@gtlaw.com |
| Jeffrey C. Schreck | jschreck@msn.com |
| K. Joseph Shekarchi | Joe@shekarchilaw.com |
| Thomas A. Tarro, III | ttarro3rd@tarrolawfirm.com |
| Robert K. Taylor | rkt@psh.com; tlc@psh.com |
| H. Marc Tepper | marc.tepper@bipc.com |
| Harris K. Weiner | hkw@pinelaw.com; llk@pinelaw.com |
| Robert D. Wieck | rwieck@mandwlaw.com |

*/s/ David A. Wollin*

*402636_1.doc*