**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br>**v.**<br>**MONETA CAPITAL CORPORATION**<br>**Defendant.** | **Civil Case No. 99-565-L**<br>**Judge Lagueux** |

# RECEIVER'S REPLY TO VANDERBILT CAPITAL LLC'S PARTIAL OBJECTION TO RECEIVER'S MOTION FOR DETERMINATION AND ORDER REGARDING THE DEMAND OF THE CITY OF WARWICK TO DEMOLISH CERTAIN STRUCTURES

COMES NOW the United States Small Business Administration ("SBA") in its capacity as court-appointed receiver ("the Receiver") of Moneta Capital Corporation ("Moneta") and, by and through its undersigned counsel, hereby replies to the partial objection filed by Vanderbilt Capital, LLC to the Receiver's Motion for Determination and Order Regarding the Demand of the City of Warwick to Demolish Certain Structures ("the Motion") (Docket No. 419).

## BACKGROUND

On November 21, 2006, the Receiver filed the Motion and requested that this Court determine that the Receiver, as titled owner of the real property commonly known as the Rocky Point Amusement Park ("the Property"), was responsible for complying with the October 19, 2006 demand by the City of Warwick ("the City') to demolish certain structures on the property that were deemed unsafe and/or hazardous within the meaning of the Rhode Island Fire Safety Code. The Receiver also asked this Court to

determine that certain provisions of a Purchase and Sale Agreements ("the Agreements") entered into between the Receiver and Vanderbilt Capital, LLC ("the Buyer") for the sale of the Property require the Buyer to pay for the demolition and remediation and to order the Buyer to pay for such demolition and remediation[1]. On January 4, 2007, Buyer filed its Response in Opposition to the Motion ("the Response") (Docket No. 429). In its Response, Buyer objected to the Motion insofar as the motion requests that the Buyer be required to pay for the demolition and remediation. No other objections to the Motion have been filed with this Court.

## ARGUMENT

The Crux of Buyer's argument is that Buyer is not obligated under the Agreements to demolish the structures and/or to pay for the costs of such demolition because (1) the costs and expenses of the demolition allegedly did not become "due and payable" prior to an alleged termination by Buyer and (2) the costs and expenses did not "accrue" after the date that Buyer assumed all costs and expenses associated with ownership of the Property. As discussed below, Buyer's convoluted arguments fail.

### I. Under the Agreement, Buyer Immediately Assumed the Costs and Expenses Associated with Ownership of the Property

This Court has held that the interpretation of contract language is a matter of law to be decided by this Court. Hord Corp. v. Polymer Research Corp., 275 F.Supp2d. 229, 235 (D.R.I. 2003) (Lagueux, J.)(*citing* Newport Plaza Assocs. v. Durfee Attleboro Bank, 985 F.2d 640, 644-45 (1s Cir. 1993)). This Court has also held that contractual language

[1] Two Purchase and Sale Agreements, attached as exhibits to Buyer's Response as Exhibits 1 and 2 to the Affidavit of Jason Witham, were executed in conjunction with the sale of the Property. However, the structures at issue are located on only one parcel; that parcel and the corresponding Agreement, marked as Exhibit 1 to the Witham Affidavit, are the subjects of this Reply.

will be given its "plain, ordinary and usual meaning." Hord, 275 F.Supp.2d at 236 (citations omitted). If the meaning of the language is clear, the contract will be enforced as written. Id. Where a contract is ambiguous, the Court may consider extrinsic evidence shedding light on the parties' intent. Lifespan Physician's Professional Services Org., Inc. v. Combined Ins. Co. of America, 345 F.Supp2d. 214, 222 (D.R.I. 2003)(Lagueux, J.)(*citing* Eagle-Picher Industries, Inc. v. Liberty Mutual Ins. Co., 682 F.2d 12, 17 (1st Cir. 1982)). The Agreement is not ambiguous in any way and should be interpreted as written.

Section 10 of the Agreement provides in pertinent part that:

> From and after ten (10) days following the Court Order having become final ("the Final Court Order Date"), . . . Buyer shall immediately assume and pay when the same become due and payable all operational responsibilities and all costs and expenses associated with the ownership of the Premises . . . including, without limitation, payment of real estate taxes assessed against the Premises . . . and repairs of the Premises. . . .

There is no dispute that the Final Court Order Date is September 12, 2005. Therefore, as of September 12, 2005, the Buyer assumed the operational responsibility for the Property which includes the remediation demanded by the City as well as the costs associated therewith, although any payment required to undertake these responsibilities does not have to be made until the payment becomes due and payable.

Buyer's argument, that it is not responsible for the demolition and its costs because the costs have not become due and payable, is flawed in that Buyer has utterly failed to address the "immediately assume" verbiage of Section 10. Buyer's interpretation would render the phrase "immediately assume" meaningless and would not effectuate the clear and unambiguous meaning of Section 10. There is only one clear and obvious interpretation of Section 10 of the Agreement: Buyer is responsible, and has been

responsible since September 12, 2005, for the operation of the Property and the costs and expenses associated with ownership of the Property.

## II. The Obligation to Comply with the City of Warwick's Demand is An Ownership Responsibility and the Costs and Expenses of Compliance Are Costs and Expenses Associated with Ownership of the Property

By its October 19, 2006 letter ("the Demolition Letter"), the City of Warwick "ordered" the Receiver, the titled owner of the Property, to "demolish and remove all the former park facility structures compromising the former 'midway area' . . . " in accordance with Section 23-27.3-125.5 of the Rhode Island State Building Code. The City went on to inform the Receiver that if the action was not taken within ten (10) days of the date of the Demolition Letter, the City would take "any and all actions deemed necessary to other wise secure the site . . . ." A true and correct copy of the Demolition Letter is attached hereto as Exhibit 1. Jason Witham and Tony Casapulla, both of Toll Brothers, were copied on the Demolition Letter by the City. By letter dated October 30, 2006, the Receiver advised the City that the Property was under the auspices of this Court and the City was stayed from undertaking action to demolish the structures without relief from this Court. A true and correct copy of the October 30, 2006 letter is attached hereto as Exhibit 2. Accordingly, in response to the City's demands, the Receiver filed the Motion on November 21, 2006.

On November 3, 2006, the Receiver sent correspondence to the Buyer demanding that it undertake the remediation in compliance with the City's demands or the Receiver would seek an Order from this Court requiring the Buyer to pay for the remediation. A true and accurate copy of the November 3, 2006 correspondence is attached hereto as

Exhibit 3. The Buyer did not comply with the demand of the Receiver, resulting in the Receiver's request for a determination that the Buyer pay the costs and expenses associated with the remediation.

There is no dispute that the City's letter was sent to the Receiver in the Receiver's capacity as owner of the Property. See Response, p. 13 (Docket No. 429); R.I.G.L. §23-28.1-5 (4), *Definitions- Compliance Order*; State of Rhode Island v. Derderian, 2005 WL 2738704 *1, *2 fn. 3 (Sup. Ct. R.I. October 21, 2005). Additionally, Buyer has not disputed that the City has the ability to demand such remediation under its police powers. Thus, it is undisputed that compliance with the City's valid demand is the responsibility of the Property owner.

Under Section 10 of the Agreement, Buyer immediately assumed responsibility for costs and expenses associated with the ownership of the Premises. Buyer now tries to avoid its responsibility by arguing that the costs and expenses associated with compliance with the October 19, 2006 Demolition Letter did not "accrue" after September 12, 2005. Buyer is apparently arguing that the duty to comply with the Demolition Letter arose over one year before the letter was written. This argument is nonsensical.

Even assuming that the Property was in poor condition prior to September 12, 2005, the Buyer willingly assumed future ownership costs and expenses when it entered into the Agreement. Moreover, at no time did Buyer seek to modify or clarify any of the provisions of the Agreement. Thus, Vanderbilt Capital, LLC and Toll Brothers, Inc., a sophisticated and experienced builder, knowingly and immediately assumed the responsibility of ownership costs and expenses as of September 12, 2005. This responsibility continues to date.

Buyer's reliance on Section 6 of the Agreement for support of its argument is also misguided. Buyer argues that because the Agreement provides that, as of September 12, 2005, the Buyer may demolish the buildings cited in the Demolition Letter at Buyer's discretion, Buyer does not need to comply with the Demolition Letter. There is nothing in the Agreement that provides that Buyer may comply with the City's police power at Buyer's discretion. Indeed, such a provision would certainly be stricken as against public policy. See Carlton v. Worcester Ins. Co., 744 F.Supp. 395, 398 (D.R.I. 1990)(Lagueux, J.)(ascertaining whether contractual provision conflicted with statutory mandates and public policy); Gorman v. St. Raphael Academy, 853 A.2d 28, 39 (R.I. 2004)(holding that regulation did not violate public policy and was therefore enforceable). The obvious purpose of Section 6 was to permit the Buyer to demolish structures in furtherance of its development plans without the necessity of seeking the Receiver's approval, not to relieve the Buyer of its responsibilities under Section 10.

## III. Buyer Remains Obligated to Pay the Costs and Expenses of Ownership and Ongoing Operational Costs and Has Failed to Properly Terminate the Agreement

Buyer also argues, equally unpersuasively, that the costs and expenses of complying with the Demolition Letter are not Buyer's responsibility because the demolition has not yet been completed and Buyer terminated the Agreement via letter as of December 12, 2006. By letter dated December 12, 2006,and on Toll Brothers letterhead, Buyer (Vanderbilt Capital, LLC) informed the Receiver that Buyer "has determined that the conditions precedent to its obligations" to purchase the Property "cannot be met" as the Buyer is "unable to achieve the required minimum density . . . " A true and correct copy of the December 12, 2006 letter is attached hereto as Exhibit 4.

In the December 12, 2006 letter, Buyer went on to inform the Receiver that it was terminating pursuant to Section 11 of the Agreement and made demand for return of the deposits held in escrow. Notwithstanding the fact that this argument completely fails to take into account that it was the Buyer's responsibility as of the date of the City's demand to contract for the demolition and ultimately pay the demolition contractor as it had "assumed" such responsibility, the alleged termination was ineffective under the terms of the Agreements.

Buyer's alleged termination was not properly submitted in accordance with Section 11 of the Agreements and is therefore ineffective. The pertinent provisions of Section 11 of the Agreements provides a contingency to permit the Buyer to terminate the Agreements in the event it cannot obtain certain municipal, state and federal approvals for a unit density of 280 on the Rocky Point Parcel and a unit density of 70 on the Rocky Beach Parcel after the submission of appropriate applications therefor. Buyer may apply for permission to construct additional residential dwelling units on the Premises; provided, however, that such application shall not alter the 280 / 70 unit residential contingency. At no time did Buyer submit an application for approval consistent with Section 11. By letter dated December 29, 2006, the Receiver responded that the termination was ineffective due to, among other things, the failure of the Buyer to meet residential unit contingency and that the request for return of the deposits was denied. A

true and correct copy of the December 29, 2006 letter is attached hereto as Exhibit 5[2].

Buyer's termination is also ineffective because Buyer failed to adhere to the requirements for termination as set out in Section 11, which provides that along with written notice to the Receiver, Buyer had to provide original of all Documents as that term is defined therein. The alleged termination notice was not accompanied by any of the original Documents. Given that Section 11 requires "strict compliance" with its terms, the December 12, 2006 letter does not constitute a valid termination and Buyer continues to be obligated under the terms of the Agreement.

IV. Buyer Is In Default of the Agreement for Failure to Pay Operational Costs and the Receiver Is Entitled to Retain Buyer's Deposit

In the December 29, 2006 letter, the Receiver advised Buyer that it was in default pursuant to Section 12 of the Agreement for failure to pay Operational Costs in accordance with Section 10 of the Agreement. By letter dated January 12, 2007, the Receiver forwarded Buyer documentation detailing the Operational Costs currently due

[2] By letter dated January 4, 2007, Buyer informed the Receiver that it disagreed with the Receiver's position with respect to the submission of the applications for approval. According to Buyer, the application requirement to satisfy the condition precedent set forth in the Agreement is "not less than" the number stated in the Agreements. Buyer, however, fails to address the provision in Section 11 each Agreement that state as follows:

Buyer may apply for permission to construct additional residential dwelling units on the Premises; provided, however, that such application shall not alter the 70 unit residential contingency

Buyer may apply for permission to construct additional residential dwelling units on the Premises; provided, however, that such application shall not alter the 280 unit residential contingency

The language of Section 11, read in its entirety, clearly indicates that Buyer's application for more than the 280 and 70 residential units provided in the respective Agreement does not meet the conditions precedent to permit a termination. To the extent the Court finds any ambiguity, the Receiver is prepared to present testimony relative to the unit contingency and the agreement by all bidders (including the Buyer) that a total unit contingency of 350 was a non-negotiable provision to be included in sales contract for the Property.

from Buyer. A true and correct copy of the January 12, 2007 letter with enclosures is attached hereto as Exhibit 6.

The Operational Costs currently due from Buyer total over $403,709.23 and include $161,394.44 in real estate taxes. To date, Buyer has failed to cure its default. As further provided in Section 12 of the Agreement, if the default is not cured upon the expiration of 30 days from the date of notice of default (or on or before January 29, 2007), the Receiver is entitled to keep the full amount of the deposits that have been requested by Buyer. In the event that Buyer does not cure its default within the time period prescribed, the Receiver will move this Court for a determination that Buyer is in default and that the Receiver is entitled to receive, from the designated escrow agent, Buyer's full deposit as well as reimbursement of any costs incurred by the Receiver in fulfilling Buyer's obligations under the Agreement.

## CONCLUSION

Based upon the foregoing, the Receiver requests that the Court (1) determine that as of November, 2006 the Receiver has the responsibility as the owner of the Property to comply with the City's demands; (2) determine that the Buyer is obligated under the Purchase and Sale Agreements to pay for the remediation demanded by the City; and (3) order that the Buyer pay for such remediation as demanded by the City.

Respectfully submitted,

Dated: January 15, 2007

By:

_/s/ Arlene M. Embrey_

Arlene M. Embrey
Trial Attorney
U.S. Small Business Administration as
Receiver for Moneta Capital Corp.
409 Third Street, S.W., 7th Floor
Washington, D.C. 20416
(202) 205-6976

# CERTIFICATE OF SERVICE

*I HEREBY CERTIFY* that a true and correct copy of the foregoing was furnished via U.S. Mail, postage pre-paid this 15th day of January, 2007 to the following:

Jeffrey C. Schreck, Esquire
One Providence Washington Plaza
Fifth Floor
Providence, RI 02903

Northeast Capital Pension Trust
c/o Arnold Kilberg & Co.
285 Governor Street
Providence, RI 02906

William J. Delaney, Esq.
Tillinghast, Licht, Perkins, Smith & Cohen, LLP
10 Weybossett Street
Providence, RI 02903

Mark A. Fay, Esquire
Murphy & Fay, LLP
127 Dorrance Street, 2nd Floor
Providence, RI 02903

Patrick Conley, Esq.,
1445 Wampanoag Trail
Suite 203
East Providence, RI 02915

Richard Levine, Esquire
Adler Pollock & Sheehan P.C.
175 Federal Street
Boston MA 02110

Thomas Almeida, Town Solicitor
Town of Cumberland
P.O. Box 7
Cumberland, RI 02864

H. Marc Tepper
Buchanan Ingersoll, P.C.
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

Robert D. Wieck
MacAdams & Weick Inc.
101 Dyer Street
Providence, RI 02903

Louis A. Geremia, Esq.
Geremia & DeMarco, Ltd.
99 Wayland Avenue
Providence, RI 02906

Joseph Ferrucci, Esquire
Ferrucci Russo
49 Weybosset St.
Providence, RI 02903

Lisa Dinerman, Esq.
Assistant United States Attorney
50 Kennedy Plaza
Providence, RI 02903

Allan E. Hanson, Esq.
U.S. Small Business Administration
380 Westminster Street
Providence, RI 02903

Andrew S. Richardson, Esq.
Ch. 7 Trustee
C.R. Amusements, LLC
182 Waterman Street
Providence, Rhode Island 02906

Jeffrey H. Gladstone, Esq.
Robert Taylor, Esq.
Partridge, Snow & Hahn
180 South Main Street
Providence, RI 02903

Edward Bertozzi, Esq.
Edwards & Angell, LLC
2800 Financial Plaza
Providence, RI 02903-2499

Norman J. Bolotow, Esq.
99 Wayland Avenue
Providence, RI 02906

Timothy T. More, Esquire
50 South Main Street
Providence RI 02903

David B. Sholem
Meyer Capel
306 West Church Street
P.O. Box 6750
Champaign, IL 61826-6750

Gregory T. Parkos Revocable Trust
Joan M. Parkos Revocable Trust 1994
c/o Norman J. Bolotow, Esq.
99 Wayland Avenue
Providence, RI 02906

Ruth Haber Schonbrun
3507 Oak Way
Palm Air
Apartment 508
Pompano Beach, FL 33068

Estate of Arthur Schonbrun
c/o Lynn Stand, Executrix
555 North Avenue
Fort Lee, NJ 07024

Kevin McKenna, Esquire
23 Acorn Street
Providence, RI 02903

Robert Stolzman, Esq.
Adler Pollock & Sheehan
1 Citizens Plaza, 8th Floor
Providence, RI 02903

Paul Agatiello, 401K Pension Plan
220 Sanctuary Drive
East Greenwich, RI 02818

Joan Kilberg
3554 Pine Lake CT
Delray Beach, FL 33445-9045

Jeannine Bourassa
71 Bliss Road
Newport, RI 02840

Peter G. Berman, Esq.
Raskin & Berman
116 East Manning Street
Providence, RI 02906

Craig M. Scott, Esq. and
Stacey Nakasian, Esq.
Duffy & Sweeney, Ltd.
300 Turks Head Building
Providence, RI 02903

Lawrence L. Goldberg, Esq.
96 Jefferson Boulevard
Warwick, Rhode Island 02888

Richmond Square Capital Corp.
Attn: Harold Schein
1 Richmond Square
Providence, RI 02906

Pamela Lynn Colon
Law Office of Lee Rohn
1101 King Street
Christiansted, St Croix,
U.S. Virgin Islands 00820

K. Joseph Shekarchi, Esq.
33 College Hill Road, Suite 15-E
Warwick, RI 02886

Frederick Raffeto, Esq.
McLaughlin, Bennett,
Monmouth Shores Corporate Park
1350 Campus Parkway
Neptune, NJ 07753

Domestic Bank
815 Reservoir Avenue
Cranston, RI 02910

Waste Management of Rhode Island
575 West Street # 210
Mansfield, MA 02048-1164

Blish & Cavanagh, LLP
30 Exchange Terrace
Providence RI 02903

Township of Hopewell, N.J.
c/o Frederick Raffetto, Esq.
Monmouth Shores Corp. Park
Wall Township
1305 Campus Pkwy.
Neptune, NJ 07753

Tax Collector
Cumberland Fire District
1530 Mendon Road
Cumberland, RI 02864

Town of Dighton, Massachusetts
Attn: Brendan Herbeck
Office of Town Clerk
979 Somerset Avenue
Dighton, MA 02715

Ocean State Planners
1255 Oaklawn Avenue
Cranston, RI 02920

John C. Gyorgy, Esquire
Noel & Gyorgy, LLP
50 South Main Street
Providence, RI 02903

John Dean, Esquire
Boisseau, & Dean LLP
155 South Main Street, Ste. 405
Providence, RI 02903

City of Providence
Tax Collector
City Hall
25 Dorrance
Providence, RI 02903

Richard Michaels, Esq.
Mintz Levin
1 Financial Center
Boston, MA 02111

Ann Mitchell, Esquire
Toll Brothers, Inc.
250 Gibraltar Road
Horsham, PA 19044

Francis and Rita DiMento
c/o DiMento & Sullivan
7 Fanueuil Hill Marketplace
Boston, MA 02169

Henry Varra
350 Chestnut Street
West Newton, MA 02465

James Callahan
269 Chapman Street
Canton, MA 02021

167 Hotel on the Cay Timeshare
c/o Donovan M. Hamm, Jr.
Attorney at Law
5030 Anchor Way, Gallows Bay
St Croix, U.S. Virgin Islands 00820

Belisle Group
c/o Donovan M. Hamm, Jr.
Hamm & Barry
5030 Anchor Way, Christianstead
U.S. Virgin Islands 00820

Rodio & Brown, Ltd.
Stephen A. Rodio, Esq.
91 Friendship Street
Providence, RI 02903

Jennifer C. Christopher
c/o Pamela Lynn Colon
Law office Lee J. Rohn
101 King Street, Suite 2
Christianstead St. Croix 00820

Northeast Capital Corporation
c/o Arnold Kilberg & Company
285 Governor Street
Providence, RI 02906

Phillip Belisle
1916 Rimsdale Drive
Myrtle Beach, SC 29575

Everett Petronio, Esquire
1239 Hartford Avenue
Johnston, RI 02919

United States Department of Labor
Office of the Solicitor
John F. Kennedy Federal Building
Room -375
Boston, MA 02203

Richard Levine, Esquire
Adler Pollock & Sheehan P.C.
175 Federal Street
Boston MA 02110

Thomas W. Rigby, III, Esq.
SBA as Receiver for Fairway Cap.
Office of General Counsel
4093rd Street, SW, 7th Floor
Washington, DC 20416

Metacom Medical Assoc., Inc.
Paul Agatiello Pension Plan
c/o Paul Agatiello, M.D.
220 Sanctuary Drive
East Greenwich, RI 02818

Harris K. Weiner, Esquire
Law Office of Jeffrey B. Pine
321 South Main Street, Ste. 302
Providence, RI 02903

Cheryl Asquino, Esquire
Narragansett Bay Commission
One Service Road
Providence RI 02905

Acropolis Enterprises, Inc.
285 Governor Street
Providence, RI 02906

Gregory Hamilton, Esquire
154 Waterman Avenue
Providence, RI

Liu & Lu Realty, LLC
2856 Main Street
Glastonbury, CT 06033

John Earle, Esq.
City Solicitor of Warwick
3275 Post Road
Warwick, RI 02886

Gary Dale Kilberg
90 Irving Avenue
Providence, Rhode Island 02906

Karen Davidson, Esquire
1 Ship Street
Providence, RI 02903

Arnold Goodstein
Vanderbilt Capital, LLC
136 West Richardson Avenue
Summerville, SC 29483

Neal J. McNamara, Esquire
Holland & Knight, LLP
One Financial Plaza
Suite 1800
Providence, RI 02903

Steven M. McInnes, Esquire
Attorney for American Shipyard
Company, LLC
38 Bellevue Ave.
Newport, RI 02840

Gina Martin, Esquire
GOODWIN PROCTER, LLP
53 State Street
Exchange Place
Boston, MA 02109

Vincent A. Indeglia, Esq.
Indeglia & Associates
1485 South County Trial, 2nd Fl
East Greenwich RI 02818

Christine Bush, Esquire
Duffy & Sweeney, LTD
One Turks Head Place
Suite 1200
Providence, RI 02903

William R. Grimm, Esq.
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

The following parties were served via electronic notice on January 15, 2007:

| | |
|---|---|
| Joesph Avanzato | javazanto@apslaw.com, vlanctot@apslaw.com |
| Peter G. Berman | peter@raskinberman.com |
| Edward J. Bertozzi, Jr. | ebertozzi@eapdlaw.com |
| Jeffrey S. Brenner | jbrenner@nixonpeabody.com, proefile@nixonpeabody.com, myrone@nixonpeabody.com |
| Christopher R. Bush | cbush@riag.ri.gov, randrade@riag.ri.gov |
| Frank Caprio | frankcaprio@hotmail.com |
| Thomas E. Carlotto | tcarlotto@shslawfirm.com |
| Eugenia M. Carris | Eugenia.carris@usdoj.gov |
| Michael W. Carroll | mwc@carroll-law.net |
| Robert Clark Corrente | Robert.corrente@usdoj.gov |
| William J. Delaney | wdelaney@tllaw.com |
| John William Dineen | jwdineen1@yahoo.com |
| Joseph Michael DiOrio | jmdiorio@diorioIaw.com |
| Arlene Embrey | Arlene.embrey@sba.gov |
| Mark A. Fay | mark@murphyandfay.com |
| Jeffrey H. Gladstone | jhg@psh.com |
| William R. Grimm | wgrimm@haslaw.com |
| Preston. W. Halperin | phalperin@shslawfirm.com, dsmith@shslawfirm.com |
| Kevin D. Heitke | kdh@kevinheitke.com |
| Vincent A. Indeglia | vaindeglia@aol.com |
| Stephen A. Izzi | sizzi@mosesafonso.com |
| James P. Redding | reddingj@gtlaw.com |
| Jeffrey C. Schreck | jschreck@msn.com |
| K. Joseph Shekarchi | joe@shekarchilaw.com |
| Thomas A. Tarro, III | ttarro3rd@tarrolawfirm.com |
| Robert K. Taylor | rkt@psh.com, tlc@psh.com |
| H. Marc Tepper | marc.tepper@bipc.com |
| Harris K. Weiner | hkw@pinelaw.com, llk@pinelaw.com |
| Robert D. Wieck | rweick@mandwlaw.com |
| David A. Wollin | dwollin@apslaw.com |

/s/ Michele E. Sisson