# PARTICIPATION AGREEMENT

This Participation Agreement (the "Agreement") is entered into on November 30, 1994 between **Moneta Capital Corporation,** a federally licensed small business investment corporation under the Small Business Investment Act of 1958, with its principal office at 99 Wayland Avenue, Providence, Rhode Island 02906 ("Lender") and The Northeast Capital Corporation Pension Plan (the "Participant").

## RECITALS

The Lender has entered into a term loan with American Shipyard Corporation **, a Rhode Island corporation** (the "Borrower"), pursuant to which the Lender has agreed to make a Loan (as defined below) to the Borrower in the amount of Three Million One Hundred Twenty Thousand Dollars ($3,120,000). Participant has agreed to buy from Lender and Lender has agreed to sell to Participant an interest (the "Participation") in said Loan, upon the following terms and conditions.

NOW, THEREFORE, the parties hereto, in consideration of the terms and conditions hereof, each agreeing to be legally bound hereby, agree as follows:

EXHIBIT 1

## SECTION 1. DEFINITIONS

For purposes of this Agreement, the following capitalized terms shall have the meaning set forth below:

1.1. "Collateral": shall mean all collateral security for the Loan granted pursuant to and as evidenced by the Loan documents.

1.2. Collections": shall mean all amounts received by lender in repayment of principal or interest on the Loan and in repayment of fees and expenses whether received from the Borrower or as proceeds of the Collateral or otherwise received; but excluding therefrom, however, any and all points originally tendered by Borrower or any and all prepayment premiums or penalties thereafter tendered by Borrower.

1.3. "Loan": shall mean the Three Million One Hundred Twenty Thousand and 00/100 Dollars ($3,120,000) loan made to the Borrower under the Loan Documents.

1.4. "Loan Documents": shall mean those documents set forth on Exhibit A hereto and incorporated herein by reference.

1.5. "Participant's Investment": shall mean a sum equal to the total of the purchase price paid by Participant for participation in the Loan less all amounts paid or credited by the Lender to Participant of Collections pursuant to this agreement.

1.6. "Participation Percentage": shall mean Participant's undivided fractional interest in the Loan, Collateral and Collections, in the proportion that Participant's Investment bears to the principal balance due to the Lender from the Borrower under the Loan Documents.

SECTION 2. SALE OF PARTICIPATION

Contemporaneously with the execution of this Agreement, Lender sells to Participant and Participant buys, without recourse, from lender a participation, the purchase price of which is Fifty Thousand and 00/100 Dollars ($50,000).

SECTION 3. INTEREST, ETC.

3.1. Interest Rate and Distribution. Out of any amounts received by Lender as charges or interest on the Loan, Lender shall transmit to Participant, as Participant's sole share thereof, an amount equivalent to interest computed upon Participant's Investment at the rate of 10.5% interest. In no event shall Participant receive hereunder interest on its participation at a rate in excess of the interest rate received by Lender under the Loan Documents. Such interest shall be paid by the Lender to Participant within a reasonable time after received by the Lender.

3.2. Lender's Title subject to Participant's Interest. The Loan, the Collateral, the Collections, and the charges or interest on the Loan shall be retained by Lender: (a) in its own name with regard to the nonparticipated interest therein; and, (b) to the extent of Participant's interest therein, as agent of Participant and subject to Participant's rights with respect thereto as herein set forth.

3.3. Costs and Expenses. All costs and expenses incurred by the Lender in monitoring, servicing and collecting the Loan, shall be borne by Lender and Participant pro-rata in accordance with their respective participations to the extent not reimbursed by the Borrower.

3.4. Books and Records. Lender will keep a record of the Loan and of all of the Collateral apart from its records of its other assets, appropriately marked as to show the interest of Participant therein; in recording the ownership of the Loan on its books and in all statements and reports as to its condition and assets, Lender will include only such amount of the Loan and the Collateral as shall equal its own pro-rata interest therein.

## SECTION 4. MANAGEMENT

4.1. Lender's Rights and Duties with respect to the Loan Documents; Participant's Rights and Obligations. Lender, without notice to Participant, will have the sole right:

(a) to hold the Loan Documents; and

(b) to manage, perform and enforce the terms of the Loan Documents; and

(c) to exercise and enforce all privileges and rights exercisable or enforceable by it thereunder including without limitation:

1. Declaration of default;

2. Acceleration of the Loan;

3. Commencement of foreclosure action, or action in lieu of foreclosure, with respect to any collateral for the Loan;

4. Retention of legal counsel, accountants and other professionals as it determines appropriate, in accordance with prudent lending standards for the joint benefit of Lender and Participant, according to Lender's discretion and the exercise of its business judgment.

Lender may not, however, without the prior written consent of Participant; amend or modify the Loan Documents (except as permitted in the previous paragraph); or release from liability any party liable under any of the Loan Documents; or permit the substitution or withdrawal of security.

Lender will use its ordinary course of business prudence and judgment in the servicing and collection of the Loan and in the realization upon the collateral and in the carrying out of the terms and provisions of the Loan Documents.

The Lender shall keep Participant fully advised of any material actions taken or forborne by the Lender and will consult with Participant concerning such actions.

4.2. Examination of Books and Records. At any reasonable time during business hours, Lender will permit such agents as may be designated to it in writing by Participant to examine its books, records and accounts relating to transactions with the Borrower under the Loan Documents and will from time to time, at the request of Participant, furnish to Participant such information as it may have or be able to obtain with respect to the Loan Documents, the carrying out of the provisions thereof and/or the condition and operations of the Borrower.

## SECTION 5. LIQUIDATION AND COLLECTIONS

5.1. Events of Liquidation. Upon default by the Borrower in the payment or performance of its obligations under the Loan Documents, Lender shall take such action which it is entitled to take under the Loan Documents or by law for the protection or realization of the Collateral or for the repayment of the Loan or the enforcement of any of the terms and provisions of the Loan Documents.

5.2. Application of Collections. If Lender declares the Borrower in default under the Loan Documents; takes action to realize upon the Collateral or enforce Lender's rights against

the Borrower; exercises Lender's rights pursuant to the Loan Documents; or gives notice to Participant that it is treating the account as "in liquidation," then all Collections thereafter shall be applied:

(a) first to the payment of all expenses incurred by Lender;

(b) then to the payment of accrued and outstanding interest and fees on the Loan with the Lender to remit to Participant the Participation Percentage of such payment of accrued and outstanding interest; and

(c) then the balance thereof to all outstanding principal of the Loan, with the Lender to remit to Participant the Participation Percentage of said balance.

## SECTION 6. REPURCHASE

At any time Lender shall have the option to repurchase from Participant its participation in the Loan at a price equal to the balance of:

(i) the sum of (a) Participant's Investment then out-standing, plus (b) Participant's share of all charges or interest earned on the Loan to such date, minus

(ii) Participant's share of all outstanding expenses thereunder to such date.

If Lender exercises its option as aforesaid, upon payment thereof this Participation Agreement shall terminate as to Participant for all purposes and said parties will be relieved of any liability to the other arising from any prior transactions hereunder.

## SECTION 7. REPRESENTATIONS, WARRANTIES AND LIMITATIONS ON LIABILITY, DUTY AND RIGHTS

7.1. Limitations on Lender' s Duties. The Lender shall have no duties or responsibilities with respect to Participant except as expressly set forth in this Agreement and shall not, by

reason of this Agreement or otherwise, have any implied duties to or fiduciary relationship with the Participant.

7.2. Limitations and Acknowledgments regarding Lender's Liability and Representations; Lender's and Participant's Representations and Warranties.

(a) Limitations on Liability. Notwithstanding any other term or provision hereof:

(i) the Lender shall not be liable to Participant for any action taken or omitted or for any error in judgment, except for its own bad faith or wilful misconduct under the Loan Documents or hereunder or any of the transactions covered thereby;

(ii) the Lender does not assume and shall have no responsibility or liability, express or implied, for the repayment price of the Participant's Investment, the repayment of any sum, the enforceability, genuineness or validity, priority or the financial condition of the Borrower or continued solvency thereof or of any obligor pursuant to the financing documents, or the accuracy of any credit or other information furnished by the Lender to Participant, or the continued existence, sufficiency or value of any Collateral.

(b) Participant's Acknowledgments, Representations and Warranties. Participant acknowledges all of the foregoing and further acknowledges that Participant is fully familiar with, and approves, all of the details of the Loan Documents and all transactions reflected therein. Participant acknowledges that the Loan Documents listed on Exhibit "A" annexed hereto have been reviewed and that participant has had (i) access to all of the records of the Borrower and Lender desired and (ii) an opportunity to make such inquiry of Borrower as to Borrower's financial condition and the arrangements between Borrower and Lender, and, inquiry of Lender in connection therewith to the extent Participant felt necessary, or appropriate. Participant, represents and warrants making an independent evaluation of the underlying credit, and the existing value and lien status of the Collateral. Participant further represents and warrants the Lender's explanation of and is satisfied with the Lender's customary practice in handling, supervising and controlling loans and collateral of the type similar to the Loan and the Collateral; and that the execution hereof has been duly authorized.

(c) Lender' s Representations and Warranties. The Lender represents and warrants to Participant;

(i) that it has unencumbered ownership of the Loan Documents and the authority to sell participa-tions in the Loan and that any required consents from the Borrower have been obtained;

(ii) that it will continue to maintain the perfection and priority of all liens granted it pursuant to the Loan Documents;

(iii) that it will in the future promptly furnish Participant with copies of all financial and other data it receives from the Borrower;

(iv) that it will continuously provide Participant with prompt notification of the following to the extend that the Lender has actual notice thereof;

(1) any material adverse change in the Borrower's financial condition;

(2) any change in the perfection or priority of the lien status or material change in value, of the collateral;

(3) any request by the Borrower or the Lender to alter the terms of the Loan or release or substitute collateral or any obligor of the Loan;

(4) any payment failure and the occurrence of any event of default or condition which on notice or passage of time or both could become an event of default; and

(5) any information required from the Borrower under the Loan Documents; as well as, upon request of the Participant; copies of records reflecting payments on the Loan, or any other information in the Lender's possession bearing on the Borrower's creditworthiness and the value and lien status of the Collateral.

The Lender makes no representations or warranties, express or implied, except as set forth in this Agreement.

7.3. General Purchase Representations. Nothing herein contained shall confer upon Lender or Participant any interest in, or subject Lender or Participant to any liability for, the assets or liabilities of the other except only as to the Loan in which the Participant is participating with Lender hereunder.

Participant acknowledges entering into this Agreement and purchasing the participation for the account of the Participant.

## SECTION 8. MISCELLANEOUS

8.1. Successors and Assigns: Controlling Law: Amendment. This Participation Agreement shall be binding upon and shall enure to the benefit of the respective successors and permitted assigns of the parties hereto and shall be governed by and interpreted in accordance with the laws of the State of Rhode Island. This Agreement, and the documents executed and delivered pursuant hereto, constitute the entire agreement between the parties and may be amended only by a writing signed on behalf of each party.

8.2. Survival. All of the representations, warranties and covenants set forth herein shall survive until the completion of all proceedings for termination or liquidation hereunder.

8.3. Notices. All notices hereunder shall be in writing and shall be deemed delivered if mailed to the respective parties at the addresses herein given (unless such address is changed by written notice hereunder) by certified mail, postage prepaid, return receipt requested.

8.4. Incorporation by Reference. Incorporated herein by reference are all of the terms and provisions of the Loan Documents, the provisions of which shall be construed as complimentary hereto.

8.5. Limitation on Participant. Notwithstanding anything herein to the contrary, Participant shall not be due from Lender, nor shall the Participant have any right, title or interest in and to any points received by Lender from Borrower, or in any prepayment penalties or premiums tendered by Borrower.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

WITNESS:

Jeannie T. Bourassa

Moneta Capital Corporation

Arnold Kilberg
Arnold Kilberg
Its President

WITNESS:

Jeannie T. Bourassa

The Northeast Capital Corporation Pension Plan

Arnold Kilberg
Arnold Kilberg
Its Trustee