EXHIBIT D

WINOGRAD, SHINE & ZACKS, P.C.

ATTORNEYS AT LAW
123 DYER STREET
PROVIDENCE, RHODE ISLAND 02903-3980
(401) 273-8300
FAX: (401) 272-5728
EMAIL: firm@wszlaw.com

MAX WINOGRAD
(1921-1970)
ALLAN M. SHINE
RICHARD W. ZACKS
CARY J. COEN
E. MARTIN STUTCHFIELD
DIANE FINKLE
MELISSA M. HORNE
RICHARD J. LAND
MACRINA G. HJERPE

OF COUNSEL
S. MICHAEL LEVIN
MICHAEL R. GOLDENBERG
BARBARA S. COHEN

February 27, 2008

**By Federal Express**
United States Small Business Administration,
Receiver of Moneta Capital Corporation
Attn: Stephen Jones
666 Eleventh Street, N.W., Suite 200
Washington, D.C. 20001

Re: AARPP Acquisition of Rocky Point Real Estate
Due Diligence Issues

Dear Mr. Jones:

Consistent with recent conversations between you and Nicholas Cambio, Atlantic American Rocky Point Partners Group, LLC ("AARPP") feels compelled to notify the Small Business Administration, in its capacity as Receiver of Moneta Capital Corporation (the "Receiver"), of several issues of significant concern to AARPP at this juncture of its due diligence review relating to the 78+ acre parcel (the "Main Parcel") that is the subject of that Purchase and Sale Agreement between the Receiver and AARPP, dated December 17, 2007 ( the "Agreement"). As more fully discussed below, these issues which arise as a result of the sale of the 41 acre parcel (the "City Parcel") conveyed to the City of Warwick (the "City") in December 2007, present a substantial impediment to the development of the Main Parcel unless adequately addressed and resolved by the Receiver and the City. To the best knowledge of AARPP, certain rights relating to the City Parcel that are crucial for the development of the Main Parcel were not retained or addressed by the Receiver and the City at the time the land parcel of the receivership estate ("Rocky Point") was subdivided and conveyed by the Receiver.

While additional issues may come to AARPP's attention upon further due diligence, there are six critical areas that must be addressed and resolved by the Receiver and the City to the satisfaction of AARPP before AARPP can continue with its due diligence of the Main Parcel and move toward a closing on the same.

1. **Sewer Allocation**

There are three sewer agreements with the Warwick Sewer Authority that benefited Rocky Point before its subdivision into the two parcels that exist today. The initial Agreement, dated July 22, 1986, as amended by Agreement dated April 27, 1987, and ratified and further amended by Agreement dated July 15, 1992, authorized the extension of sewer lines and the connection of Rocky Point and another nearby development, Anglesea, to the Warwick sewer system. Under the Agreements, none of which are

recorded in the Warwick Land Evidence Records, a total of 100,000 gallons per day of effluent flow is permitted through these sewer lines, with a daily total of 25,000 gallons allocated to the Anglesea development and 75,000 gallons allocated to Rocky Point.

It appears that the allocation issue of the sewer effluent was not addressed in any manner when the City Parcel was conveyed. It is not feasible for AARPP, or any other party, to develop the Main Parcel without having the right to use in perpetuity the full 75,000 gallon daily sewer effluent allocation solely for the Main Parcel, with such allocation recorded in the Warwick Land Evidence Records for the benefit of said parcel.

2. **Discharge Easement Over City Parcel for Excess Storm Water Run-Off**

The Main Parcel cannot be developed by AARPP, or by any other party, unless blanket storm water runoff easements over the City Parcel are granted for the benefit of the Main Parcel to enable storm water discharge over the City Parcel and into Narragansett Bay ("Drainage Easements"). Specific discharge points would have to be determined in accordance with detailed engineering plans prepared by a duly licensed engineering firm, and ultimately subject to review and approval of the Coastal Resource Management Council. AARPP is confident that such points of discharge can be designed in a manner that will not alter or negatively impact wetlands or protected species habitats, if any, on the Main Parcel or the City Parcel. Such Drainage Easements would have to benefit the Main Parcel in perpetuity and be recorded in the Warwick Land Evidence Records.

It appears that when the City Parcel was conveyed, the Receiver did not retain such easement rights over the City Parcel. AARPP also understands that pursuant to the conveyance documents, specifically the Conservation Easement and the Receiver's Deed, the City cannot now grant any such general or specific Drainage Easements to AARPP, or any other developer, without the approval and consent of the Rhode Island Department of Environmental Management ("DEM") and the National Oceanic Atmospheric Administration ("NOAA").

3. **Utility Easements**

The Main Parcel cannot be developed by AARPP, or by any other party, unless various easements for installation and access of necessary utilities both above and below the City Parcel are granted for the benefit of the Main Parcel ("Utility Easements"). Specific access and installation points for such utilities would have to be determined in accordance with detailed engineering plans prepared by a duly licensed engineering firm. AARPP is confident that such utility installation and access points can be designed in a manner that will not alter or negatively impact wetlands or protected species habitats, if any, on the Main Parcel or the City Parcel. Such Utility Easements would have to benefit the Main Parcel in perpetuity and be recorded in the Warwick Land Evidence Records.

It appears that when the City Parcel was conveyed, the Receiver did not retain rights over the City Parcel to provide for such Utility Easements. AARPP also understands that pursuant to the Conservation Easement and the Receiver's Deed, the City cannot now grant any such general or specific Utility Easements to AARPP, or any other developer, without the approval and consent of DEM and NOAA.

**4. Height Restrictions on City Parcel**

It is not feasible for the Main Parcel to be developed by AARPP, or by any other party, unless there are height restrictions over the City Parcel to prevent the obstruction of views on the Main Parcel and to provide for view and site corridors on the City Parcel ("Height Restrictions"). Such Height Restrictions would have to benefit the Main Parcel in perpetuity and be recorded in the Warwick Land Evidence Records.

It appears that when the City Parcel was conveyed, the Receiver did not retain rights over the City Parcel to provide for such Height Restrictions. AARPP also understands that the City of Warwick may not now be able to agree to any such Height Restrictions over the City Parcel without the approval and consent of DEM and NOAA, as the same may constitute encumbrances as referred to in the Conservation Easement and the Receiver's Deed.

**5. Remediation of Lead Contaminated Soil on the City Parcel**

AARPP has learned that there is significant lead contamination of the soils on both the Main Parcel and the City Parcel. As the Receiver is aware, the City and AARPP contemplate that AARPP will expend substantial monies to construct public access walkways over the City Parcel and to maintain the walkways and site view corridors on the City Parcel for the benefit of the public and the Main Parcel, as outlined in the Management Plan for the City Parcel approved by DEM and NOAA. It is imperative that these construction and maintenance activities be carried out without health risk to any employees, contractors or any persons engaged by AARPP for such work. Additionally, AARPP and its agents cannot be at risk for potential liability to the public or any other parties who may utilize the walkways or other recreational areas on the City Parcel AARPP has improved and/or maintains. Without agreement with the City on this point and specific funding for such purpose, it is not feasible for AARPP, or any other party, to develop the Main Parcel and improve the City Parcel.

Accordingly, the lead contaminated soils on the City Parcel must be remediated by the City to levels that comply with applicable federal and state laws and regulations. AARPP understands that as a municipality, the City may well be eligible for grant funds to assist it in conducting such remediation of the contaminated soil on the City Parcel.

6. **Overnight Public Access Limit Over City Parcel**

To provide for the safety and security of the residents and of the improvements on the Main Parcel once developed, and to preserve and protect the improvements contemplated to be made by AARPP on the City Parcel, it is critical that public access to the City Parcel be prohibited during the hours from dusk to dawn. Such public access restrictions during these hours would have to be in place in perpetuity and be recorded in the Warwick Land Evidence Records.

It appears that the when the City Parcel was conveyed, the Receiver did not retain rights over the City Parcel to provide for such public access restrictions during these hours. AARPP also understands that the City may not now be able to impose any such access restrictions over the City Parcel without the approval and consent of DEM and NOAA as the same may constitute encumbrances as referred to in the Conservation Easement and the Receiver's Deed.

AARPP has expended a substantial amount of time, money and effort in implementing its due diligence in good faith in accordance with its agreement with the Receiver. AARPP remains committed in continuing its due diligence of the Main Parcel. However, at this juncture, in order for further expenditures in connection with such due diligence to make economic sense, the above issues must immediately be addressed by the Receiver and the City, with resolutions satisfactory to AARPP. Please be assured that AARPP will work closely with the Receiver and the City in their efforts to resolve these issues. AARPP is prepared to provide both parties with assistance on these issues and is committed to such efforts to reach a satisfactory resolution so the parties may proceed further towards the sale of Main Parcel.

I look forward to hearing form the Receiver regarding these issues.

Very truly yours,

WINOGRAD, SHINE & ZACKS, P.C.

Diane Finkle

Diane Finkle

DF:syl

cc: Thomas E. Carlotto, Esq.
Arlene Embrey, Esq.
The Honorable Mayor Scott Avedisian
Mark Carruolo, Director of Planning Dept.
Joseph Shekarchi, Esq.