WINOGRAD, SHINE & ZACKS, P.C.

ATTORNEYS AT LAW
123 DYER STREET
PROVIDENCE, RHODE ISLAND 02903-3980
(401) 273-8300
FAX: (401) 272-5728
EMAIL: firm@wszlaw.com

MAX WINOGRAD
(1921-1970)
ALLAN M. SHINE
RICHARD W. ZACKS
CARY J. COEN
E. MARTIN STUTCHFIELD
DIANE FINKLE
MELISSA M. HORNE
RICHARD J. LAND
MACRINA G. HJERPE

OF COUNSEL
S. MICHAEL LEVIN
MICHAEL R. GOLDENBERG
BARBARA S. COHEN

March 14, 2008

VIA FEDERAL EXPRESS

Small Business Administration, Receiver of
Moneta Capital Corporation
Attn: Stephen Jones
666 11th Street, N.W., Suite 200
Washington, DC 20001

Re: AARPP Acquisition of Rocky Point Real Estate
Extension Request

Dear Mr. Jones:

I am following up on my letter of February 27, 2008 regarding issues that have arisen during the good faith due diligence conducted by Atlantic American Rocky Point Partners Group, LLC ("AARPP") and the response of the Receiver dated March 3, 2008. For the convenience of the parties, the terms used herein shall be the same as defined in my February 27, 2008 letter.

AARPP reiterates its commitment to this project, and to assist it with various municipal issues, has engaged special counsel Joseph Shekarchi who has considerable expertise in such matters. Subsequent to your letter of March 3, 2008, representatives of AARPP, attorney Shekarchi and I met with Mark Carruolo, Director of the Warwick City Planning Department, Warwick Mayor Avedesian, City Council President Solomon, City Councilman DelGiudice, and City Solicitor Dianna Pearson to further discuss the issues set forth in my February 27, 2008 letter. Mr. Carruolo expressed surprise by the reference in the March 3, 2008 letter to discussions with representatives of the City of Warwick (the "City") regarding the sewer allocation and discharge easement issues. Mr. Carruolo advised us that as far as he could ascertain, there had been no specific or recent discussions between the SBA and the City relative to these matters, and certainly not in connection with my February 27, 2008 letter. The spirit of these meetings were positive with the City and AARPP agreeing to work together in an effort to resolve the issues outlined in my February 27th letter. AARPP remains confident that, with the necessary additional time required, mutually satisfactory agreements can be reached on these critical issues.

Additionally, AARPP has reviewed these issues with its title company, Mortgage Guaranty Title Insurance Company (the "Title Company"), the same title company that issued a title policy to the City in connection with its purchase of the City Parcel from the SBA in late

December of 2007. As set forth in the attached letter of attorney Shekarchi, and based upon the correspondence of the Title Company attached thereto, in connection with the issuance of a title policy to AARPP for the Main Parcel, any agreements reached with the City to resolve these issues would have to be adopted by City ordinance. Neither AARPP, nor any other developer, can proceed with the acquisition of the Main Parcel unless such title policy is provided to the purchaser. In accordance with our meetings with the City representatives, it is impossible for the necessary agreements and ordinance to be adopted within the next 14 days and also to obtain the required approvals of DEM and NOAH within such time period.

Pursuant to the attached correspondence of the Title Company and the letter of attorney Shekarchi, and the impossibility of the issues outlined in my letter of February 27, 2008 being resolved by March 28, 2008, AARPP requests an extension of the due diligence period set forth in paragraph 16 of the Purchase and Sale Agreement to July 25, 2008 and an extension of the closing date to July 28, 2008. During this extension period, AARPP would continue to work diligently with the City to resolve these issues and to obtain the agreements, approvals and ordinance necessary to satisfy the Title Company with regard to the issuance of a title policy for the Main Parcel in connection with a closing on the parcel with the Receiver.

We believe that it would be useful to have a meeting among the Receiver, representatives of the City and representatives of AARPP to discuss these issues and this extension request.

Very truly yours,

WINOGRAD, SHINE & ZACKS, P.C.

Diane Finkle

DF/jmg
Enclosures

cc: Thomas E. Carlotto, Esq.
Arlene Embrey, Esq.
The Honorable Mayor Scott Avedisian
Mark Carruolo, Warwick Director of Planning Dept.
Members of the Warwick City Council
Diana Pearson, Warwick City Solicitor
Jeffrey Gladstone, Esq.
Joseph Shekarchi, Esq.
AARPP

ATTACHMENT TO
3/14/08 LETTER D. FINKLE
TO S. JONES, SBA

*K. Joseph Shekarchi*

Attorney at Law

Member of Rhode Island Bar
Member of District of Columbia Bar
Member of Rhode Island Federal District Bar

33 College Hill Road, Suite 15-E
Warwick, Rhode Island 02886
Tel 401.827.0100 Fax 401.823.1400
joe@shekarchilaw.com

March 14th 2008

Diane Finkle, Esq.
Wingrad, Shine & Zacks, P.C.
123 Dyer Avenue
Providence, RI 02903

**Re: Rocky Point, Warwick, RI**

Dear Ms. Finkle,

I am writing this letter to inform you of the municipal requirements and time line of any possible agreement that may be reached with the City of Warwick, RI for the items listed in your February 27, 2008 letter to Stephen Jones of the US Small Business Administration. My research and opinion is limited to the City of Warwick and not the Rhode Island Department of Environmental Management ("DEM") or the National Oceanic and Atmospheric Administration "(NOAA"), as I have not been involved in their participation with the funding of the City parcel or reviewed any documents relating to such. However, the City of Warwick has confirmed that both DEM and NOAA must approve any easements or other restrictions pertaining to the City Parcel because of the DEM Conservation Easement and the funding provided by NOAA to the City of Warwick in connection with the purchase of the parcel.

Moreover, I bring to your attention additional concerns regarding the sewer allocation issue addressed in your letter of February 27th and as further discussed in the letter of AARP's Engineer, a copy attached as Exhibit "A". Any agreement reached by AARPP and the City of Warwick would have to

be ratified or confirmed by the Warwick Sewer Authority. This requirement results from recent and well published actions between the City of Warwick and the Warwick Sewer Authority debating and disputing (and likely to be litigated) which agency has the authority to enter into and enforce contracts.

Based on a letter from Mortgage Guarantee Title Insurance Company attached as Exhibit "B", a City Council Ordinance is required for the proposed easement agreements and sewer allocation agreement. Any City ordinance requires two passages (usually the third Monday of successive months) by the City Council and then approval by the Mayor followed by a required advertising period of 20 days before it is effective. The next available public hearing meeting is April 21, 2008. Under the best case scenario and assuming ***timely and comprehensive*** agreements could be reached with the City of Warwick and the Warwick Sewer Authority the earliest possible day for any ordinance to become effective would be mid to late June. Thereafter, the necessary hearing before the Warwick Sewer Authority could be held on June 27th of 2008.

If you have any questions or would to discuss any details with me, please do not hesitate to contact me.

Very Truly Yours

K. Joseph Shekarchi, Esq.

Cc: Client
Mayor Scott Avedisian
Warwick City Council
City of Warwick Planning Department

**EXHIBIT A**

**DiPrete Engineering**

March 14, 2008

Mr. Nicholas Cambio
Atlantic American Rocky Point Partners
207 Quaker Lane
Suite 300
West Warwick, RI 02893

**RE:** **Rocky Point**
**Warwick, RI**
**DEA Project #:0206-022**

Dear Nick:

Based on our meeting yesterday with the Mr. Angelo Liberti III, Chief of Surface Water Protection for the RI Department of Environmental Management (RIDEM), it appears that the latest facilities plan prepared by BETA Engineering does not account for the 75,000 gpd of flow which the Warwick Sewer Authority has given the property by means of an agreement. To be clear, the absence of an RIDEM approved Facilities Plan that includes the 75,000 gpd for the Rocky Point development, puts the agreement in place to provide sewerage to the development in jeopardy.

Mr. Liberti indicated in our meeting that RIDEM will have the final approval of the Facilities Plan for the City of Warwick Sewer Authority. Their review of the facilities plan includes comparing the plan to the City's comprehensive plan to be sure the plan accounts for future build out and/or inclusion of City neighborhoods and in agreement wih theCity's Comprehensive Plan. Although the facilities plan shows some growth in the Warwick Neck area, it is Mr. Liberti's opinion that the 75,000 gpd allotted for Rocky Point is not included in the growth number shown. Mr. Liberti has spoken to Steve Richtarik at BETA engineering to get the back-up data for the facilities plan.

Mr. Liberti indicated that a new Facilities Plan may be in the works and not completed yet. I have asked RIDEM to send us a letter indicating what the issues are with the latest Facilities Plan for our due diligence. I expect to have this letter today.

Please feel free to call me if you have any questions regarding this correspondence.

Sincerely,
DiPrete Engineering Associates, Inc.

Joseph Del Sesto
Project Manager

cc: Recipients Name (if applicable)

EXHIBIT B

**Sara Levesque**

---

**Subject:** FW: Easement

---

**From:** Montalbano, Chris [mailto:cmontalbano@firstam.com]
**Sent:** Tuesday, March 11, 2008 5:32 PM
**To:** Melissa Faria
**Subject:** Easement

Melissa:

Per your email of last Friday, I have reviewed our requirements if we are to insure the easements burdening the city parcel. My first comment is that these easements need to be consented and/or joined in by DEM, the holder of a conservation easement.

Second, I find nothing which delineates which body in the City government would have the authority to enter into these easements. I find purchasing authority, and a mechanism to dispose of land no longer needed by the town, but can find nothing relating to the proposed transaction. As such, I believe an ordinance may be required. I am however, happy to discuss this matter with the City's counsel and perhaps they may have information of which I am unaware.

I wish to point out that this email is only for the purpose of discussing our requirements for insurance, and is not a Legal Opinion. Further research and underwriting is still required.