EXHIBIT F

INST: 00024808 Bk: 6751 Pg: 282

## CONSERVATION AND PUBLIC ACCESS EASEMENT

THIS GRANT OF CONSERVATION AND PUBLIC ACCESS EASEMENT is made this 10th day of August, 2007, by and between the CITY OF WARWICK, RHODE ISLAND, a duly organized and validly existing municipal corporation under the laws of the State of Rhode Island, having its principal office at 3275 Post Road, Warwick, Rhode Island (hereinafter referred to as "Grantor") and the STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, acting by and through the DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, having its principal office at 235 Promenade Street, Providence, Rhode Island, (hereinafter referred to as "Grantee"). This Conservation and Public Access Easement shall hereinafter be referred to as the "Conservation Easement."

**WITNESSETH:**

WHEREAS, Grantor is the owner in fee simple of certain real property, containing approximately 41 acres, described as Rocky Point, in the City of Warwick, County of Kent, State of Rhode Island, more particularly described in Exhibit "A" attached hereto and made a part hereof (hereinafter referred to as the "Premises"); and

WHEREAS, the Premises possesses open, natural, scenic, ecological, archeological, historic, educational and recreational value; and

WHEREAS, Grantor and Grantee recognize the value and special character of the Premises and acknowledge a common purpose to conserve the values of the Premises, and to conserve and protect the special plant and animal populations and the recreational values on the Premises, (hereinafter the "Conservation Values") and to prevent its use or development for any purpose or in any manner that would conflict with the maintenance of the Premises, in its current, natural, scenic and open condition; and

WHEREAS, Grantor, as owner of the Premises, intends to convey to Grantee the right to preserve and protect the Conservation Values of the Premises in perpetuity.

NOW THEREFORE, in consideration of the above and the mutual covenants, terms,

conditions and restrictions contained herein and in consideration of ONE MILLION FOUR HUNDRED THOUSAND DOLLARS ($1,400,000.00) paid by Grantee to Grantor, the receipt and sufficiency of which is hereby acknowledged and pursuant to the laws of the State of Rhode Island, and in particular Title 34, Chapter 39 and Title 45, Chapter 36 of the General Laws of Rhode Island, as amended, Grantor hereby voluntarily grants and conveys unto Grantee a Conservation Easement in perpetuity over the Premises, of the nature and character, and to the extent hereinafter set forth.

1. Purpose. It is the purpose of this Conservation Easement to assure that the Premises will be retained forever in its open, natural, scenic, agricultural, ecological, recreational or educational condition and to prevent any use of the Premises that will significantly impair or interfere with the Conservation Values of the Premises. Grantor intends that this Conservation Easement will confine the use of the Premises to a Conservation Area and public walking trail with associated parking and such uses as are consistent with the purpose of this Conservation Easement and the Management Plan developed by Grantor and approved by Grantee (hereinafter referred to as the "Management Plan"), which Management Plan sets forth specific procedures by which the Premises shall be maintained including, but not limited, to the adequate maintenance of the Premises to preserve the natural values, public access and other matters as may be required for the preservation of the Premises. Grantor shall have the right from time to time to amend the Management Plan. Any such amendment must be approved by the State of Rhode Island, Department of Environmental Management.

2. Rights of Grantee. To accomplish the purpose of this Conservation Easement, the following rights are conveyed to Grantee by this Conservation Easement:

   a. To preserve and protect the Conservation Values of the Premises;

   b. To enter upon the Premises at all reasonable times and, if necessary, across other lands owned by Grantor adjacent to the Premises in order to: (i) monitor and inspect Grantor's or its successors or assigns compliance with the covenants and purposes of this Conservation Easement, (ii) enforce the terms of this Conservation Easement, (iii) take any and all actions as may be necessary or appropriate, with or without

order of court, to remedy or abate violation hereof; and (iv) Grantor, its successors or assigns, to observe and study nature, make scientific and educational observations and studies in such manner as will not disturb the quiet enjoyment of the Premises by Grantor.

c. To prevent any activity or use of the Premises that is inconsistent with the purpose of this Conservation Easement and the Management Plan.

d. To require restoration of such areas or features of the Premises that may be damaged by any inconsistent activity or use, pursuant to section 5 hereof.

e. To allow public access to the parcel for recreational uses, including hiking, and for educational purposes as set forth in the Management Plan.

3. <u>Prohibited Uses.</u> Any activity on or use of the Premises inconsistent with the purpose of this Conservation Easement is prohibited. Without limiting the generality of the foregoing, the following activities and uses are expressly prohibited:

a. The subdivision or development of the Premises or the disturbance or change in the natural habitat in any manner except as set forth in the Management Plan.

b. The placement or construction of any buildings, structures, or other improvements of any kind including without limitation, camping accommodations or mobile homes, fences, signs, billboards or other advertising material, tennis courts, swimming pools, asphalt driveways, roads, parking lots, utility poles, towers, conduits, or lines or other structures, other than those structures currently on the Premises and a public parking area and a walking path and as may be permitted pursuant to the Management Plan. No industrial activity of any kind shall be permitted on the Premises.

c. Any ditching, draining, diking, filling, excavating, dredging, mining or drilling, removal of topsoil, sand, gravel, rock, minerals or other materials, or any building or roads or change in the topography of the land in any manner except the maintenance of existing foot trails or as may be permitted pursuant to the Management Plan.

d. Any removal, destruction or cutting of trees or plants or planting of trees or plants (except as is necessary to maintain the Premises and to construct foot trails) use of fertilizers, spraying with biocides, introduction of non-native animals, except as may be set forth in the Management Plan.

e. The dumping or storing of ashes, trash, garbage, wastes, refuse, debris, or other unsightly or offensive material, and the changing of the topography through the placing of soil or other substance or material such as land fill or dredging spoils, nor shall any activities be conducted directly on the Premises, or on adjacent property which could cause erosion or siltation on the Premises.

f. The manipulation or alteration of natural ponds, water courses, lake shores, marshes or other surface or subsurface water bodies, or activities which would be detrimental to water purity or to the protection of the watershed, which includes the subject

property, or which could alter natural water level and/or flow except as set forth in the Management Plan.

g. The operation of snowmobiles, dunebuggies, motorcycles, all-terrain vehicles, or any other types of motorized vehicles, except such motorized vehicles as are necessary for the maintenance of the Premises or to protect the Premises during an emergency.

h. The hunting or trapping of animals except as set forth in the Management Plan.

4. Reserved Rights. Grantor reserves for itself, its heirs, successors and assigns, the following reserved rights provided, however, that the exercise of such rights will not interfere with or have an adverse impact on, the essential natural, open and scenic quality of the Premises:

a. To use the Premises for all purposes not inconsistent with this Conservation Easement and the Management Plan.

b. To sell, give or otherwise convey the Premises or any interest in the Premises, provided such conveyance is subject to the terms of this Conservation Easement and the Management Plan.

5. Grantee's Remedies. If Grantee determines that Grantor is in violation of the terms of this Conservation Easement or that a violation is threatened, Grantee shall give written notice to Grantor of such violation and demand corrective action sufficient to cure the violation. If Grantor fails to cure the violation within thirty (30) days after receipt of notice thereof from Grantee, Grantee may bring an action at law or in equity in a court of competent jurisdiction to enforce the terms of this Conservation Easement, to enjoin the violation, ex parte as necessary, by temporary or permanent injunction, to recover any damages to which Grantee may be entitled for violation of the terms of this Conservation Easement or injury to any conservation values protected by this Conservation Easement, including damages for the loss of scenic, aesthetic, water resource protection or environmental values, and to require the restoration of the Premises to the condition that existed prior to any such injury. Without limiting Grantor's liability therefore, Grantee, in its sole discretion, may apply any damages recovered to the cost of undertaking any corrective action on the Premises. If Grantee, in its sole discretion, determines that circumstances require immediate action to prevent or

mitigate significant damage to the conservation values of the Premises, Grantee may pursue its remedies under this paragraph without prior notice to Grantor or without waiting for the period provided for cure to expire. Grantee's rights under this paragraph apply equally in the event of either actual or threatened violations of the terms of this Conservation Easement, and Grantor agrees that if Grantee's remedies at law for any violation of the terms of this Conservation Easement are inadequate, that Grantee shall be entitled to the injunctive relief described in this paragraph, both prohibitive and mandatory, in addition to such other relief to which Grantee may be entitled, including specific performance of the terms of this Conservation Easement, without the necessity of proving either actual damages or the inadequacy of otherwise available legal remedies. Grantee's remedies described in this paragraph shall be cumulative and shall be in addition to all remedies now or hereafter existing at law or in equity. Nothing contained in this Conservation Easement shall be construed to entitle Grantee to bring any action against Grantor for any injury to or change in the Premises resulting from any causes beyond Grantor's control, including, without limitation, fire, flood, storm, or earth movement.

5.1 Costs of Enforcement. Any costs incurred by Grantee in enforcing the terms of this Conservation Easement against Grantor, including, without limitation, costs of suit and attorney's fees, and any costs of restoration necessitated by Grantor's violation of the terms of this Conservation Easement, shall be borne by Grantor.

5.2 Grantee's Discretion. Enforcement of the terms of this Conservation Easement shall be at the sole discretion of Grantee, and any forbearance or delay by Grantee to exercise its rights under this Conservation Easement, in the event of any breach of any term of this Conservation Easement by Grantor, shall not be deemed or construed to be a waiver by Grantee of such terms or of any subsequent breach of the same of any other term of this Conservation Easement or any of Grantee's rights under this Conservation Easement.

5.3 Waiver of Certain Defenses. Grantor hereby waives any defense of laches, estoppel, or prescription.

6. Access. Public access for recreational purposes shall be permitted as set forth in the Management Plan. A public walking trail and associated parking area shall be constructed and maintained on the Premises pursuant to the Management Plan.

7. Costs and Liabilities. Grantor retains all responsibilities and shall bear all costs and liabilities of any kind related to the ownership, operation, upkeep, and maintenance of the Premises, including the maintenance of adequate comprehensive general liability insurance coverage. Grantor shall keep the Premises free of any liens arising out of any work performed for, materials furnished to, or obligations incurred by Grantor.

7.1 Taxes. Grantor shall pay before delinquency all taxes, assessments, fees, and charges of whatever description levied on or assessed against the Premises by competent authority, and shall furnish Grantee with satisfactory evidence of payment upon request.

7.2 Hold Harmless. Grantor shall defend, hold harmless, and indemnify Grantee and its directors, officers, employees, agents, contractors and the heirs, personal representatives, successors, and assigns of each of them from and against all liabilities, penalties, costs, losses, damages, expenses, causes of action, claims, including bodily injury or death, demands, or judgments, including, without limitation, reasonable attorney's fees, arising from or in any way connected with bodily injury to or the death of any person, or physical damage to any property, resulting from any act, omission, condition, or other matter related to or occurring on or about the Premises, regardless of cause.

8. Assignment. This Conservation Easement is transferable, but Grantee may assign its rights and obligations under this Conservation Easement only to an organization authorized to acquire and hold conservation easements under R.I. General Laws 34-39-1 et seq. (or any

successor provision then applicable). As a condition of such transfer, Grantee shall require that the conservation purposes that this grant is intended to advance continue to be carried out.

9. Subsequent Transfers. Grantor agrees to incorporate the terms of this Conservation Easement in any deed or other legal instrument by which it divests itself of any interest in all or a portion of the Premises, including, without limitation, a leasehold interest. Grantor must obtain the written approval of Grantee of any such transfer. Notwithstanding anything contained herein to the contrary, Grantor shall not convey any portion or all of the Premises without first giving Grantee a ninety (90) day option within which to purchase or otherwise acquire the Premises on the same terms and conditions on which the Grantor is willing to make a sale or disposition to any other party. Upon receipt from any other party of an offer for Grantor to sell or otherwise grant an interest in the Premises, Grantor shall promptly notify Grantee in writing by certified mail of said terms and conditions and submit in writing any bona fide offer acceptable to Grantor which Grantor may have received. The failure of Grantor to perform any act required by this paragraph shall not impair the validity of this Conservation Easement or limit its enforceability in any way.

10. Condemnation. If the Premises is taken in whole or in part, by exercise of the power of eminent domain, Grantee shall be entitled to fifty (50%) percent of any such condemnation award paid to Grantor.

11. General Provisions.

a. Successors. The covenants, terms, conditions, and restrictions of this Conservation Easement shall be binding upon, and inure to the benefit of the parties hereto and their respective personal representatives, heirs, successors, and assigns and shall continue as a servitude running in perpetuity with the Premises.

b. Counterparts. The parties may execute this instrument in two or more counterparts, which shall, in the aggregate, be signed by both parties; each counterpart shall be deemed an original instrument as against any party who has signed it. In the event of any disparity between the counterparts produced, the recorded counterpart shall be controlling.

c. Rhode Island law. This Conservation Easement shall be and is deemed to be a conservation restriction under the laws of the State of Rhode Island only, and shall be construed and given effect in accordance with the laws of the State of Rhode Island and not otherwise.

d. Severability. If any provision of this Conservation Easement or the application hereof to any person or circumstance shall be to any extent invalid or unenforceable, the remainder of this Conservation Easement and the application to persons or circumstances other than those as to which it is invalid or unenforceable shall not be effected thereby, and each term and provision of this Conservation Easement shall be valid and enforceable to the fullest extent permitted by law.

e. Waiver. No consent or waiver, express or implied by either party to or of any breach in the performance by the other party of its agreements hereunder shall be construed as a consent or waiver to or of any breach in the performance by such party of the same or any other agreement. The failure on the part of either party to complain of any such action or inaction on the part of the other or to declare the other in default, no matter how long such failure may continue, shall not be deemed to be a waiver by either party of any of its rights hereunder.

f. Construction. This Conservation Easement shall not be construed, without regard to any presumption or other rule requiring construction, against the party causing this Conservation Easement to be drafted.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

WITNESS:

____________________

CITY OF WARWICK

By:____________________
Scott Avedisian, Mayor

____________________

STATE OF RHODE ISLAND,
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT

By:____________________
W. Michael Sullivan, Ph.D., Director

Approved this 4TH day of September, 2007 by the State Properties Committee.

Approved as to Terms and Conditions: ______________________

Chairman, State Properties Committee

Approved as to Form:

for Attorney General — Richard B. Woolley Asst. A.G.

Approved as to Substance:

Director of Administration

Approved:

______________________

Public Member, State Properties Committee

INST: 00024808 Bk: 6751 Pg: 291

STATE OF RHODE ISLAND
COUNTY OF KENT

In Warwick, in said County and State, on the 8th day of August, 2007, before me personally appeared Scott Avedisian the Mayor of the CITY OF WARWICK, RHODE ISLAND, to me known and known by me to be the party executing the foregoing instrument for and on behalf of the CITY OF WARWICK, RHODE ISLAND, and he acknowledged said instrument by him executed to be his free act and deed, his free act and deed in his capacity as aforesaid, and the free act and deed of the CITY OF WARWICK, RHODE ISLAND.

Deborah L. Cavaminna
Notary Public

My Commission Expires: 4/22/2010

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, in said County and State, on the 28 day of August, 2007, before me personally appeared W. Michael Sullivan, Ph.D., the Director of the STATE OF RHODE ISLAND, DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, to me known and known by me to be the party executing the foregoing instrument for and on behalf of the STATE OF RHODE ISLAND, DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and he acknowledged said instrument by him executed to be his free act and deed, his free act and deed in his capacity as aforesaid, and the free act and deed of the STATE OF RHODE ISLAND, DEPARTMENT OF ENVIRONMENTAL MANAGEMENT.

Lisa Primiano
Notary Public LISA PRIMIANO

My Commission Expires: 9.28.08

<u>Return original Conservation Easement to:</u>
State of Rhode Island
Department of Environmental Management
Office of Legal Services
235 Promenade Street
Providence, RI 02908

# EXHIBIT A TO CONSERVATION EASEMENT

## FINAL DEED DESCRIPTION FOR ASSESSOR'S PLAT 379 LOTS 8, 9, 426 & 445, ASSESSOR'S PLAT 380 LOTS 1, 3 & 281 AND ASSESSOR'S PLAT 381 LOTS 38-41 LAND TO BE DEDICATED TO THE CITY OF WARWICK ROCKY POINT PARK

That certain tract or parcel of land, with all improvements thereon, situated in the City of Warwick, County of Kent, State of Rhode Island, being more particularly described as follows:

The above described property is delineated as "PARCEL B" on that certain Subdivision Plan entitled "ADMINISTRATIVE SUBDIVISION for ASSESSOR'S PLAT 379 LOTS 8, 9, 426 & 445, ASSESSOR'S PLAT 380 LOTS 1, 3 & 281, ASSESSOR'S PLAT 381 LOTS 38, 39, 40 & 41, ROCKY POINT situated on ROCKY POINT AVENUE, PALMER AVENUE & ALDRICH AVENUE, WARWICK, RHODE ISLAND, prepared for CITY OF WARWICK", dated Dec., 20, 2007, Scale 1"=250', prepared by GAROFALO & ASSOCIATES, INC., which is recorded in the City of Warwick Land Evidence Records on December 31st, 2007, at 12:15, P.M., in Book _____ at Page _____, Plat Card 1395.

Being also described as follows:

Beginning at the most northwesterly corner of the herein described parcel said point being located at the most northeasterly corner of Plat 379 Lot 7 land now or formerly of Donald F. Loughnane & Irene R.;

Thence proceeding north 80°35'22" east along the southerly line of said Rocky Point Avenue a distance of seven hundred three and 27/100 (703.27') feet to a point;

Thence proceeding south 09°51'38" east a distance of one hundred fifty nine and 48/100 (159.48') feet to a point;

Thence proceeding north 79°38'21" east a distance of forty one and 57/100 (41.57') feet to a point;

Thence proceeding north 10°21'39" west a distance of one hundred forty three and 09/100 (143.09') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of fifty and 00/100 (50.00') feet and a delta angle of 33°22'39" a distance of twenty nine and 13/100 (29.13') feet to the end of said curve, said curve has a chord bearing of north 39°29'11" east to a point at the beginning of a reverse curve;

Thence proceeding along the arc of said curve with a radius of twenty five and 00/100 (25.00') feet and a delta angle of 73°44'10" a distance of thirty two and 17/100 (32.17') feet to the end of said curve, said curve has a chord bearing of north 59°39'56" east;

Thence proceeding south 83°27'59" east a distance of sixty one and 90/100 (61.90') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of five hundred and 00/100 (500.00') feet and a delta angle of 10°43'02" a distance of ninety three and 53/100 (93.53') feet to the end of said curve, said curve has a chord bearing of south 78°06'28" east;

Thence proceeding south 72°44'57" east a distance of sixty five and 00/100 (65.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred fifty and 00/100 (150.00') feet and a delta angle of 50°41'15" a distance of one hundred thirty two and 70/100 (132.70') feet to the end of said curve, said curve has a chord bearing of south 47°24'19" east;

Thence proceeding south 22°03'42 east a distance of one hundred forty four and 47/100 (144.47') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of two thousand and 00/100 (2000.00') feet and a delta angle of 08°12'55" a distance of two hundred eighty six and 77/100 (286.77') feet to the end of said curve, said curve has a chord bearing of south 26°10'09" east;

Thence proceeding south 30°16'37" east a distance of eighty five and 46/100 (85.46') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred and 00/100 (100.00') feet and a delta angle of 30°52'04" a distance of fifty three and 87/100 (53.87') feet to the end of said curve, said curve has a chord bearing of south 45°42'39" east;

Thence proceeding south 61°08'41" east a distance of ninety two and 36/100 (92.36') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred and 00/100 (100.00') feet and a delta angle of 46°58'18" a distance of eighty one and 98/100 (81.98') feet to the end of said curve, said curve has a chord bearing of south 84°37'49" east;

Thence proceeding north 71°53'02" east a distance of two hundred fifty seven and 43/100 (257.43') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of five hundred and 00/100 (500.00') feet and a delta angle of 12°38'16" a distance of one hundred ten and 29/100 (110.29') feet to the end of said curve, said curve has a chord bearing of north 65°33'54" east;

Thence proceeding north 59°14'46" east a distance of two hundred eighty five and 39/100 (285.39') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred eighty and 00/100 (180.00') feet and a delta angle of 36°33'02" a distance of one hundred fourteen and 83/100 (114.83') feet to the end of said curve, said curve has a chord bearing of north 40°58'15" east;

Thence proceeding north 22°41'44" east a distance of fifty three and 00/100 (53.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of three hundred and 00/100 (300.00') feet and a delta angle of 10°11'21" a distance of fifty three and 35/100 (53.35') feet to the end of said curve, said curve has a chord bearing of north 17°36'03" east;

Thence proceeding north 12°30'23" east a distance of four hundred thirty two and 39/100 (432.39') feet to a point at the beginning of a curve:

Thence proceeding along the arc of said curve with a radius of one hundred forty and 00/100 (140.00') feet and a delta angle of 46°12'54" a distance of one hundred twelve and 92/100 (112.92') feet to the end of said curve, said curve has a chord bearing of north 15°40'43" west;

Thence proceeding north 58°56'44" east a distance of eighty one and 25/100 (81.25') feet to a point;

Thence proceeding north 06°34'35" east a distance of three hundred seventy five and 51/100 (375.51') feet to a point;

Thence proceeding north 71°05'42" west a distance of three hundred forty five and 10/100 (345.10') feet to a point;

Thence proceeding north 00°00'00" east a distance of three hundred twenty four and 62/100 (324.62') feet to a point;

Thence proceeding north 16°40'11" west a distance of eight hundred sixty and 29/100 (860.29') feet to a point;

Thence proceeding north 71°51'49" east a distance of two hundred twenty eight and 31/100 (228.31') feet to a point on the high water line as established by elevation 4.5, bounded northerly by land now or formerly of Stephen J. Galuska;

Thence proceeding south 36°32'33" east along the high water line a distance of forty seven and 22/100 (47.22') feet to a point;

Thence proceeding south 41°42'40" west along said high water line a distance of thirty and 43/100 (30.43') feet to a point;

Thence proceeding south 07°18'25" east along said high water line a distance of one hundred thirty five and 81/100 (135.81') feet to a point;

Thence proceeding south 20°31'42" east along said high water line a distance of seventy four and 45/100 (74.45') feet to a point;

Thence proceeding south 08°03'40" east along said high water line a distance of one hundred ten and 38/100 (110.38') feet to a point;

Thence proceeding south 20°02'46" east along said high water line a distance of seventy seven and 46/100 (77.46') feet to a point;

Thence proceeding south 29°57'07" east along said high water line a distance of sixty eight and 22/100 (68.22') feet to a point;

Thence proceeding south 43°59'53" east along said high water line a distance of seventy seven and 72/100 (77.72') feet to a point;

Thence proceeding south 12°14'04" east along said high water line a distance of seventy and 40/100 (70.40') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of thirty nine and 47/100 (39.47') feet and a delta angle of 111°25'17" a distance of seventy six and 76/100 (76.76') feet to a point on the end of said curve, said curve has a chord bearing of south 39°03'31" west, the last ten (10) courses are along the mean high water line elevation 4.5;

Thence proceeding south 15°16'27" east along said high water line a distance of sixty two and 08/100 (62.08') feet to a point;

Thence proceeding south 30°54'46" east along said high water line a distance of one hundred seventy nine and 64/100 (179.64') feet to a point;

Thence proceeding south 40°05'06" east along said high water line a distance of one hundred twenty nine and 19/100 (129.19') feet to a point;

Thence proceeding south 57°32'10" east; along said high water line a distance of one hundred forty five and 13/100 (145.13') feet to a point;

Thence proceeding south 15°38'16" west along said high water line a distance of thirty three and 27/100 (33.27') feet to a point;

Thence proceeding south 13°58'38" east along said high water line a distance of thirty four and 39/100 (34.39') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of sixty three and 87/100 (63.87') feet and a delta angle of 47°01'00" a distance of fifty two and 41/100 (52.41') feet to the end of said non-tangent curve, said curve has a chord bearing of south 26°09'28" west;

Thence proceeding south 82°34'08" east along said high water line a distance of one hundred two and 54/100 (102.54') feet to a point;

Thence proceeding north 60°34'26" east along said high water line a distance of forty and 06/100 (40.06') feet to a point;

Thence proceeding north 18°47'35" east along said high water line a distance of ninety eight and 11/100 (98.11') feet to a point;

Thence proceeding north 40°44'58" west along said high water line a distance of twenty five and 67/100 (25.67') feet to a point;,

Thence proceeding south 65°56'50" west along said high water line a distance of fifty eight and 97/100 (58.97') feet to a point;

Thence proceeding south 85°17'02" west along said high water line a distance of thirty seven and 70/100 (37.70') feet to a point;

Thence proceeding north 04°49'06" west along said high water line a distance of thirteen and 08/100 (13.08') feet to a point;

Thence proceeding north 74°55'41" east along said high water line a distance of seventy two and 95/100 (72.95') feet to a point,

Thence proceeding north 60°35'08" east along said high water line a distance of fifty eight and 22/100 (58.22') feet to a point on a non-tangent curve

Thence proceeding along the arc of said curve with a radius of sixty five and 36/100 (65.36') feet and a delta angle of 69°29'03" a distance of seventy nine and 26/100 (79.26') feet to the end of said non-tangent curve, said curve has a chord bearing of south 69°44'38" east;

Thence proceeding north 65°33'45" east a long said high-water line a distance of forty five and 09/100 (45.09') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of nineteen and 09/100 (19.09') feet and a delta angle of 86°42'45" a distance of twenty eight and 90/100 (28.90') feet to the end of said non-tangent curve, said curve has a chord bearing of north 83°42'28" east;

Thence proceeding south 16°54'29" east along said high water line a distance of one hundred nine and 91/100 (109.91') feet to a point;

Thence proceeding south 85°58'47" east along said high water line a distance of thirty eight and 35/100 (38.35') feet to a point;

Thence proceeding south 09°43'22" east along said high water line a distance of sixty six and 67/ 100 (66.67') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of fifty four and 20/100 (54.20') feet and a delta angle of 46°38'32" a distance of forty-four and 12/100 (44.12') feet to the end of said non-tangent curve, said curve has a chord bearing of south 33°25'44" west;

Thence proceeding along the arc of a non-tangent curve with a radius of three hundred eighteen and 62/100 (318.62') feet and a delta angle of 11°59'54" a distance of sixty six and 72/100 (66.72') feet to the end of said non-tangent curve, said curve has a chord bearing of south 08°07'47" east;

Thence proceeding south 55°28'00" west along said high water line a distance of forty four and 42/100 (44.42') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of fifty and 55/100 (50.55') feet and a delta angle of 86°01'15" a distance of seventy five and 89/100 (75.89') feet to the end of said curve, said curve has a chord bearing of south 03°38'55" west;

Thence proceeding south 21°29'07" west along said high water line a distance of one hundred thirty six and 26/100 (136.26') feet to a point;

Thence proceeding south 31°37'34 west along the high water line a distance of fifty six and 80/100 (56.80') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of ninety six and 35/100 (96.35') feet and a delta angle of 41°59'25" a distance of seventy and 61/100 (70.61') feet to the end of said curve, said curve has a chord bearing of south 75°54'21" west;

Thence proceeding south 16°46'50" west along said high water line a distance of one hundred fourteen and 79/100 (114.79') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of twenty eight and 22/100 (28.22') feet and a delta angle of 98°13'18" a distance of forty eight and 38/100 (48.38') feet to a point on a non-tangent curve, said curve has a chord bearing of south 39°45'05" west;

Thence proceeding along the arc of said curve with a radius of forty six and 22/100 (46.22') feet and a delta angle, of 100°02'48" a distance of eighty and 71/100 (80.71') feet to the end of said curve, said curve has a chord bearing of south 50°44'26" west;

Thence proceeding south 62°22'45" west along said high water line a distance of two hundred twelve and 08/100 (212.08') feet to a point;

Thence proceeding south 12°49'15" west along said high water line a distance of three hundred twelve and 22/100 (312.22') feet to a point;

Thence proceeding south 05°59'55" east along said high water line a distance of one hundred twenty eight and 08/100 (128.08') feet to a point;

Thence proceeding south 38°11'55" west along said high water line a distance of one hundred sixty three and 26/100 (163.26') feet to a point;

Thence proceeding south 47°18'02" west along said high water line a distance off one hundred fifty one and 06/100 (151.06') feet to a point;

Thence proceeding south 50°50'33" west along said high water line a distance of sixty three and 85/100 (63.85') feet to a point;

Thence proceeding south 63°28'32 west along said high water line a distance of one hundred thirty seven and 37/100 (137.37') feet to a point;

Thence proceeding south 11°18'16" west along said high water line a distance of thirty and 48/100 (30.48') feet to a point;

Thence proceeding north 52°23'29" west along said high water line a distance of thirty three and 34/100 (33.34') feet to a point;

Thence proceeding south 73°28'46" west along said high water line a distance of four hundred twenty three and 94/100 (423.94') feet to a point;

Thence proceeding north 73°08'26" west along said high water line a distance of forty seven and 57/100 (47.57') feet to a point;

Thence proceeding south 60°11'46" west along said high water line a distance of four hundred seventeen 17/100 (417.17') feet to a point;

Thence proceeding north 34°36'39" west a distance of thirty eight and 91/100 (38.91') feet to a point, said point being the most southeasterly corner of Assessor's Plat 381 Lot 41;

Thence proceeding south 60°56'06" west along the northerly line of Aldrich Avenue (unimproved) a distance of one hundred thirty four and 25/100 (134.25') feet to an angle in said Aldrich Avenue;

Thence proceeding south 43°56'06" west along said Avenue a distance of three hundred forty seven and 80/100 (347.80') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred nineteen and 79/100 (119.79') feet and a delta angle of 36°55'44" a distance of seventy seven and 21/100 (77.21') feet to the end of said curve, said curve has a chord bearing of south 62°23'58" west;

Thence proceeding south 80°51'50" west a distance of thirty and 00/100 (30.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred seventy seven and 50/100 (177.50') feet and a delta angle of 69°31'59" a distance of two hundred fifteen and 41/100 (215.41') feet to the end of said curve, said curve has a chord bearing of north 64°22'10" west;

Thence proceeding north 29°36'11" west a distance of forty one and 44/100 (41.44') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of two hundred twenty five and 20/100 (225.20') feet and a delta angle of 20°28'00" a distance of eighty and 44/100 (80.44') feet to a point on a reverse curve, said curve has a chord bearing of north 19°22'11" west;

Thence proceeding along the arc of said curve with a radius one hundred sixty and 00/100 (160.00') feet and a delta angle of 74°18'33" a distance of two hundred seven and 52/100 (207.52') feet to a point at the end of said curve, said curve has a chord bearing of north 46°17'29" west, the last eight (8) courses bounded southerly, westerly and northwesterly by Aldrich Avenue;

Thence proceeding north 08°48'10" west a distance of four hundred twenty three and 92/100 (423.92') feet to a point;

Thence proceeding south 80°33'22" west a distance of three hundred eighty three and 75/100 (383.75') feet to a point;

Thence proceeding south 83°24'16" west a distance of two hundred twenty two and 84/100 (222.84') feet to a point;

Thence proceeding south 08°28'35" east a distance of ten and 69/100 (10.69') feet to a point;

Thence proceeding south 81°31'25" west a distance of sixty three and 00/100 (63.00') feet to a point;

Thence proceeding north 08°28'35" west a distance of fifty five and 30/100 (55.30') feet to a point;

Thence proceeding north 81°31'25" east a distance of sixty three and 00/100 (63.00') feet to a point;

Thence proceeding south 08°28'35" east a distance of twenty four and 60/100 (24.60') feet to a point;

Thence proceeding north 83°24'16" east a distance of two hundred twenty three and 00/100 (223.00') feet to a point;

Thence proceeding north 80°33'22" east a distance of three hundred eighty six and 56/100 (386.56') feet to a point, the last eight (8) courses are bounded southerly, easterly, southerly, westerly, and northerly, easterly and northerly by land now or formerly of Elizabeth M. Garrison Trustee Elizabeth M. Garrison Trust;

Thence proceeding north 09°24'38" west a distance of one hundred twenty four and 29/100 (124.29') feet to a point;

Thence proceeding south 88°09'22" west a distance of fifty two and 64/100 (52.64') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of seventy five and 00/100 (75.00') feet and a delta angle of 82°25'46" a distance of one hundred seven and 90/100 (107.90') feet to the end of said curve, said curve has a chord bearing of north 50°37'45" west, the last three (3) courses bounded northerly, westerly, southerly and southwesterly by land now or formerly of Guaranteed Trade LLC;

Thence proceeding north 09°24'52" west a distance of one hundred fifty two and 90/100 (152.90') feet to the point and place of beginning.

Said parcel contains 1,780,379 ± square feet or 40.9 ± acres more or less.

RECORDED
Dec 31,2007 12:24:58P
Marie T. Bennett, City Clerk
City of Warwick, RI