EXHIBIT G

INST# 00024807 Bk: 6751 Pg: 261

RECEIVER'S DEED

The U.S. Small Business Administration ("SBA"), as Receiver of the Estate of Moneta Capital Corporation ("Moneta"), under an Order of the U.S. District Court for the District of Rhode Island ("USDCRI"), dated February 2, 2000, appointing SBA the Receiver of Moneta, by the power conferred by and in accordance with the terms of an Order of USDCRI dated December 13, 2007, a certified copy of which is attached hereto as Exhibit "A" and pursuant to that certain Letter of Agreement annexed hereto as Exhibit "B", for $4,400,000.00 paid , hereby grants to the City of Warwick, a Rhode Island municipality having a mailing address of 3275 Post Road, Warwick, Rhode Island, that certain lot or parcel of land, with all the structures and improvements thereon, located in the City of Warwick, State of Rhode Island, more particularly described on Exhibit "C" attached hereto.

This property has been acquired in part with funds from Federal financial assistance award NA16OZ2431 through NOAA's Coastal and Estuarine Land Conservation Program. Title to the property conveyed by this deed shall vest upon acquisition in the City of Warwick subject to the conditions that the property shall be managed for conservation purposes and consistent with the purposes for which it was entered into the CELCP. With the exception of the provisions that would require reconveyance of the property to the Receiver as mandated in the Order annexed hereto as Exhibit A, the City of Warwick shall not dispose of, exchange, encumber its title or other

REAL ESTATE CONVEYANCE TAX 0,3,3,8 4 4

TAX $ 12,600.00 DATE 12-31-07 RECORDER CITY OF WARWICK

INST: 00024807 BK: 4751 PG: 262

interests in, or convert the use of this property without the approval of NOAA or its successor agencies.

The undersigned hereby certifies that no withholding is required pursuant to R.I.G.L. 44-30-71.3(c) as this conveyance is a transfer by a court appointed receiver.

The undersigned hereby certifies that this transfer is exempt from the Smoke Detector/Carbon Monoxide Detector Law.

U.S. SMALL BUSINESS ADMINISTRATION,
RECEIVER FOR MONETA CAPITAL
CORPORATION

BY: ______________________
Thomas G. Morris
Director, Office of SBIC Liquidation

COMMONWEALTH of VIRGINIA

In CITY of ALEXANDRIA, on this 28th day of December, 2007, before me personally appeared Thomas G. Morris in his capacity as Office of SBIC Liquidation, U.S. Small Business Administration, to me known and known to me to be the person signing this instrument, and he acknowledged said instrument signed by him to be his free act and deed in his aforesaid capacity and the free act and deed of the U.S. Small Business Administration, as Receiver for Moneta Capital Corporation

______________________
Notary Public
Print Name: BRETT FLANAGAN
My commission expires: 10/31/2009

179504

INST# 00024807 Bk# 6751 Pg# 263

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MONETA CAPITAL CORPORATION<br><br>Defendant. | Civil Case No. 99-565(L) |

**ORDER**

This matter having come for hearing before the Court on the Receiver's Motion to Confirm Private Sale of Real Property and it appearing to this Court that (1) notice of the proposed private sale having been published in the *Wall Street Journal*, *The Boston Globe* and *The Providence Journal*, (the "Publications"), newspapers of general circulation, pursuant to this Court's Order dated October 24, 2007; (2) that due and timely notice of said Motion having been given to all parties of record in this matter, loan participants and by publication to all other persons; and (3) that no objection having been filed and no timely competing bids having been received by the Receiver by the deadline established by the Publications;

**IT IS HEREBY ORDERED**

1. That the Receiver's Motion is granted with respect to that certain purchase and sale agreement (the "Agreement") between the Receiver and the City of Warwick (the "Buyer") dated August 7, 2007, the specific terms and conditions precedent of which shall be complied with;

Attest to
True Copy
DAVID A. DIMARZIO
By [signature]
Deputy Clerk

2. That the private sale of the approximately 41 acres of real property located in Warwick, Rhode Island which is the subject matter of the Agreement (the "Property") is approved and confirmed pursuant to the specific terms and conditions precedent of the Agreement, and in furtherance thereof, any transfer of the Property prior to the consummation of the sale of the remaining 83 acres adjacent to the Property ("83 Acres") will be subject to reconveyance back to the Receiver if a sale of the 83 Acres is not consummated on or before March 28, 2008. A reconveyancing deed of the Property together with the $4,400,000.00 purchase price shall be held by the Receiver until the earlier to occur of (i) recording of the reconveyancing deed (in which case the purchase money shall be returned to the City) or (ii) consummation of the sale of the 83 Acres (in which case the reconveyancing deed shall be returned to the City and the purchase money shall be retained by the Receiver);

3. That the Receiver is hereby authorized to execute and deliver a Receiver's Deed conveying the Property to the Buyer upon the terms and conditions set forth in the Agreement, and such conveyance shall be free and clear of all interests, claims, liens and/or encumbrances of the City of Warwick or other municipal authority, with such interests, claims, liens and encumbrances of the City of Warwick and all other municipal authorities, attaching to the proceeds thereof in the same priority as existed prior to such transfer. That all interests, claims, liens and encumbrances asserted against the Property, by the City of Warwick and all other municipal authorities, are hereby declared to be released and discharged with respect to the Property upon consummation of the aforesaid sale, and the recording of this Order with the Receiver's Deed shall constitute evidence of such release and discharge.

4. That the Property is vacant and transferred free from the claims of any former occupants with such residential structures that remain on the Property being deemed abandoned; and

5. That the Receiver is granted leave to take all actions to conclude such sale in accordance herewith without further order of this Court.

**SO ORDERED:**

This 13th day of December, 2007, in Providence, Rhode Island.

Ronald R. Lagueux

THE HONORABLE RONALD LAGUEUX

Sr. UNITED STATES DISTRICT COURT JUDGE

INST# 00024807 Bk# 6751 Pg# 267

# EXHIBIT B

# LETTER OF AGREEMENT

WHEREAS, the U.S. Small Business Administration, in its capacity as the Court Appointed Receiver for Moneta Capital Corporation ("Receiver") pursuant to an Order of the United States District Court for the District of Rhode Island ("USDCRI"), in the matter of United States of America v. Moneta Capital Corporation, No. 99-565(L), is appointed the Receiver of the Estate of Moneta Capital Corporation ("Moneta").

WHEREAS, the City of Warwick, a Rhode Island municipal corporation ("City"), has entered into a Purchase and Sales Agreement, dated August 7, 2007, as amended ("City / Receiver Agreement"), with the Receiver for the purchase of real estate, approximately 41+/- acres of the property commonly known as 'Rocky Point', and located on Palmer and Warwick Neck Avenues, in the City of Warwick, State of Rhode Island ("Property" or "Parcel B"), for the Purchase Price of $4,400,000.00.

WHEREAS, the City has entered into a Purchase and Sales Agreement, dated August 10, 2007, as amended ("City / RIDEM Agreement"), with State of Rhode Island, acting by and through the Department of Environmental Management ("RIDEM") for RIDEM to purchase a Conservation and Public Access Easement over the Property ("Conservation Easement"), for the purchase price of $1,400,000.00, the proceeds of which the City shall use to purchase the Property.

WHEREAS, the City has made an application to National Oceanic and Atmospheric Administration ("NOAA") for a Coastal Estuarine Land Conservation Program Grant and has been approved for $2,200,000.00, to be used for the City to purchase the Property ("NOAA Grant").

WHEREAS, the City had prepared a Subdivision Plan titled "ADMINISTRATIVE SUBDIVISION FOR ASSESSOR'S PLAT 379 LOTS 8,9, 426 & 445 ASSESSOR'S PLAT 380 LOTS 1,3 & 281 ASSESSOR'S PLAT 381 LOTS 38,39,40 & 41 'ROCKY POINT' SITUATED ON ROCKY POINT AVENUE, PALMER AVENUE & ALDRICH AVENUE, WARWICK, RHODE ISLAND, PREPARED FOR CITY OF WARWICK", dated December 20, 2007, Revision 1 (12/27/07), Scale 1"=250', prepared by GAROFALO & ASSOCIATES, INC., wherein the Property is delineated as "Parcel B" and the remaining 78.5+/- acres of adjacent property related to the subdivision is delineated "Parcel A" ("Subdivision Plan").

WHEREAS, the USDCRI via an Order, dated December 13, 2007, conditionally authorized the Receiver to convey the Property to the City, subject to re-conveyance of the Property by the City to the Receiver if the sale of Parcel A is not consummated, on or before March 28, 2008, as further stated in the Order ("USDCRI 12/13/07 Order").

WHEREAS, the City has a municipal lien attached to the Property for taxes assessed and unpaid ("Municipal Lien for Unpaid Taxes"), and pursuant to the USDCRI 12/13/07 Order said lien is released as to the Property and attaches to the $4,400,000.00 Purchase Price from the sale by the Receiver to the City.

NOW THEREFORE, the City, RIDEM, and Receiver, agree as follows:

1. Pursuant to the City / Receiver Agreement, City / RIDEM Agreement, NOAA Grant, and USDCRI 12/13/07 Order, the City shall pay to the Receiver to purchase the Property the Purchase Price of $4,400,000.00, to be segregated and held in trust by the Receiver in an interest bearing trust account, and not to be disbursed to Creditors or used to pay costs, expenses, or fees of the Receivership ("Sale Proceeds"), and the Receiver shall approve the Subdivision Plan and deliver a Receiver's Deed ("Deed") conveying the Property to the City. Prior to the consummation of the sale of Parcel A, the City shall in no way convey, encumber or otherwise alienate any interest, or attempt to do so, in the Property except as specifically set forth herein. The Receiver shall provide the City and RIDEM a monthly accounting for the Sale Proceeds and accrued interest.

2. The City shall record in the City of Warwick Land Evidence Records the Municipal Lien Certificates, the Subdivision Plan, the USDCRI 12/13/07 Order, the Deed, with this Letter of Agreement attached as an exhibit, and the Conservation Easement.

3. To comply with the terms of the Order, and as partial consideration for the sale of the Property, the City shall deliver to the Receiver, c/o Tom Carlotto, Esquire, a valid Re-Conveyance Deed of the Property, re-conveying the Property from the City to the Receiver, to be held, along with the Sale Proceeds, by the Receiver pending consummation of the sale of Parcel A.

4. To comply with the terms of the Order, and as partial consideration for the sale of the Property, the RIDEM shall deliver to the Receiver, c/o Tom Carlotto, Esq., a valid Re-

Conveyance Deed of Conservation Easement to release its interest in the Conservation Easement to be held by the Receiver pending the consummation of the sale of Parcel A.

5. Upon the consummation of the sale of Parcel A, the Receiver promptly and without delay shall return the Re-Conveyance Deed of the Property to the City and the Re-Conveyance Deed of the Conservation Easement to the RIDEM, and the RECEIVER promptly and without delay shall pay to the City of Warwick from the Sale Proceeds all sums due for the Municipal Lien for Unpaid Taxes, plus any accrued interest and penalties. Subsequently, the City, RIDEM, and the Receiver, promptly shall execute and deliver the requisite documents and/or instruments to clear title of the provisions of this Letter of Agreement.

6. If the consummation of the sale of Parcel A does not occur on or before March 28, 2008, upon the Receiver recording in the City of Warwick Land Evidence Records the Re-Conveyance Deed for the Property and the Re-Conveyance Deed of the Conservation Easement, the Receiver promptly and without delay shall return the Sale Proceeds, in full, together with accrued interest, to the City, except that Receiver promptly and without delay shall return the $1,400,000.00 of the Sale Proceeds, together with accrued interest, directly to RIDEM. Simultaneously with the Receiver recording the Re-Conveyance Deeds, if, and to the extent remaining unpaid and outstanding, the Municipal Lien for Unpaid Taxes shall attach to the Property.

7. Subsequent to the recording in the City of Warwick Land Evidence Records of the Re-Conveyance Deed for the Property and the Re-Conveyance Deed of the Conservation Easement, upon proper application to the City by the Receiver to merge Parcel A and Parcel B into one lot, the City shall approve the merger of Parcel A and Parcel B into one lot.

8. The City, RIDEM, and the Receiver agree to undertake such requisite actions and to execute and deliver such further documentation to consummate the agreements and transactions contemplated by this Letter of Agreement and the USDCRI 12/13/07 Order.

9. The terms of this Letter of Agreement shall survive the closing on the conditional sale of the Property from the Receiver to the City. This Agreement may be executed in one or more counter parts and each shall be deemed to be an original.

CITY OF WARWICK:

By: [signature] Date: 12/31/07

Its: Mayor

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT

By: [signature] Date: 12-31-07

Its: Director

U.S. SMALL BUSINESS ADMINISTRATION
AS RECEIVER FOR MONETA CAPITAL CORPORATION

By: [signature] Date: 12/31/07

Its: Attorney-in-Fact

CITY OF WARWICK:

By: ______________________________ Date: ________________

Its: ______________________________

STATE OF RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT

By: ______________________________ Date: ________________

Its: ______________________________

U.S. SMALL BUSINESS ADMINISTRATION
AS RECEIVER FOR MONETA CAPITAL CORPORATION

By: Thomas G. Morris Date: 12-28-07
Thomas G. Morris

Its: Director, Office of SBIC Liquidation

INST# 00024807 Bk# 6751 Pg# 273

# EXHIBIT C

INST: 00024807 Bk: 6751 Pg: 274

FINAL DEED DESCRIPTION
FOR
ASSESSOR'S PLAT 379 LOTS 8, 9, 426 & 445,
ASSESSOR'S PLAT 380 LOTS 1, 3 & 281
AND ASSESSOR'S PLAT 381 LOTS 38-41
LAND TO BE DEDICATED TO
THE CITY OF WARWICK
ROCKY POINT PARK

That certain tract or parcel of land, with all improvements thereon, situated in the City of Warwick, County of Kent, State of Rhode Island, being more particularly described as follows:

The above described property is delineated as "PARCEL B" on that certain Subdivision Plan entitled "ADMINISTRATIVE SUBDIVISION for ASSESSOR'S PLAT 379 LOTS 8, 9, 426 & 445, ASSESSOR'S PLAT 380 LOTS 1, 3 & 281, ASSESSOR'S PLAT 381 LOTS 38, 39, 40 & 41, ROCKY POINT situated on ROCKY POINT AVENUE, PALMER AVENUE & ALDRICH AVENUE, WARWICK, RHODE ISLAND, prepared for CITY OF WARWICK", dated Dec., 20, 2007, Scale 1"=250', prepared by GAROFALO & ASSOCIATES, INC., which is recorded in the City of Warwick Land Evidence Records on December 31, 2007, at 12:15, PM, in Book ______ at Page ______, Plat Card 1395.

Being also described as follows:

Beginning at the most northwesterly corner of the herein described parcel said point being located at the most northeasterly corner of Plat 379 Lot 7 land now or formerly of Donald F. Loughnane & Irene R.;

Thence proceeding north 80°35'22" east along the southerly line of said Rocky Point Avenue a distance of seven hundred three and 27/100 (703.27') feet to a point;

Thence proceeding south 09°51'38" east a distance of one hundred fifty nine and 48/100 (159.48') feet to a point;

Thence proceeding north 79°38'21" east a distance of forty one and 57/100 (41.57') feet to a point;

Thence proceeding north 10°21'39" west a distance of one hundred forty three and 09/100 (143.09') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of fifty and 00/100 (50.00') feet and a delta angle of 33°22'39" a distance of twenty nine and 13/100 (29.13') feet to the end of said curve, said curve has a chord bearing of north 39°29'11" east to a point at the beginning of a reverse curve;

Thence proceeding along the arc of said curve with a radius of twenty five and 00/100 (25.00') feet and a delta angle of 73°44'10" a distance of thirty two and 17/100 (32.17') feet to the end of said curve, said curve has a chord bearing of north 59°39'56" east;

Thence proceeding south 83°27'59" east a distance of sixty one and 90/100 (61.90') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of five hundred and 00/100 (500.00') feet and a delta angle of 10°43'02" a distance of ninety three and 53/100 (93.53') feet to the end of said curve, said curve has a chord bearing of south 78°06'28" east;

Thence proceeding south 72°44'57" east a distance of sixty five and 00/100 (65.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred fifty and 00/100 (150.00') feet and a delta angle of 50°41'15" a distance of one hundred thirty two and 70/100 (132.70') feet to the end of said curve, said curve has a chord bearing of south 47°24'19" east;

Thence proceeding south 22°03'42 east a distance of one hundred forty four and 47/100 (144.47') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of two thousand and 00/100 (2000.00') feet and a delta angle of 08°12'55" a distance of two hundred eighty six and 77/100 (286.77') feet to the end of said curve, said curve has a chord bearing of south 26°10'09" east;

Thence proceeding south 30°16'37" east a distance of eighty five and 46/100 (85.46') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred and 00/100 (100.00') feet and a delta angle of 30°52'04" a distance of fifty three and 87/100 (53.87') feet to the end of said curve, said curve has a chord bearing of south 45°42'39" east;

Thence proceeding south 61°08'41" east a distance of ninety two and 36/100 (92.36') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred and 00/100 (100.00') feet and a delta angle of 46°58'18" a distance of eighty one and 98/100 (81.98') feet to the end of said curve, said curve has a chord bearing of south 84°37'49" east;

Thence proceeding north 71°53'02" east a distance of two hundred fifty seven and 43/100 (257.43') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of five hundred and 00/100 (500.00') feet and a delta angle of 12°38'16" a distance of one hundred ten and 29/100 (110.29') feet to the end of said curve, said curve has a chord bearing of north 65°33'54" east;

Thence proceeding north 59°14'46" east a distance of two hundred eighty five and 39/100 (285.39') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred eighty and 00/100 (180.00') feet and a delta angle of 36°33'02" a distance of one hundred fourteen and 83/100 (114.83') feet to the end of said curve, said curve has a chord bearing of north 40°58'15" east;

Thence proceeding north 22°41'44" east a distance of fifty three and 00/100 (53.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of three hundred and 00/100 (300.00') feet and a delta angle of 10°11'21" a distance of fifty three and 35/100 (53.35') feet to the end of said curve, said curve has a chord bearing of north 17°36'03" east;

Thence proceeding north 12°30'23" east a distance of four hundred thirty two and 39/100 (432.39') feet to a point at the beginning of a curve:

Thence proceeding along the arc of said curve with a radius of one hundred forty and 00/100 (140.00') feet and a delta angle of 46°12'54" a distance of one hundred twelve and 92/100 (112.92') feet to the end of said curve, said curve has a chord bearing of north 15°40'43" west;

Thence proceeding north 58°56'44" east a distance of eighty one and 25/100 (81.25') feet to a point;

Thence proceeding north 06°34'35" east a distance of three hundred seventy five and 51/100 (375.51') feet to a point;

Thence proceeding north 71°05'42" west a distance of three hundred forty five and 10/100 (345.10') feet to a point;

Thence proceeding north 00°00'00" east a distance of three hundred twenty four and 62/100 (324.62') feet to a point;

Thence proceeding north 16°40'11" west a distance of eight hundred sixty and 29/100 (860.29') feet to a point;

Thence proceeding north 71°51'49" east a distance of two hundred twenty eight and 31/100 (228.31') feet to a point on the high water line as established by elevation 4.5, bounded northerly by land now or formerly of Stephen J. Galuska;

Thence proceeding south 36°32'33" east along the high water line a distance of forty seven and 22/100 (47.22') feet to a point;

Thence proceeding south 41°42'40" west along said high water line a distance of thirty and 43/100 (30.43') feet to a point,

Thence proceeding south 07°18'25" east along said high water line a distance of one hundred thirty five and 81/100 (135.81') feet to a point;

Thence proceeding south 20°31'42" east along said high water line a distance of seventy four and 45/100 (74.45') feet to a point;

Thence proceeding south 08°03'40" east along said high water line a distance of one hundred ten and 38/100 (110.38') feet to a point;

Thence proceeding south 20°02'46" east along said high water line a distance of seventy seven and 46/100 (77.46') feet to a point;

Thence proceeding south 29°57'07" east along said high water line a distance of sixty eight and 22/100 (68.22') feet to a point;

Thence proceeding south 43°59'53" east along said high water line a distance of seventy seven and 72/100 (77.72') feet to a point;

Thence proceeding south 12°14'04" east along said high water line a distance of seventy and 40/100 (70.40') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of thirty nine and 47/100 (39.47') feet and a delta angle of 111°25'17" a distance of seventy six and 76/100 (76.76') feet to a point on the end of said curve, said curve has a chord bearing of south 39°03'31" west, the last ten (10) courses are along the mean high water line elevation 4.5;

Thence proceeding south 15°16'27" east along said high water line a distance of sixty two and 08/100 (62.08') feet to a point;

Thence proceeding south 30°54'46" east along said high water line a distance of one hundred seventy nine and 64/100 (179.64') feet to a point;

Thence proceeding south 40°05'06" east along said high water line a distance of one hundred twenty nine and 19/100 (129.19') feet to a point;

Thence proceeding south 57°32'10" east; along said high water line a distance of one hundred forty five and 13/100 (145.13') feet to a point;

Thence proceeding south 15°38'16" west along said high water line a distance of thirty three and 27/100 (33.27') feet to a point;

Thence proceeding south 13°58'38" east along said high water line a distance of thirty four and 39/100 (34.39') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of sixty three and 87/100 (63.87') feet and a delta angle of 47°01'00" a distance of fifty two and 41/100 (52.41') feet to the end of said non-tangent curve, said curve has a chord bearing of south 26°09'28" west;

Thence proceeding south 82°34'08" east along said high water line a distance of one hundred two and 54/100 (102.54') feet to a point;

Thence proceeding north 60°34'26" east along said high water line a distance of forty and 06/ 100 (40.06') feet to a point;

Thence proceeding north 18°47'35" east along said high water line a distance of ninety eight and 11/100 (98.11') feet to a point;

Thence proceeding north 40°44'58" west along said high water line a distance of twenty five and 67/100 (25.67') feet to a point;,

Thence proceeding south 65°56'50" west along said high water line a distance of fifty eight and 97/100 (58.97') feet to a point;

Thence proceeding south 85°17'02" west along said high water line a distance of thirty seven and 70/100 (37.70') feet to a point;

Thence proceeding north 04°49'06" west along said high water line a distance of thirteen and 08/100 (13.08') feet to a point;

Thence proceeding north 74°55'41" east along said high water line a distance of seventy two and 95/100 (72.95') feet to a point,

Thence proceeding north 60°35'08" east along said high water line a distance of fifty eight and 22/100 (58.22') feet to a point on a non-tangent curve

Thence proceeding along the arc of said curve with a radius of sixty five and 36/100 (65.36') feet and a delta angle of 69°29'03" a distance of seventy nine and 26/100 (79.26') feet to the end of said non-tangent curve, said curve has a chord bearing of south 69°44'38" east;

Thence proceeding north 65°33'45" east a long said high-water line a distance of forty five and 09/100 (45.09') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of nineteen and 09/100 (19.09') feet and a delta angle of 86°42'45" a distance of twenty eight and 90/100 (28.90') feet to the end of said non-tangent curve, said curve has a chord bearing of north 83°42'28" east;

Thence proceeding south 16°54'29" east along said high water line a distance of one hundred nine and 91/100 (109.91') feet to a point;

Thence proceeding south 85°58'47" east along said high water line a distance of thirty eight and 35/100 (38.35') feet to a point;

Thence proceeding south 09°43'22" east along said high water line a distance of sixty six and 67/ 100 (66.67') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of fifty four and 20/100 (54.20') feet and a delta angle of 46°38'32" a distance of forty-four and 12/100 (44.12') feet to the end of said non-tangent curve, said curve has a chord bearing of south 33°25'44" west;

Thence proceeding along the arc of a non-tangent curve with a radius of three hundred eighteen and 62/100 (318.62') feet and a delta angle of 11°59'54" a distance of sixty six and 72/100 (66.72') feet to the end of said non-tangent curve, said curve has a chord bearing of south 08°07'47" east;

Thence proceeding south 55°28'00" west along said high water line a distance of forty four and 42/100 (44.42') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of fifty and 55/100 (50.55') feet and a delta angle of 86°01'15" a distance of seventy five and 89/100 (75.89') feet to the end of said curve, said curve has a chord bearing of south 03°38'55" west;

Thence proceeding south 21°29'07" west along said high water line a distance of one hundred thirty six and 26/100 (136.26') feet to a point;

Thence proceeding south 31°37'34 west along the high water line a distance of fifty six and 80/100 (56.80') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of ninety six and 35/100 (96.35') feet and a delta angle of 41°59'25" a distance of seventy and 61/100 (70.61') feet to the end of said curve, said curve has a chord bearing of south 75°54'21" west;

Thence proceeding south 16°46'50" west along said high water line a distance of one hundred fourteen and 79/100 (114.79') feet to a point on a non-tangent curve;

Thence proceeding along the arc of said curve with a radius of twenty eight and 22/100 (28.22') feet and a delta angle of 98°13'18" a distance of forty eight and 38/100 (48.38') feet to a point on a non-tangent curve, said curve has a chord bearing of south 39°45'05" west;

Thence proceeding along the arc of said curve with a radius of forty six and 22/100 (46.22') feet and a delta angle, of 100°02'48" a distance of eighty and 71/100 (80.71') feet to the end of said curve, said curve has a chord bearing of south 50°44'26" west;

Thence proceeding south 62°22'45" west along said high water line a distance of two hundred twelve and 08/100 (212.08') feet to a point;

Thence proceeding south 12°49'15" west along said high water line a distance of three hundred twelve and 22/100 (312.22') feet to a point;

Thence proceeding south 05°59'55" east along said high water line a distance of one hundred twenty eight and 08/100 (128.08') feet to a point;

Thence proceeding south 38°11'55" west along said high water line a distance of one hundred sixty three and 26/100 (163.26') feet to a point;

Thence proceeding south 47°18'02" west along said high water line a distance off one hundred fifty one and 06/100 (151.06') feet to a point;

Thence proceeding south 50°50'33" west along said high water line a distance of sixty three and 85/100 (63.85') feet to a point;

Thence proceeding south 63°28'32 west along said high water line a distance of one hundred thirty seven and 37/100 (137.37') feet to a point;

Thence proceeding south 11°18'16" west along said high water line a distance of thirty and 48/100 (30.48') feet to a point;

Thence proceeding north 52°23'29" west along said high water line a distance of thirty three and 34/100 (33.34') feet to a point;

Thence proceeding south 73°28'46" west along said high water line a distance of four hundred twenty three and 94/100 (423.94') feet to a point;

Thence proceeding north 73°08'26" west along said high water line a distance of forty seven and 57/100 (47.57') feet to a point;

Thence proceeding south 60°11'46" west along said high water line a distance of four hundred seventeen 17/100 (417.17') feet to a point;

Thence proceeding north 34°36'39" west a distance of thirty eight and 91/100 (38.91') feet to a point, said point being the most southeasterly corner of Assessor's Plat 381 Lot 41;

Thence proceeding south 60°56'06" west along the northerly line of Aldrich Avenue (unimproved) a distance of one hundred thirty four and 25/100 (134.25') feet to an angle in said Aldrich Avenue;

Thence proceeding south 43°56'06" west along said Avenue a distance of three hundred forty seven and 80/100 (347.80') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred nineteen and 79/100 (119.79') feet and a delta angle of 36°55'44" a distance of seventy seven and 21/100 (77.21') feet to the end of said curve, said curve has a chord bearing of south 62°23'58" west;

Thence proceeding south 80°51'50" west a distance of thirty and 00/100 (30.00') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of one hundred seventy seven and 50/100 (177.50') feet and a delta angle of 69°31'59" a distance of two hundred fifteen and 41/100 (215.41') feet to the end of said curve, said curve has a chord bearing of north 64°22'10" west;

Thence proceeding north 29°36'11" west a distance of forty one and 44/100 (41.44') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of two hundred twenty five and 20/100 (225.20') feet and a delta angle of 20°28'00" a distance of eighty and 44/100 (80.44') feet to a point on a reverse curve, said curve has a chord bearing of north 19°22'11" west;

Thence proceeding along the arc of said curve with a radius one hundred sixty and 00/100 (160.00') feet and a delta angle of 74°18'33" a distance of two hundred seven and 52/100 (207.52') feet to a point at the end of said curve, said curve has a chord bearing of north 46°17'29" west, the last eight (8) courses bounded southerly, westerly and northwesterly by Aldrich Avenue;

Thence proceeding north 08°48'10" west a distance of four hundred twenty three and 92/100 (423.92') feet to a point;

Thence proceeding south 80°33'22" west a distance of three hundred eighty three and 75/100 (383.75') feet to a point;

Thence proceeding south 83°24'16" west a distance of two hundred twenty two and 84/100 (222.84') feet to a point;

Thence proceeding south 08°28'35" east a distance of ten and 69/100 (10.69') feet to a point;

Thence proceeding south 81°31'25" west a distance of sixty three and 00/100 (63.00') feet to a point;

Thence proceeding north 08°28'35" west a distance of fifty five and 30/100 (55.30') feet to a point;

Thence proceeding north 81°31'25" east a distance of sixty three and 00/100 (63.00') feet to a point;

Thence proceeding south 08°28'35" east a distance of twenty four and 60/100 (24.60') feet to a point;

Thence proceeding north 83°24'16" east a distance of two hundred twenty three and 00/100 (223.00') feet to a point;

Thence proceeding north 80°33'22" east a distance of three hundred eighty six and 56/100 (386.56') feet to a point, the last eight (8) courses are bounded southerly, easterly, southerly, westerly, and northerly, easterly and northerly by land now or formerly of Elizabeth M. Garrison Trustee Elizabeth M. Garrison Trust;

Thence proceeding north 09°24'38" west a distance of one hundred twenty four and 29/100 (124.29') feet to a point;

Thence proceeding south 88°09'22" west a distance of fifty two and 64/100 (52.64') feet to a point at the beginning of a curve;

Thence proceeding along the arc of said curve with a radius of seventy five and 00/100 (75.00') feet and a delta angle of 82°25'46" a distance of one hundred seven and 90/100 (107.90') feet to the end of said curve, said curve has a chord bearing of north 50°37'45" west, the last three (3) courses bounded northerly, westerly, southerly and southwesterly by land now or formerly of Guaranteed Trade LLC;

Thence proceeding north 09°24'52" west a distance of one hundred fifty two and 90/100 (152.90') feet to the point and place of beginning.

Said parcel contains 1,780,379 ± square feet or 40.9 ± acres more or less.

RECORDED
Dec 31,2007 12:23:55P
Marie T. Bennett, City Clerk
City of Warwick, RI