IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 99-565L |
| MONETA CAPITAL CORPORATION | ) | |
| Defendant. | ) | |

**RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE MOTION TO EXTEND FILED BY ATLANTIC AMERICAN ROCKY POINT PARTNERS GROUP, LLC**

The U.S. Small Business Administration ("SBA"), as Receiver (the "Receiver") for Moneta Capital Corporation ("Moneta"), in support of its Objection to the Motion to Extend Filed By Atlantic American Rocky Point Partners Group, LLC, hereby states as follows:

## BACKGROUND

By Order dated February 2, 2000 ("the Receivership Order") this Court appointed SBA as receiver for Moneta. The Receiver was made aware that Moneta held an interest in a syndicated loan ("the Loan") made to C.R. Amusements, LLC ("C.R. Amusements"), which loan was collateralized by a mortgage on real property consisting of 124 acres in Warwick, Rhode Island ("the Property"). The Property is the site of the former Rocky Point Amusement Park which closed in or about 1996

From 1999 through July 2003, ownership of the property was vested in C.R. Amusements an entity that was under the protection of the United States Bankruptcy

Court for the District of Rhode Island. From the inception of the bankruptcy proceeding through July 2003, Andrew Richardson held possession of the Property in his capacity as Chapter 7 Trustee of C.R. Amusements.

Receiver Becomes Titled Owner After Foreclosure

The Receiver became the titled owner of the Property as the result of a foreclosure sale held on or about July 29, 2003. Title to the Property was held for the benefit of the Moneta Receivership Estate and on behalf of various co-investors (the "Participants") in a syndicated loan. After the Receiver bid in its outstanding mortgage at the foreclosure sale and became the titled owner, the Receiver negotiated the sale of the Property to Vanderbilt Capital, LLC ("Vanderbilt") for the total price of $25,000,000. Ultimately in May 2004, the Receiver entered into two purchase and sale agreements (the "Vanderbilt Agreements") for the Property that were approved by the Court on November 10, 2004 (the "Vanderbilt Sale Order"). The Vanderbilt Sale Order became final on September 2, 2005, by virtue of the dismissal of an appeal filed by the Rocky Beach Association, Inc. The Vanderbilt Purchase and Sale Agreements contained numerous contingencies that required fulfillment prior to a closing on the Property and it also provided for Vanderbilt to carry the costs of the Property during the term of the Vanderbilt Agreements. From and after September 2005 up through February 2007, the Property remained under contract with Vanderbilt.

Vanderbilt Termination

During the term of the Vanderbilt Agreement, Vanderbilt was unable to reach agreement with the City regarding a number of contingencies including the unit count for the development. In October 2006, the City of Warwick made demand upon the

Receiver for the demolition of certain structures under R.I.G.L. § 23-27.3-100 et. seq. and the Receiver in turn made demand for Vanderbilt to assume the costs of such demolition. Initially, Vanderbilt refused the Receiver's demand, however, after negotiation Vanderbilt agreed to the release of its $500,000.00 deposit to the Receiver in consideration for the termination of the Vanderbilt Agreements.

Post Vanderbilt Negotiations

Commencing in February, 2007, the Receiver began marketing the Property for sale and discussed potential projects with numerous prospective buyers. Due to the inability of Vanderbilt to make any significant progress in obtaining the necessary approvals to meet the contingencies in the Vanderbilt Agreements, the Receiver determined that it would be in the best interest of the estate and the Participants to seek a prospective purchaser that did not require any contingencies to close on the Property. While the Receiver recognized that the ultimate purchase price for an agreement containing contingencies would likely be higher, the Receiver determined that the time and risk associated with such an agreement did not ultimately weigh in favor of such a contract. During this same period, the Receiver maintained an open dialogue with the City relative to the prospect of a separate sale of a discreet portion of the Property to take advantage of an existing $2,200,000.00 grant from the National Oceanographic & Atmospheric Administration ("NOAA").

By the Spring of 2007, the Receiver had received expressions of interest in a non-contingent sale from two parties that would also involve the sale of certain acreage to the City. One group was headed by Nicholas Cambio (the "Cambio Group") and the other group consisted of the individuals affiliated with Rocky Point

Partners, LLC ("Rocky Point Partners").

Because the Cambio Group was offering $19,000,000.00, the Receiver continued negotiations solely with this Group throughout most of the summer of 2007[1]. On August 16, 2008, the Receiver's representatives met with the Cambio Group in Washington, D.C. for what the Receiver was led to believe would be the finalization of a purchase and sale agreement that had been circulated between the parties. Nicholas Cambio was in attendance at this meeting.

At the meeting, the Cambio Group for the first time indicated to the Receiver that it would need significant accommodation in the timing of the payment of the purchase price in order to close the transaction, thereby materially altering its original proposal.[2] During the meeting, the Receiver provided the Cambio Group with an aerial map of the Property delineating the parcel that would be conveyed to the City. The delineation of that parcel clearly showed that the property the Cambio Group would be purchasing had no direct access to Narragansett Bay as the entire waterfront was being conveyed to the City. The involvement of both NOAA and Rhode Island Department of Environmental Management ("RI DEM") were discussed and Mr. Cambio specifically expressed reservations about the ability to negotiate the necessary easements and other concessions from the RI DEM after a conveyance of the delineated parcel by the Receiver. Mr. Cambio went so far as to suggest that there might be alternatives to the involvement of RI DEM. After several hours of

---

[1] The original proposal between the Receiver and the Cambio Group called for a closing to occur in September 2007, with payment of a $4,500,000.00 at the closing and the balance due and payable in March 2008.

[2] Essentially, the Cambio Group was seeking the financial assistance from the Receiver in the form of owner financing whereby the Receiver would take back mortgages subordinate to some amount of development costs.

discussions, the parties were unable at this meeting to come to an agreement as to the basic framework for the financial underpinnings of a purchase and sale agreement.

Thereafter, the Receiver and the Cambio Group continued negotiations for a brief period. At all times, the Receiver made clear to Mr. Cambio that the City was not interested in any overtures by the Cambio Group that would result in the removal of the RI DEM from the process. On or about September 5, 2007, the Receiver presented its final proposal to the Cambio Group. Mr. Cambio determined that his group would be unable to commit to the terms required by the Receiver and indicated that he was no longer interested in the transaction.

Having been unable to come to an agreement with the Cambio Group, the Receiver contacted Rocky Point Partners, which indicated its continued willingness to proceed with a purchase of the back portion of the property. After some rapid negotiations between the Receiver and Rocky Point Partners, the parties were able to negotiate a purchase and sale agreement. Having already reached agreement with the City in August, 2007, the Receiver was able to present the Court with two separate purchase and sale agreements representing the sale of the Property for $20,000,000.00.

Sale To The City And AARPP

On September 30, 2007, the Receiver filed a Motion (the "Motion to Sell") seeking approval for the sale of the Property pursuant to a purchase and sale agreement (the "City Purchase and Sale Agreement") with the City of Warwick with respect to approximately forty-one acres of the Property (the "City Parcel") for the purchase price of $4,400,000.00 to be designated as open space, and a purchase and sale agreement with

Rocky Point Partners, LLC (the "Rocky Point Purchase and Sale Agreement"), together with the City Purchase and Sale Agreement, the "Purchase and Sale Agreements") for the remaining acreage of the Property (the "Rocky Point Parcel"), for the purchase price of $15,600,000.00.

On October 24, 2007, the Court entered an Order granting the Receiver's Motion to Sell and set a hearing on confirmation of the sale for November 14, 2007. Prior to the confirmation hearing, Atlantic American Rocky Point Partners Group, LLC ("AARPP") submitted an offer of $17,161,000.00 for the Rocky Point Parcel but failed to provide the necessary evidence of its financial capacity to qualify as a bidder. Due to the prior failed negotiations and dealings with Nicholas Cambio, who appears to be affiliated with AARPP and who is spearheading AARPP's development, the Receiver required AARPP to deposit $12,000,000.00 with its own counsel as evidence that AARPP had the financial capacity to close on or before March 28, 2008. At the hearing on confirmation of the sale, AARPP's counsel argued that it was a qualified bidder and lauded the substantial experience of the "group" making the offer, citing to various developments throughout Rhode Island. Hearing Transcript, November 14, 2007 p. 5-6 (a copy of which is annexed hereto as Exhibit A). After hearing from the parties, the Court approved the sale to the City of Warwick and scheduled a subsequent hearing for December 5, 2007, to determine the qualification of AARPP as a bidder.

Prior to the December 5, 2007 hearing, AARPP submitted documentation indicating that it had the financial capacity to close on the transaction on or before March 28, 2008. The documentation provided by AARPP indicated that it had obtained funding guarantees from certain individuals who had the capacity to close on the Rocky Point

Parcel without the necessity of satisfying contingencies other than title and survey[3]. As such, at the hearing on December 5, 2007, the Receiver indicated its acceptance of the bid and thereafter the parties proceeded with an auction. At the auction, Rocky Point Partners chose not to advance its bid and AARPP was selected as the high bidder at the sale price of $17,161,000.00.

While the Receiver was presented with factual evidence of the financial capacity of AARPP to close the transaction, the Receiver maintained a healthy skepticism due to the involvement of Mr. Cambio as the development leader of AARPP.[4] In an effort to protect the interests of the estate and Participants, the Receiver requested that Rocky Point Partners agree to step in to purchase the Rocky Point Parcel in the event that AARPP did not close on or before March 28, 2008. Rocky Point Partners agreed to act as the "back up" buyer in the event AARPP did not timely close on the parcel. On December 19, 2007, the Court entered the Order approving the sale of the Rocky Point Parcel to AARPP. The Rocky Point Parcel Sale Order specifically includes a provision permitting the Receiver to sell the Parcel to Rocky Point Partners in the event AARPP does not timely close.

On December 13, 2007, the Order (the "City Parcel Sale Order") entered approving the sale to the City of Warwick. The City Parcel Sale Order specifically provides for a reconveyance of the City Parcel back to the Receiver if the sale of the

---

[3] At least one of those individuals was involved in the August, 2007 meeting with the Receiver at which the delineation of the City Parcel was provided and was part of the prior group that failed to enter into an agreement with the Receiver.

[4] Mr. Cambio had agreed in July 2007 to a purchase price of $19,000,000.00, with a $4,500,000.00 non-refundable deposit due upon confirmation and the remaining purchase price payable five months after confirmation. Unfortunately, in late August 2007, Mr. Cambio reneged on this offer and requested substantial revisions to the terms of payment of the purchase price, which ultimately resulted in substantial delay in seeking court approval of a sale and the necessity of two separate closings.

Rocky Point Parcel is not consummated on or before March 28, 2008. The purpose of this provision was to allow for the closing on the City Parcel prior to December 31, 2007, thereby enabling the City to take advantage of a $2,200,000.00 grant from NOAA. During the month of December, the Receiver, the City, RI DEM and NOAA worked diligently to ensure that a closing would occur prior to January 1, 2008. Pursuant to NOAA regulations, the City Parcel was required to be clear of any encumbrances that could materially interfere with the use and enjoyment of that property as open space. In addition, NOAA requires that the deed of conveyance specifically reference NOAA's involvement and restrict any further encumbrance from being placed on the Property. In mid-December Drafts of the deed of conveyance were circulated among all parties including counsel to AARPP.[5]

On December 31, 2007, the Receiver and the City closed on the City Parcel and the Receiver is currently in possession of the $4,400,000.00 purchase price and the reconveyance instruments.[6] As required under the NOAA grant program, the City Parcel cannot be further encumbered in any manner without NOAA approval. In connection with the conveyance to the City, Mortgage Guaranty & Title Company issued a title policy insuring title to the City Parcel.

The agreement (the "AARPP Agreement") approved by entry of the Rocky Point Parcel Sale Order contains several important deadlines pertaining to the issuance of title

---

[5] On December 14, 2007, the draft Receiver's Deed conveying the City Parcel to the City, which contained prohibitions against encumbrances in accordance with NOAA's requirements was emailed to Diane Finkle, Esq.

[6] AARPP goes on at length as to how it accommodated the Receiver relative to the City's failure to provide an ALTA I survey as required by the City Parcel Purchase and Sale Agreement. Because the City did not obtain an ALTA I survey as required under its agreement, the Receiver informed AARPP that it could either waive the requirement or terminate the sales agreement. AARPP was made aware that Rocky Point Partners stood ready, willing and able to consummate the transaction and waive the ALTA I requirement as it pertained to the City Parcel.

insurance, survey, due diligence and closing. The ALTA I survey was required to be delivered to the Receiver on January 30, 2008. AARPP did provide the ALTA I Survey on February 4, 2008 and after review the Receiver approved the legal description accompanying the Survey. However, AARPP was required to deliver to the Receiver a prospective title commitment and any objections that AARPP had relative to the exceptions contained is such policy on or before February 15, 2008. The Receiver has never been provided with the title commitment or any objections to title by AARPP and therefore such objections have been waived under the Section 21 of the AARPP Agreement. In addition, the due diligence period expires at 12:00 a.m. on March 28, 2008, the time when AARPP is required to deposit an additional $750,000.00 to bring its non-refundable deposit on that date to $1,000,000.00. Finally, the closing is to occur on March 28, 2008 and time is of the essence under the AARPP Agreement.

On February 27, 2008, AARPP sent correspondence to the Receiver identifying six issues that it contented were impediments to a timely closing on March 28, 2008. Those issues can be summarized as follows:

1. No blanket easement existed encumbering the City Parcel to permit an unlimited stormwater discharge into Narragansett Bay;
2. No blanket utility easements encumbering the City Parcel were preserved in favor of the Rocky Point Parcel;
3. Full sewer allocation of 75,000 gallons per day was not retained entirely for the Rocky Point Parcel;
4. Height restrictions and site corridors on the City Parcel were not reserved in favor of the Rocky Point Parcel;

5. Use restrictions on the City Parcel to daylight hours was not required in connection with the conveyance by the Receiver; and

6. The remediation of lead contamination on the City Parcel was not undertaken or required by the Receiver.

Despite having been fully aware of the nature of the transaction between the Receiver and the City requiring the conveyance to be free and clear of all liens and encumbrances, AARPP's correspondence characterized these issues as a failure on the part of the Receiver to retain such rights that are necessary for AARPP's development plans.

Subsequent to the receipt of the foregoing correspondence, the Receiver conferred with the Director of the RI DEM and the Mayor of the City relative to the issues raised and the ability of both the City and RI DEM to provide solutions to each issue. After these discussions, the Receiver determined that both the City and RI DEM were willing to entertain some reasonably necessary encumbrances related to the development of the Rocky Point Parcel but were unwilling to give AARPP carte blanche in terms of easements as requested in the February 27, 2008 letter.

On March 3, 2008, the Receiver responded to the AARPP's assertions specifically reminding AARPP that the sale in no way contemplated reservation of rights over the City Parcel and such matters were in no way conditions to the closing. A copy of the Receiver's letter is annexed hereto as Exhibit B. The Receiver went on to point out that Mr. Cambio was well aware as early as August, 2007, of the nature of the transaction and should have recognized that the majority of the identified issues were not likely to be

resolved in a three month due diligence period as they involved certain bodies politic.[7] Notwithstanding the fact that AARPP was well aware prior to bidding that there would be no reservation of rights by the Receiver over the City Parcel, the Receiver addressed each specific point raised by AARPP and explained why such matters were required to be dealt with subsequent to the closing on March 28, 2008.

On March 14, 2008, AARPP sent additional correspondence to the Receiver reiterating its position that it could not close unless the pre-conditions delineated in its February 27, 2008 letter were addressed. In this latter correspondence, AARPP requested additional time in which to complete its due diligence and close on the transaction.

The Receiver, recognizing that AARPP would not close as agreed, arranged for a meeting with Rocky Point Partners on March 18, 2008, to discuss the prospect of their agreeing to purchase the Rocky Point Parcel pursuant to paragraph 6 of the Rocky Point Parcel Sale Order. At this meeting, Rocky Point Partners agreed to proceed with the purchase of the Rocky Point Parcel provided it was given the promised ninety-day due diligence period.

By letter dated March 18, 2008, Rocky Point Partners reiterated its willingness to proceed with the transaction provided it was given the ninety-day due diligence period provided for under the contract confirmed by this Court. Rocky Point Partners further assured the Receiver that none of the issues raised by AARPP would be pre-conditions to a closing. A copy of the March 18, 2008 letter is annexed hereto as Exhibit C. In order for the Receiver to proceed with a sale of the Rocky Point Parcel to Rocky Point Partners,

---

[7] Obviously, Mr. Cambio's concerns relative to his organization's ability to negotiate with the RI DEM and he prefers that the Receivership estate and the Participants bear the risk relative to such negotiations rather than AARPP.

the Receiver must obtain an extension of the time for recording the instruments that would effect a reconveyance of the City Parcel back to the Receiver. As such, the Receiver filed a Motion on March 20, 2008, seeking such an extension of the time for recording the reconveyance instruments to permit the transaction to proceed with Rocky Point Partners.

On March 18, 2008, AARPP filed a Motion seeking to extend the time-frame for completing its due diligence (the "Motion to Extend Due Diligence Period") and extending the closing to July 28, 2008. In support of its Motion AARPP attached various correspondence to the Receiver and other documents. Noticeably absent from such documents is the Receiver's responsive correspondence to AARPP of March 3, 2008. Despite Mr. Cambio's years of development experience and the full disclosure of the nature of this transaction by the Receiver, AARPP alleges that only through its due diligence has it come to identify six issues that substantially impact the development of the Rocky Point Parcel. In so concluding, AARPP goes out of its way to assert that "[t]hese issues arise primarily because the Receiver did not retain certain essential rights over the City Parcel when it was sold necessary for the development of the [Rocky Point Parcel]". While AARPP has chosen to condemn the Receiver's actions in not reserving for AARPP that which AARPP failed to disclose as pre-conditions to its willingness to close until it was too late to potentially resolve any of the identified issues[8], AARPP makes no mention of the fact that the purchase and sale agreements clearly provided for a transfer <u>without</u> any reservation of rights. AARPP also fails to account for the fact that the transfer under NOAA regulations requires the title to be clear of encumbrances that

materially affect the use and enjoyment of the Parcel as open space thereby precluding the "blanket" easements AARPP contends are necessary to "any" development. Additionally, AARPP does not seem to recognize that the RI DEM would never have committed the necessary matching funds in the amount of $1,400,000.00 if the Receiver demanded such "blanket" easements. While AARPP may find it convenient to second guess the Receiver's actions and attempt to lay blame upon the Receiver relative to AARPP's apparent inability to comprehend the structure of the sales, it is clear that AARPP failed to grasp the nature of these transactions until late February 2008.

## ANALYSIS

In support of its Motion, AARPP relies primarily upon the case of In re Great Western Beet Sugar Co., 125 P. 799 (1912). AARPP indicates that "[a] court's discretion to modify the terms of a sale order includes the ability to extend deadlines provided by the order authorizing a sale, especially where equity and the circumstances that arise after the entry of the sale order warrant." AARPP Memorandum at p. 16. While the Receiver agrees with the general principle that the Court has the ability to modify the terms of a sale order when equity so dictates, it disagrees with AARPP's assertions that a modification is justifiable in the present circumstances and that no party is prejudiced by the requested modification.

Although Courts of equity hold the discretionary power to amend an order affecting the sale of property, public policy dictates that such a sale should not be

[8] With the years of development experience of Mr. Cambio it is difficult to understand why he was unaware of the "necessity" of these issues prior to AARPP's bid and why AARPP did not use its ninety-nine day duel diligence period to resolve the issues it now says can be resolved if given an additional ninety-days.

disturbed except for substantial reasons. See Manson v. Duncanson, 166 U.S. 533, 547; 17 S. Ct. 647, 652; 41 L. Ed. 1105, 1110 (1897). In exercising such authority, a Court must determine the material nature of the amendment sought and the prejudice to interested parties. See Quinn v. S.S. Jian, 235 F. Supp. 975, 977 (Dist.MD 1964) (holding in the context of confirmation of a judicial sale that non-material modification after sale extending only the time for payment where no party is prejudiced was within the discretion of the Court).

AARPP attempts to analogize the facts in this proceeding to those in Western Beet Sugar Co. However, even a cursory reading of that case reveals that AARPP's reliance is misplaced. In Western Beet Sugar Co., a receiver was appointed to sell the assets of the company and he proceeded pursuant to an order of that court to auction the assets. Id. at 800. The order directing the sale provided that a 25% deposit would be payable on the date of the auction by the successful bidder. Id. at 800. On the day of the auction, the successful bidder was unable to pay the 25% deposit and the Receiver consulted the judge prior to confirmation of the sale who directed that the receiver allow the bidder "a couple of days within which to pay the [deposit] then due." Id. at 800. The deposit was ultimately paid eighteen days after the auction and the sale of the receiver was later confirmed by a subsequent order of the court. Id. at 801.

In upholding the decision of the lower court in confirming the sale, the Idaho Supreme Court noted that while a receiver has the duty to follow an order authorizing a sale exactly to its terms, the Court itself is vested with the discretion to modify such an order as equity requires. Id. at 801. The Court went on to hold that where a bidder does not have immediately available funds to pay a deposit "it is a reasonable exercise of

discretion on the part of the district judge to extend the time within which such payment shall be made, where no injury is done to anyone by failure of the purchaser to pay the sum due on his bid." Id. at 801. In so holding, the Court made clear that in the context of an order directing a sale, deviations from the terms of the order of a non-material nature would not render the sale void where there was no showing of prejudice to any interested party. Id. at 801.

The attempt by AARPP to analogize the present circumstances to the facts in Western Beet Sugar Co., are misplaced for three reasons. First, the modification permitted by that court was limited strictly to a short extension to permit payment of a deposit prior to confirmation of the sale and in all other respects the terms of the sale were unaffected. The liability to purchase the assets was fixed upon the bidder at the auction and there was nothing left to perform except payment. In the present case, AARPP is not simply seeking a short extension to make payment, rather AARPP is seeking to materially modify the terms of a confirmation order upon which the Receiver and other interested parties have relied. To suggest that a short extension to make payment is in anyway analogous to the request made by AARPP is spurious.

Second, the order that was modified in Western Beet Sugar Co., was one directing the terms of the sale as opposed to the actual confirmation order. AARPP is seeking to modify not the order directing the sale (which entered in October 2007) but is requesting that this Court modify the confirmation order. This is not to say that a court of equity is without the power to materially modify an order confirming a sale; however, the court's discretion in this regard is more limited than in the context of non-material modification of the sale process prior to confirmation as was the case in Western Beet Sugar Co. See

Ballentyne v. Smith, 205 U.S. 285; 27 S.Ct. 527; 51 L.Ed. 803, (1907) (affirming a resale due to inadequacy of price prior to confirmation). See also, Quinn v. S.S. Jian, 235 F. Supp. 975 (Dist.MD 1964).

Finally, the contention by AARPP that the requested extension is non-prejudicial is without merit. The entire sale process was negotiated and proceeded based upon the agreement that there would be a short due diligence period of ninety-days and a closing on or before March 28, 2008. The Court approved the terms of the sale to Rocky Point Partners and AARPP chose to bid based upon those conditions. AARPP now suggests that no injury will result from a fundamental alteration of the agreement upon which the entire sale process was founded. AARPP would ask that this Court simply ignore i) the prejudice to Rocky Point Partners, which was provided the right to proceed with the sale in the event no closing took place on March 28, 2008; ii) the prejudice to the Receivership estate and the Participants in prolonging the sale process based upon contingencies that the Receiver clearly would not have agreed to in the negotiation of a purchase and sale agreement, and for which no party was given an opportunity to object at the time of the proposed sale, iii) the prejudice to the City and RI DEM whereby AARPP would be provided with additional time to use the leverage of the reconveyance as a bargaining tool to obtain concessions that were clearly intended to be negotiated post-closing, and iv) the prejudice to the Receivership estate and Participants in the lack of any notice to prospective purchasers who were not provided an opportunity to bid on a contract providing for a six-month unilateral termination provision in favor of the buyer. Because AARPP has failed to suggest any plausible basis for a material modification of the confirmation order in this case it is bound by the Rocky Point Parcel Sale Order and

the agreement approved by the Court. As such, the Court should interpret the rights of the parties in accord with the Rocky Point Parcel Sale Order and the AARPP Agreement.

In interpreting the AARPP Agreement, the Court must refer to Rhode Island Law. In Rhode Island, contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. See Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 19 (1st Cir. 2002) (holding that under Rhode Island law, unambiguous language in a contract is to be accorded its plain and natural meaning, and its interpretation presents a question of law); Fleet National Bank v. 175 Post Road, LLC.851 A.2d 267, 274 (R.I. 2004)(holding that in Rhode Island, contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed). The AARPP Agreement provides for a due diligence period through March 27, 2008 with a closing to occur on March 28, 2008, time being of the essence. While the Agreement does provide for an extension of the closing date if both parties agree it does not provide for an extension of the due diligence period. As the Receiver does not consent to an extension of the closing date, the Court should hold AARPP to the terms of the contract and AARPP should either close on March 28, 2008 or terminate prior to that date.

## CONCLUSION

Based upon the foregoing, the Receiver requests that the Court determine (1) that AARPP has not set forth any grounds to modify the City Parcel Sale Order as requested in AARPP's Motion, and (2) that AARPP must either terminate the contract by March 27, 2008 or close on the sale on March 28, 2008.

Respectfully submitted,

U.S. Small Business Administration as
Receiver for Moneta Capital Corporation
By its Attorneys,

/s/ Thomas E. Carlotto

Thomas E. Carlotto #6088
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI 02860
401-272-1400
401-272-1403 (fax)