EXHIBIT A

ALL-STATE LEGAL®

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * * C.A. NO. 99-565L

UNITED STATES OF AMERICA *

VS. * NOVEMBER 14, 2007 11:17 A.M.

MONETA CAPITAL CORPORATION *

* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE RONALD R. LAGUEUX,

SENIOR JUDGE

(Confirmation Hearing [Rocky Point])

FOR THE PLAINTIFF:

ARLENE EMBREY, ESQ.
Small Business Administration
409 3rd Street, S.W. 7th Floor
Washington, DC 20416

THOMAS E. CARLOTTO, ESQ.
Shechtman Halperin Savage LLP
1080 Main Street
Pawtucket, RI 02860

FOR ATLANTIC AMERICAN ROCKY POINT PARTNERS GROUP, LLC:

DIANE FINKLE, ESQ.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

Court Reporter: Debra D. Lajoie, RPR, FCRR, CRI

Proceeding reported and produced by computer-aided stenography

14 NOVEMBER 2007--11:17 A.M.

THE COURT: Good morning, everyone.

The matter before the Court this morning is Civil Action 99-565L, United States of America vs. Moneta Capital Corporation. The matter is here on the confirmation of a private sale by the Receiver of the Rocky Point property.

Will the attorneys interested in this matter please identify themselves for the record.

MS. EMBREY: Arlene Embrey for the Moneta Receiver.

MR. CARLOTTO: Thomas Carlotto for the Moneta Receiver.

MS. FINKLE: Diane Finkle representing Atlantic American Rocky Point Partners Group, LLC, a competitive bidder, Your Honor, who submitted a bid in accordance with the notice that was published.

THE COURT: All right. I'll hear from the Receiver side first as to the confirmation of the sale.

MS. EMBREY: Good morning, Your Honor. May it please the Court, the Receiver's here on the hearing for the confirmation.

Pursuant to this Court's order on October 24th, the Receiver published notice on 11/2 and on 11/9 in the "Wall Street Journal," the "Boston Globe" and the "Providence Journal."

The bids were to be received, if any, by

November 13th at 5:00 p.m. The bidders were also, pursuant to the Court's order at Paragraph 5, to be qualified in the seller's sole discretion, the Receiver's sole discretion.

One bid was received, one competitive bid, in the amount of $17,161,000. However, that bidder has not been qualified by the Receiver. The reasons for that have to do with the past history and the negotiations that the Receiver had with this particular bidder that began back in May of last year and collapsed in September of this year-- I'm sorry-- May of this year and September of this year, for three and a half months.

Originally, the deal that had been put together fell apart, and we had to go ahead and file on September 30 with the contract and the bidder that has already been confirmed by this Court. The reasons, again, have to do with the wherewithal of the bidder. We do not believe that, that particular bidder has the ability to close on this deal. They did not have the ability as of September 6th, and we do not believe they have it as of today.

THE COURT: And how does that price compare to-- is this a bid for the total property?

MS. EMBREY: No, sir. It is a bid for the $15.6 million portion, the 83 acres. It is not a bid for the entire parcel. The City's $4.4 million is still intact. There have been no bids for that. And it was 10%-- it was a

little bit over 10%, which is what was advertised. That is what the bid was for. It complied with the notice.

THE COURT: All right. I'll hear from the bidder.

MS. FINKLE: Good morning, Your Honor. Diane Finkle.

Your Honor, the competitive bid is from a-- essentially a group, a consortium that consists of Nicholas Cambio and some of his business affiliates and Universal Properties and a funding-- and a private investment firm out of Tampa, Florida, Atlantic American.

Your Honor, the negotiations earlier on with the SBA were at a totally different purchase price before the market crashed, and the sales agreement submitted to the client at the time, which was a different entity, Your Honor, a different group-- it was CKLP, made up of different-- some of the same people but not this other private investment firm. The agreement came to us with essentially some period of financing from the SBA, so the negotiations proceeded on those terms at a much higher purchase price.

When those fell apart, we followed the procedure here. And, Your Honor, we've only had since November 2nd to know what the procedure was. And at the time this petition was filed, I don't believe the current offeror had a commitment letter at that time.

We are being told that we need to have $12 million in a bank account to establish that we can close on this sale. The offer before the Court, which is $50.6 million has no risk to the buyer right now. It's a $250,000 nonrefundable-- excuse me-- refundable deposit at the end of a due diligence period, which is in the sole and absolute discretion of that offeror.

We were told there has to be the same terms and conditions. We've placed the $250,000 deposit with the SBA. We are prepared to make that 250 deposit nonrefundable today, unlike the current bid.

Your Honor, the group that is making this offer consists of developers who've been in the business for 35 years, and they've-- this is not a casual developer, Your Honor. This is a group that has spent $150 million in Rhode Island on-- they own and developed the Center of New England on 95, which is large retail box stores, BJ's, Home Depot, hundreds of apartments, condominiums, numerous restaurants.

They have built over-- they have 187,000 square feet development on Bald Hill Road. They have, across the way, another development on Bald Hill Road, Jay Kaplan's is in there, again, Barnes & Noble. In the Bald Hill Commons, Your Honor may be familiar with, there's Home Depot, Smokey Bones, there's Super Wal-Mart, there's Sam's Club.

They have built over 500 homes in West Warwick and Coventry and Cranston. They have been involved in development in Massachusetts. So we are not talking about a group that is not established, that has not proven itself in Rhode Island.

The Atlantic American, which is the financing entity that would be backing one of the groups that's joined here just purchased a 73-- for $73 million in cash and $180 million in liabilities, prime succession out of a bankruptcy in Florida.

So we are not-- essentially, what we did is, when the SBA made it clear that we weren't-- that we couldn't reach terms on a much higher price, that they were going to go through this process and we didn't have a time frame, that they were not going to take any seller financing back for any period of time, we then went out and found new partners to be able to finance and do this deal.

I can't tell you I have a commitment letter today, Your Honor, but November 2nd was the notice. We're not-- when the motion was filed, it talked about six weeks from the date of the Court order to advertise and give people some time to get things together.

So I think the SBA's evaluation here is arbitrary and capricious, and we're being discriminated against for an unreasonable amount of money. This is not someone who has

never developed property. That's the point. There have been discussions with the City. We have a design plan. It's just that we're not being treated fairly, and we're coming to play with more money, and we're making it nonrefundable.

So we feel that we're being treated unfairly and that asking this Court to review the SBA's determination here because I think that a Government agency still has to act reasonably and can't be arbitrary and capricious.

THE COURT: What are you asking me to do?

MS. FINKLE: I'm asking you to allow-- to determine that we're a qualified bidder, and let's have some bidding and see if anybody's going to bid against our $17,161,000 offer, which is on the same terms, although we're prepared to make the $250 nonrefundable.

THE COURT: I don't have the necessary evidence to make a determination whether you're qualified or not.

MS. FINKLE: I would like to submit to Your Honor--

THE COURT: What I can do is give you more time--

MS. FINKLE: Okay.

THE COURT: -- to qualify.

MS. FINKLE: Well, if the--

THE COURT: It was a short period of time.

MS. FINKLE: -- if the qualification's going to be $12 million in a bank account, then we're probably wasting

everybody's time. I think the issue is whether there is something in between and whether that decision of the SBA that it's that or nothing is just not appropriate.

THE COURT: Whatever the terms are, I'll give you more time to make a qualified bid.

MS. FINKLE: And back here in terms of what's a qualified bid because, again, right now we're being told 12 million in a bank account. That's what I'm asserting, Your Honor, is absolutely unreasonable.

THE COURT: Well, those are the terms.

MS. FINKLE: They're not the terms in the notice. The notice simply says $250,000 deposit, refundable, and evidence of ability to close. It doesn't describe what that evidence has to be. It simply says in SBA's discretion.

So what I'm suggesting, Your Honor, is that they're exercising that discretion arbitrary and capricious. The notice that was published does not say anything other than financial ability satisfactory to the SBA. That puts us in the realm of what is reasonable for the SBA to require.

THE COURT: Well, I can't make a decision on this, unless I have a full-scale hearing and hear from all your people under oath. And so, in view of the fact that maybe there's a possibility of getting more by way of the bidding process, I'll continue this matter for a period of time.

MS. FINKLE: Thank you, Your Honor.

THE COURT: How long do you want to be able to qualify?

MS. FINKLE: Can I consult with my client for one minute, Your Honor?

THE COURT: Yes.

MS. FINKLE: Thank you.

Well, Your Honor, since the original motion contemplated six weeks, we would ask for 30 days.

THE COURT: All right. I'll continue this hearing for 30 days, and we'll see what happens.

MS. FINKLE: Thank you, Your Honor.

THE COURT: Let's see. I don't have a calendar--oh, here we go.

MS. EMBREY: Your Honor? Would the Court hear from the Receiver, please? May I respond briefly?

THE COURT: Yes, go ahead.

MS. EMBREY: Thank you, Your Honor.

First of all, Your Honor, the argument that this $12 million is somehow arbitrary and capricious is incorrect. The $12 million is based on the amounts that the affiliated group that Ms. Finkle also represented had agreed to pay by March of 2008. There was 4.5 million that was going to be deposited within 30 days and then another 7.5 million that was due that the Receiver requested by March of 2008.

They were unable to come up with the 4.5 million that they had originally told us they could come up with. That's where the $12 million came from. We also, via telephone discussion between me and Ms. Finkle, the Receiver communicated that we would be willing to entertain other offers of cash equivalent deposits, and we have never received any, except the $250,000, which is unacceptable.

The only other thing that I would ask the Court is, in our motion, we usually ask for a six-week confirmation period after the order is entered. The Court gave us four, and we're just requesting an extra two, not 30 days.

We do have deadlines, especially with the City portion of the sale, and we are concerned as to why this buyer needs 30 days and why they can't get their evidence of qualification in two weeks.

THE COURT: All right.

MS. EMBREY: Thank you, Your Honor.

THE COURT: Because of Thanksgiving and-- I will continue this hearing to December 5, 2007, at 11:00 a.m.

And if there is still a dispute going on, I'll expect to take full evidence. I'll expect evidence to be presented on this matter before I confirm the sale or allow these bidders to continue. I will determine whether they're qualified.

All right. We'll take a recess.

(The proceeding was concluded at 11:30 a.m.)

C E R T I F I C A T I O N

I, Debra D. Lajoie, RPR-FCRR-CRI, do hereby certify that the foregoing pages are a true and accurate transcript of my stenographic notes in the above-entitled case.

Debra D. Lajoie
Debra D. Lajoie, RPR-FCRR-CRI

12/3/07
Date