ATTORNEYS AT LAW
SHS
SHECHTMAN
HALPERIN
SAVAGE, LLP
*A Limited Liability Partnership*

EXHIBIT
B
ALL-STATE LEGAL®

March 3, 2008

Diane Finkle, Esq.
Winograd, Shine & Zacks, P.C.
123 Dyer Street
Providence, RI 02903

Re: Rocky Point Property (the "Property")
United States Small Business Administration as Receiver for Moneta Capital Corporation (the "Receiver")

Dear Ms. Finkle:

The Receiver has reviewed your most recent correspondence dated February 27, 2008, in which Atlantic American Rocky Point Partners Group, LLC ("AARPP") has indicated its suspension of due diligence as a result of its concern over certain rights, which Atlantic American perceives as crucial to its proposed development. While the Receiver recognizes that AARPP may have concerns over its ability to negotiate certain issues with the City of Warwick (the "City"), the Rhode Island Department of Environmental Management ("DEM") and the National Oceanographic & Atmospheric Administration ("NOAA"), the lead principal spearheading Atlantic American's development efforts, Mr. Cambio, was well aware as of August, 2007 that any private developer purchasing the acreage adjacent to the City Parcel ("Parcel B") would need to come to an agreement on such issues with these bodies politic post-closing. The suggestion that these issues must all be resolved prior to closing is inconsistent with any discussions the Receiver ever had with Mr. Cambio or any other interested developer. AARPP bid on Parcel B knowing that the deadline to close was March 28, 2008, and that the City Parcel would be transferred to the City under the NOAA grant program and be encumbered by a conservation easement in favor of the DEM, thereby necessitating the negotiation of certain easements and restrictions favoring Parcel B post-closing.

Notwithstanding the fact that prior to bidding AARPP was aware of the nature of the transfer to the City and the issues that it posed for a developer, the Receiver has addressed each point in your letter below:

1. **Sewer Allocation**

The Receiver has discussed this matter with representatives of the City of Warwick and has obtained assurances that the sewer allocation would be reserved for the developer of Parcel B. The Receiver believes that such an agreement can be documented pre-closing. In addition, it should be noted that your letter assumes that the sewer allocation was necessarily impacted by the subdivision of the property without any reference to specific language in the underlying agreements requiring such allocation to run with the land. The fact that these contracts have never been recorded seems to indicate that such allocation agreements are contracts divisible from the property ownership that the Receiver would need to assign separately from the transfer of the Property.

2. **Discharge Easement Over City Parcel for Excess Storm Water Run-Off**

After consultation with the City and DEM, the Receiver does not believe your demand for "blanket storm water runoff easements" can be accommodated nor does the Receiver believe such a demand is justified. The City and DEM are amenable to granting storm water drainage easements but have indicated that AARPP will have to submit a proposal delineating the upper limits of the runoff expected in the event of a 100 year storm. The City and DEM have indicated such an easement could be provided prior to March 28, 2008, if a proposal was submitted immediately by AARPP.

3. **Utility Easements**

As your letter suggests that detailed engineering plans are required to determine the necessary utility easements, it is apparent that such easements could not be obtained prior to March 28, 2008. However, both the City and DEM have indicated a willingness to grant such easements that do not materially interfere with the use of the City Parcel as open space. Given AARPP's confidence that such installation can be done in a manner that does not alter or destroy wetland or species habitat, this is an issue an experienced developer could negotiate post-closing.

4. **Height Restrictions on City Parcel**

A review of the deed to the City and the DEM conservation easement makes clear that there will be no development on the City Parcel. As such, there is absolutely no need for height restrictions on the City Parcel. In addition, AARPP has stated an intention to care for the City Parcel to the benefit of the City thereby alleviating the potential for the growth of any vegetation that could conceivably impact site corridors in the future.

Given these circumstances, the Receiver finds no merit in the contention that "Height Restrictions" are necessary on the City Parcel.

**5 & 6. Lead Remediation & Overnight Access**

The issues of lead remediation and overnight access on the City Parcel are both matters that AARPP must negotiate directly with the City. While the Receiver is amenable to facilitating an open dialogue between the parties, it is the Receiver's belief that any accommodation can be reached in a relatively short period of time and finalized post-closing. Once again, the suggestion that these matters must be resolved prior to the March 28, 2008, closing is inconsistent with the timeline established by the bidding procedures of which AARPP had full knowledge.

To the extent AARPP continues to require final resolution of each of these issues as a precondition of closing, please note that there can be no extension of the closing beyond March 28, 2008 as per the Order entered approving the sale. Please contact me prior to 5:00 p.m. Eastern Standard Time on March 5, 2008, to indicate your client's intention relative to closing the sale of Parcel B on or before March 28, 2008.

Very truly yours,

Thomas E. Carlotto