of borrowed money in excess of $10,000.00 (individually or in the aggregate in any year), any Capital Lease or the deferred purchase price of property in excess of $10,000.00 (individually or in the aggregate in any year) and such default shall continue for more than the period of grace, if any, applicable thereto, or in the performance of or compliance with any term of any evidence of such Indebtedness or of any mortgage, indenture or other agreement relating thereto, and any such default shall continue for more than the period of grace, if any, specified therein and shall not have been waived pursuant thereto; or

(g) The Company, any Guarantor or the Trustees hereafter shall discontinue their respective business or shall make an assignment for the benefit of creditors, or shall fail generally to pay their respective debts as such debts become due, or shall admit in writing their inability to pay their respective debts as they become due, or shall apply for or consent to the appointment of or taking possession by a trustee, receiver or liquidator (or other similar official) of the Company or of the Trustees' Property or any substantial part of the property of the Company, any Guarantor or the Trustees, or shall commence a case or have an order for relief entered against it under the federal bankruptcy laws, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, or if the Company shall take any action looking to the dissolution or liquidation of the Company, or if within ninety (90) days after the date hereof the bankruptcy proceeding (Case No. 91-40354-JFQ) of the Trustees currently pending in the United States Bankruptcy Court for the District of Massachusetts shall not have been finally discharged; or

(h) The aggregate of deductibles paid by the Company in respect of final judgments in any fiscal year exceeds $25,000 or if final judgments, exceeding the Company's insurance coverage, shall be rendered against the Company and if, within sixty (60) days after entry thereof, such judgment(s) shall not have been discharged or execution thereof stayed pending appeal, or if, within 60 days after the expiration of any such stay, such judgment(s) shall not have been discharged.

then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Lender may by written notice to the Company, declare the principal of and accrued interest in respect of the Note to be forthwith due and payable, whereupon the principal of and accrued interest in

respect of the Note and the applicable prepayment premium shall become forthwith due and payable without presentment, demand, protest or other notice of any kind (an "Acceleration"), all of which are hereby expressly waived by the Company.

7.2 Remedies on Default, etc.

In case any one or more Events of Default shall occur and be continuing, the Lender may proceed to protect and enforce its rights by an action at law, suit in equity or other appropriate proceeding, whether for the specific performance of any agreement contained herein or in the Note or any Security Document, or for an injunction against a violation of any of the terms hereof or thereof, or in and of the exercise of any power granted hereby or thereby or by law. In case of a default in the advance payment of any principal of or premium, if any, or interest on any Note or the Other Loans, as required thereby and hereby, or in the payment of any other amount due hereunder, the Company will pay to the Lender such further amount as shall be sufficient to cover the cost and expense of collection, including, without limitation, attorneys' fees, expenses and disbursements. Upon any Event of Default, Lender may, but shall have no obligation to, make payment on behalf of the Company with respect to the Other Loans from the proceeds of the Account or from Lender's funds, or the Lender may use all or any portion of the proceeds of the Account to pay or satisfy the obligations of the Company pursuant to the Note or hereto. If Lender makes any payment with respect to the Other Loans from the Lender's funds, the Company shall reimburse Lender on demand for all payments so made, such payments shall bear interest at the rate specified in Section 1.2(a) or (b) hereof, whichever is higher, and shall be secured by the Security Documents. No course of dealing and no delay on the part of the Lender in exercising any right shall operate as a waiver thereof or otherwise prejudice the Lender's rights. No right conferred hereby or by the Note or any Security Document upon the Lender shall be exclusive of any other right referred to herein or therein or now or hereafter available at law, in equity, by statute or otherwise.

Section 8. Definitions.

As used herein the following terms have the following respective meanings:

Affiliate: as applied to any Person, a spouse or relative of such Person, any member, director or officer of such Person, any corporation, association, firm or other entity of which such Person is a member, director or officer, and any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such Person.

Base Rate: the per annum rate of interest announced from time to time by The First National Bank of Boston as its "base rate".

Capital Lease: any lease of property (real, personal or mixed) which, in accordance with generally accepted accounting principles, should be capitalized on the lessee's balance sheet or for which the amount of the asset and liability thereunder as if so capitalized should be disclosed in a note to such balance sheet.

Collateral: the meaning specified in Subsection 1.6.

Company: the meaning specified at the beginning of this Agreement.

Declaration of Trust: A Declaration of Trust of One Fifty Three Hamlet Avenue Realty Trust dated May 31, 1988, recorded with the City Clerk of Woonsocket, Rhode Island on October 11, 1988.

Event of Default: the meaning specified in Section 7.

Improvements: all buildings, structures, improvements and appurtenances on, of or to the Real Property.

Indebtedness: as applied to any Person, (i) all items (except items of capital or paid-in surplus or of retained earnings) which in accordance with generally accepted accounting principles would be included in determining total liabilities as shown on the liability side of the balance sheet of such Person as of the date of which Indebtedness is to be determined, including any Capital Lease, (ii) all indebtedness secured by any mortgage, pledge, lien or conditional sale or other title retention agreement to which any property or asset owned or held by such Person is subject, whether or not the indebtedness secured thereby shall have been assumed, and (iii) all indebtedness of others which such Person has directly or indirectly guaranteed, endorsed (otherwise than for collection or deposit in the ordinary course of business), discounted or sold with recourse or agreed (contingently or otherwise) to purchase or repurchase or otherwise acquire, or in respect of which such Person has agreed to supply or advance funds (whether by way of loan, stock purchase, capital contributions or otherwise) or otherwise to become directly or indirectly liable.

Lease: any lease or other periodic payment arrangement for use or occupancy of property (real, personal or mixed).

Lender: the meaning specified at the beginning of this Agreement.

Loan: the meaning specified in Subsection 1.1.

Note: the meaning specified in Subsection 1.2.

Person: a corporation, an association, a partnership, a trust, a joint venture, an organization, a business, an individual, a government or political subdivision thereof or a governmental agency.

Real Property: Rocky Point Park, Warwick, Rhode Island, as more particularly described in Exhibit A to the Mortgage.

Restricted Payment: the meaning specified in Subsection 6.3.

Security Documents: the meaning specified in Subsection 1.6.

Term: the six-year period commencing on the date hereof and terminating on the day immediately prior to the sixth anniversary of the date hereof. References to the "then current year" or words of like import shall mean a consecutive twelve-month period commencing on the date hereof or an anniversary thereof.

Subsidiaries: any present or future corporation fifty percent (50%) or more of the shares of stock of any class of which (however designated) having ordinary voting power for the election of a majority of the members of the Board of Directors or other governing body of such corporation shall at any time be owned by the Company or one or more Subsidiaries of the Company.

Trustees' Property: 153 Hamlet Street, Woonsocket, Rhode Island, as more particularly described in Exhibit A to the Trustees' Mortgage.

Section 9. Setoffs, etc.

If the Company becomes insolvent, howsoever evidenced, or any Event of Default occurs, any Indebtedness from the Lender to the Company may be offset and applied toward the payment of any Indebtedness from the Company to the Lender, whether such Indebtedness or any part thereof shall then be due and regardless of the adequacy of any other Collateral.

Section 10. Waivers.

The Lender's failure to insist upon the strict performance of any term, condition or other provision of this Agreement, the Security Documents or the Note, or to exercise any right or remedy hereunder or thereunder, shall not constitute a waiver by the Lender of any such term, condition or other provision or default or Event of Default in connection therewith; and any waiver of any such term, condition or other provision or of any such default or Event of Default shall not affect or alter this Agreement, the Security Documents or the Note, and each and every term, condition and other provision of this Agreement, the Security Documents and the Note shall, in such event, continue in full force and effect and shall be operative with respect to any other then existing or subsequent default or Event of Default in connection therewith.

Section 11. Miscellaneous.

11.1 Notices, etc.

All notices and other communications hereunder shall be in writing and shall be mailed by certified first class mail, postage prepaid, and addressed:

(a) if to the Lender:

Fairway Capital Corporation
99 Wayland Avenue
Providence, RI 02906
Attention: President

with a copy to:

Walter D. Wekstein, Esquire
Gadsby & Hannah
125 Summer Street
Boston, MA 02110

(b) If to the Company:

Rocky Point Amusements, Inc.
Rocky Point Park
Warwick, RI 02889
Attention: President

with a copy in like manner to:

Richard M. Peirce, Esquire
Roberts, Carroll, Feldstein & Peirce
One Old Stone Square
Providence, RI 02903

and

Francis J. DiMento, Esquire
DiMento & Sullivan
100 State Street
Boston, Massachusetts 02109

or to such other address or addresses as the party to whom such notice is directed may have designated by notice to the other parties hereto.

11.2 Survival of Agreements, etc.

This Agreement shall inure to the benefit of the Lender, any participants in the Loan (and Lender may give or disclose to any such participant any information it has in respect of the Company, Guarantors and the Trustees), and their respective successors and assigns, including any subsequent holder or holders of the Note, and the term "Lender" shall include any such holder or holders whenever the context permits. All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement and the making of the Term Loan hereunder.

11.3 Counterparts, etc.

This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument.

11.4 Entire Agreement, etc.

This Agreement constitutes the entire contract between the parties hereto and shall supersede and take the place of any other instrument purporting to be an agreement of the parties hereto relating to the transactions contemplated hereby. This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom any waiver, change, modification or discharge is sought to be enforced.

11.5 Governing Law; Jurisdiction.

The Agreement, the Note and the Security Documents, including the validity thereof and the rights and obligations of the parties hereunder and thereunder, shall be construed in accordance with and governed by the laws of the State of Rhode Island. The Company, to the extent that it may lawfully do so, hereby consents to service of process, and to be sued, in the

State of Rhode Island and consents to the jurisdiction of the courts of the State of Rhode Island and the United States District Court for the District of Rhode Island, as well as to the jurisdiction of all courts from which an appeal may be taken from such courts, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or under the Note or the Security Documents or with respect to the transactions contemplated hereby or thereby, and expressly waives any and all objections it may have as to venue in any such courts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as a sealed instrument as of the date first above written.

**ROCKY POINT AMUSEMENTS, INC.**

By: ______________________
James C. Callahan, President

**CAPTAIN ROCKY, INC.**

By: ______________________
James C. Callahan, President

**ROCKY POINT AMUSEMENT CORPORATION**

By: ______________________
James C. Callahan, President

**CLIFF HOUSE, INC.**

By: ______________________
James C. Callahan, President

**KIDDY-PARK, INC.**

By: ______________________
James C. Callahan, President

James C. Callahan, Guarantor

Henry J. Vara, Jr. Guarantor

Francis J. DiMento, Guarantor

FAIRWAY CAPITAL CORPORATION

By: ______________________
Arnold Kilberg, ~~President~~ Investment Advisor

WPPKBPCT/1534

SCHEDULE 1.1

September 27, 1991

Gadsby & Hannah
125 Summer Street
Boston, MA 02110

Attn: Walter D. Wekstein, Esq.

Re: Fairway Capital Corporation -
Captain Rocky, Inc., et al
$5,000,000 Loan

Dear Walter:

In connection with the above-described loan and certain loans made by Charles Polcari to Henry D. Vara, Jr., there is being wired to the account of Gadsby & Hannah the following sums from the following sources:

| | |
|---|---|
| From Fairway Capital for the account of Captain Rocky, Inc., et al | $ 81,628.44 |
| From DiMento & Sullivan, Esqs. at the request of Charles Polcari for the account of Henry D. Vara, Jr., for further credit to the account of Captain Rocky, Inc., et al | 102,430.99 |
| From Scimone, Stanton & Connell at the request of Charles Polcari for the account of Henry D. Vara, Jr., for further credit to the account of Captain Rocky, Inc., et al | 140,000.00 |
| Total | $ 324,059.43 |

Please disburse the proceeds of those wire transfers for application or payment as follows:

| | |
|---|---|
| To: Recoll Management, as attorney-in-fact for the FDIC | $ 149,205.38 |
| Gadsby & Hannah for legal services rendered and disbursements made in connection with your representation of Fairway Capital Corporation in the above-described loan transaction* | 75,000.00 |
| Total | $ 224,205.38 |

After those disbursements, you will be holding the sum of $99,854.05 for Captain Rocky, Inc., et al. Vincent J. DiMento, Esquire will be wiring to your account the sum of $15,000 for credit to the account of Captain Rocky, Inc., et al. Upon receipt of that wire transfer, you will be holding the sum of $114,854.05 for the account of Captain Rocky, Inc.

Upon said receipt, please (i) make six (6) checks payable and deliver them to the Internal Revenue Service on behalf of the various pension and profit sharing plans of the Vara, DiMento and Callahan Management Corps., (ii) wire $31,734.25 to Roberts, Carroll et al for the balance due that firm for legal fees and disbursements in connection with their representation of the undersigned, and (iii) wire the balance, namely $82,369.80 to Richard Peirce of Roberts, Carroll to be paid to the Town of Warwick on account of real estate and personal property tax bills attributable to Captain Rocky, Inc., et al.

There had been previously wired to Roberts, Carroll, et al by DiMento & Sullivan the sum of $500,000, of which $491,734.25 was expended for the payment of certain obligations of Captain Rocky, Inc., et al and the balance of which, namely, $8,265.75 was applied to their bill for services and disbursements of $40,000. The $491,734.25 was applied as follows:

| | |
|---|---|
| Real Estate and Personal Property Taxes | $ 44,303.07 |
| Title Insurance premiums | 4,372.75 |
| Rhode Island Dept. of Employment Security | 33,791.84 |
| Recording Costs | 400.00 |
| Ryan mortgage payments | 200.00 |
| Water bill | 49,891.59 |
| Free Fall Pay-off | 325,000.00 |
| Varone Mortgage payment | 33,775.00 |
| Total | $ 491,734.25 |

Thank you for your cooperation in this matter.

Sincerely yours,

ROCKY POINT AMUSEMENTS, INC.

By: [signature] James C. Callahan - Pres
James C. Callahan, President

CAPTAIN ROCKY, INC.

By: [signature] James C. Callahan - Pres.
James C. Callahan, President

CLIFF HOUSE, INC.

By: [signature]
James C. Callahan, President

ROCKY POINT AMUSEMENT CORPORATION

By: [signature]
James C. Callahan, President

KIDDIE PARK, INC.

By: [signature]
James C. Callahan, President

cc: Fairway Capital Corporation
Attn: Arnold Kilberg

* We understand that the $75,000 paid to Gadsby & Hannah was an estimate of fees for services and disbursements and that appropriate adjustments will be made when all time charges and disbursements are posted on your books and records.

WDW:nr/240:3

September 27, 1991

Fairway Capital Corporation
99 Wayland Avenue
Providence, RI 02906

Attn: Arnold Kilberg

Re: Fairway Capital Corporation -
Rocky Point Amusements, Inc. et al

Dear Mr. Kilberg:

Contemporaneously with the delivery of this letter, Fairway Capital Corporation is making a loan in the sum of $5,000,000 to Rocky Point Amusements, Inc., Captain Rocky, Inc., Rocky Point Amusement Corporation, Cliff House, Inc. and Kiddie Park, Inc. Please accept this letter as the authorization of each of the undersigned to disburse the proceeds of that loan as follows:

| | |
|---|---|
| To: Recoll Management, as attorney in fact for FDIC | $ 4,164,795.00 |
| Gadsby & Hannah | 81,628.44 |
| To be retained by Fairway for application or payment as follows: | |
| (a) Holmes Financial Services Inc. - Brokerage Services | 150,000.00 |
| (b) Fairway Capital Corporation - Balance of Commitment Fee | 50,000.00 |
| (c) Fairway Capital Corporation - Interest Reserve | 538,194.44 |
| (d) SBA - loan payments to become due | 10,791.00 |
| (e) Ferla - loan payments to become due | 4,591.12 |
| Total | $ 5,000,000.00 |

Thank you for your cooperation in this matter.

Sincerely yours,

ROCKY POINT AMUSEMENTS, INC.

By: James C. Callahan - Pres.
James C. Callahan, President

CAPTAIN ROCKY, INC.

By: ______________________
James C. Callahan, President

CLIFF HOUSE, INC.

By: ______________________
James C. Callahan, President

ROCKY POINT AMUSEMENT CORPORATION

By: ______________________
James C. Callahan, President

KIDDIE PARK, INC.

By: ______________________
James C. Callahan, President

RDW:nr/240

SCHEDULE 1.2A

OTHER LOANS

| Name of Payee | Address | Outstanding Amount |
|---|---|---|
| Alfred F. Varone | 201 North Riverside Drive<br>Pompano Beach, FL 33062 | $205,000.00 |
| Conrad and Inita Ferla | 254 Narragansett Avenue<br>Warwick, Rhode Island | $ 22,144.50 |
| Ryan | 359 Broad Street<br>Providence, RI 02907 | $ 20,000.00 |
| Small Business Administration | Denver, Colorado 80259-0001 | $146,024.28 |

All principal and interest on the Ryan Loan has been paid through August 15, 1992, whereupon the remaining principal balance of $20,000.00 is due and payable.

All principal and interest on the Varone Loan has been paid through July 15, 1992. On July 15 of each of 1992, 1993 and 1994, principal payments of $65,000.00, $70,000.00 and $70,000.00, respectively, are due and payable, and interest at 12% per annum is required to be paid in advance therewith on such dates with respect to the remaining principal balance of the Varone Loan.

Attached hereto is a schedule of payments of principal, interest and other charges due with respect to the Ferla Loan and SBA Loan.

10:28 ROCKY POINT PARK P.03

817 FERLA

# Direct Reduction Loan

Starting Nov 9-85

FINANCIAL PUBLISHING COMPANY
82 Brookline Avenue
Boston, Massachusetts 02215
(617) 262-4040

| RATE | PAYMENT $ | LOAN $ | TERM: YEARS | MONTHS | PERIODS |
|---|---|---|---|---|---|
| 12.000 | 573.89 | 40,000.00 | 10 | | 120 |

| INTEREST PAYMENT | PRINCIPAL PAYMENT | BALANCE OF LOAN | PAY'T NO. | DUE DATE | INTEREST PAYMENT | PRINCIPAL PAYMENT | BALANCE OF LOAN |
|---|---|---|---|---|---|---|---|
| 400.00 | 173.89 | 39,826.11 | 61 | 11/9 | 257.99 | 315.90 | 25,482.61 |
| 398.26 | 175.63 | 39,650.48 | ~~62~~ | ~~12/90~~ | 254.83 | 319.06 | 25,163.55 |
| 396.50 | 177.39 | 39,473.09 | 63 | 1-91 | 251.64 | 322.25 | 24,841.30 |
| 394.73 | 179.16 | 39,293.93 | 64 | 2-91 | 248.41 | 325.48 | 24,515.82 |
| [illegible] | 180.95 | 39,112.98 | 65 | 3-91 | 245.16 | 328.73 | 24,187.09 |
| 391.13 | 182.76 | 38,930.22 | 66 | 4-91 | 241.87 | 332.02 | 23,855.07 |
| 389.30 | 184.59 | 38,745.63 | 67 | 5-91 | 238.55 | 335.34 | 23,519.73 |
| 387.46 | 186.43 | 38,559.20 | 68 | 6-91 | 235.20 | 338.69 | 23,181.04 |
| 385.59 | 188.30 | 38,370.90 | 69 | 7-91 | 231.81 | 342.08 | 22,838.96 |
| 383.71 | 190.18 | 38,180.72 | 70 | 8-91 | 228.39 | 345.50 | 22,493.46 |
| 381.81 | 192.08 | 37,988.64 | 71 | 9-91 | 224.93 | 348.96 | 22,144.50 |
| 379.89 | 194.00 | 37,794.64 | 72 | 10-91 | 221.45 | 352.44 | 21,792.06 |
| 377.95 | 195.94 | 37,598.70 | 73 | 11-91 | 217.92 | 355.97 | 21,436.09 |
| 375.99 | 197.90 | 37,400.80 | 74 | 12-91 | 214.36 | 359.53 | 21,076.56 |
| 374.01 | 199.88 | 37,200.92 | 75 | | 210.77 | 363.12 | 20,713.44 |
| 372.01 | 201.88 | 36,999.04 | 76 | | 207.13 | 366.76 | 20,346.68 |
| 369.99 | 203.90 | 36,795.14 | 77 | | 203.47 | 370.42 | 19,976.26 |
| 367.95 | 205.94 | 36,589.20 | 78 | | 199.76 | 374.13 | 19,602.13 |
| 365.89 | 208.00 | 36,381.20 | 79 | | 196.02 | 377.87 | 19,224.26 |
| 363.81 | 210.08 | 36,171.12 | 80 | | 192.24 | 381.65 | 18,842.61 |
| 361.71 | 212.18 | 35,958.94 | 81 | | 188.43 | 385.46 | 18,457.15 |
| 359.59 | 214.30 | 35,744.64 | 82 | | 184.57 | 389.32 | 18,067.83 |
| 357.45 | 216.44 | 35,528.20 | 83 | | 180.68 | 393.21 | 17,674.62 |
| 355.28 | 218.61 | 35,309.59 | 84 | | 176.75 | 397.14 | 17,277.48 |
| 353.10 | 220.79 | 35,088.80 | 85 | | 172.77 | 401.12 | 16,876.36 |
| 350.89 | 223.00 | 34,865.80 | 86 | | 168.76 | 405.13 | 16,471.23 |
| 348.66 | 225.23 | 34,640.57 | 87 | | 164.71 | 409.18 | 16,062.05 |
| 346.41 | 227.48 | 34,413.09 | 88 | | 160.62 | 413.27 | 15,648.78 |
| 344.13 | 229.76 | 34,183.33 | 89 | | 156.49 | 417.40 | 15,231.38 |
| 341.83 | 232.06 | 33,951.27 | 90 | | 152.31 | 421.58 | 14,809.80 |
| 339.51 | 234.38 | 33,716.89 | 91 | | 148.10 | 425.79 | 14,384.01 |
| 337.17 | 236.72 | 33,480.17 | 92 | | 143.84 | 430.05 | 13,953.96 |
| 334.80 | 239.09 | 33,241.08 | 93 | | 139.54 | 434.35 | 13,519.61 |
| 332.41 | 241.48 | 32,999.60 | 94 | | 135.20 | 438.69 | 13,080.92 |
| 330.00 | 243.89 | 32,755.71 | 95 | | 130.81 | 443.08 | 12,637.84 |
| 327.56 | 246.33 | 32,509.38 | 96 | | 126.38 | 447.51 | 12,190.33 |
| 325.09 | 248.80 | 32,260.58 | 97 | | 121.90 | 451.99 | 11,738.34 |
| 322.61 | 251.28 | 32,009.30 | 98 | | 117.38 | 456.51 | 11,281.83 |
| 320.09 | 253.80 | 31,755.50 | 99 | | 112.82 | 461.07 | 10,820.76 |
| 317.56 | 256.33 | 31,499.17 | 100 | | 108.21 | 465.68 | 10,355.08 |
| 314.99 | 258.90 | 31,240.27 | 101 | | 103.55 | 470.34 | 9,884.74 |
| 312.40 | 261.49 | 30,978.78 | 102 | | 98.85 | 475.04 | 9,409.70 |
| 309.79 | 264.10 | 30,714.68 | 103 | | 94.10 | 479.79 | 8,929.91 |
| 307.15 | 266.74 | 30,447.94 | 104 | | 89.30 | 484.59 | 8,445.32 |
| 304.48 | 269.41 | 30,178.53 | 105 | | 84.45 | 489.44 | 7,955.88 |
| 301.79 | 272.10 | 29,906.43 | 106 | | 79.56 | 494.33 | 7,461.55 |
| 299.06 | 274.83 | 29,631.60 | 107 | | 74.62 | 499.27 | 6,962.28 |
| 296.32 | 277.57 | 29,354.03 | 108 | | 69.62 | 504.27 | 6,458.01 |
| 293.54 | 280.35 | 29,073.68 | 109 | | 64.58 | 509.31 | 5,948.70 |
| 290.74 | 283.15 | 28,790.53 | 110 | | 59.49 | 514.40 | 5,434.30 |
| 287.91 | 285.98 | 28,504.55 | 111 | | 54.34 | 519.55 | 4,914.75 |
| 285.05 | 288.84 | 28,215.71 | 112 | | 49.15 | 524.74 | 4,390.01 |
| 282.16 | 291.73 | 27,923.98 | 113 | | 43.90 | 529.99 | 3,860.02 |
| 279.24 | 294.65 | 27,629.33 | 114 | | 38.60 | 535.29 | 3,324.73 |
| 276.29 | 297.60 | 27,331.73 | 115 | | 33.25 | 540.64 | 2,784.09 |
| 273.32 | 300.57 | 27,031.16 | 116 | | 27.84 | 546.05 | 2,238.04 |
| 270.31 | 303.58 | 26,727.58 | 117 | | 22.38 | 551.51 | 1,686.53 |
| 267.28 | 306.61 | 26,420.97 | 118 | | 16.87 | 557.02 | 1,129.51 |
| 264.21 | 309.68 | 26,111.29 | 119 | | 11.30 | 562.59 | 566.92 |
| 261.11 | 312.78 | 25,798.51 | 120 | | 5.67 | 566.92 | .00 |

Handwritten margin notes: 1986, 1987, 1988, 1989, 1990; circled 2105; circled 1620.

FINAL PAYMENT: 572.59

End Nov 9 - 1995

TOTAL INTEREST: 28865.50 TOTAL PRINCIPAL: 40000.00

D09 SMALL BUSINESS ADMINISTRATION DATE: 09/24/9
LOAN STATUS INFORMATION
AS OF: 09/24/91 SBA-STATUS: REG SERVICNG

NAME: CAPT ROCKY INC
RESS: WARWICK NECK
CITY: WARWICK
TATE: RI ZIP CODE: 02889

RTICIPATION BREAKDOWN | INTEREST RATE

| | | |
|---|---|---|
| SBA (%) | 1.00000 | .03000 |
| BANK (%) | 0.00000 | .00000 |

NAME:
DDRESS:
CITY:
STATE: ZIP CODE: 00000
E OF LAST DISB 11/01/78
/ GROUP CODE 0

1175-STATUS:
LOAN NO: 99689410-10 OFF NO: 0165
DATE APPROVED: 04/17/78
TOTAL DISBURSEMENT: 250000.00
UNDISBURSED: 0.00
INSTALLMENT AMOUNT: 1199.00
INSTALLMENT FREQUENCY: M
MATURITY DATE: 06/20/03
MATURITY MONTH: 300
MONTHS DEFERRED: 0
DATE OF LAST P & I: 07/22/91
AMOUNT OF LAST P & I: 1199.
AMOUNT PAID TOWARD NEXT
INSTALLMENT: 0.
NEXT INSTALLMENT DUE DATE: 08/20/91
ACTIVE-PMD NO

NCIPAL BALANCE: 146024.28
RUED INTEREST: (THRU 092491) +768.13
LECTION AGY FEE: 0.00

TOTAL DUE SBA: 146792.41
DAILY INTEREST AMT 12.00

SCHEDULE 3.2

SUBSIDIARIES

None

EXHIBIT 3.3

FOREIGN JURISDICTIONS

None

EXHIBIT 3.6

LEASES

A. Warwick, Rhode Island

Copies of all Leases have been delivered by the Company to the Lender under separate cover.

B. Woonsocket, Rhode Island

Copies of all Leases have been delivered by the Company to the Lender under separate cover.

SCHEDULE 3.7

LITIGATION

| | | |
|---|---|---|
| Northfield Inc. v. Captain Rocky<br>Judgment for $9,498.17 | 3rd Div. | C.A. 91-220 |
| A.D.R. Refrigeration v. RPAI<br>Claim for $699.25 pending | 5th Div. | 90-873 |
| New England Egg v. Rocky Point<br>Amusements, Inc.<br>claim pending $10,000.00 | C.A. 91-1732 | 6th Div. Dist. Ct. |
| Dun and Bradstreet v. RPAI<br>claim pending $405.00 | 3rd Div. Dist. Ct. | |
| Betras Plastics v. RPAI<br>claim pending $2470.00 | CA 91-1731 | 3rd Div. Dist. Ct. |
| Consign/AG v. RPAI<br>claim pending $16,057.22 | Kent Ct. Superior Court | |
| THE Insurance Company v. RPAI<br>Default Judgment - Fla. $5,939.53 | | |

SCHEDULE 3.10

SHAREHOLDER LIST

| | Shareholder(s) | Shares | Encumbrances |
|---|---|---|---|
| Each Company | James C. Callahan | 40 | None |
| | Rita DiMento | 20 | None |
| | Nancy Sullivan | 20 | None |
| | Henry D. Vara, Jr. | 15 | None |
| | Virginia Vara | 40 | None |
| | Carmine Vara | 25 | Subject to an option to purchase in favor of Henry D. Vara, Jr. |

EXHIBIT 3.12

PLACES OF BUSINESS AND LOCATIONS OF COLLATERAL

Other Places of Business

Company - None
Trustees - 153 Hamlet Avenue, Woonsocket, Rhode Island

Locations of Collateral

Company - Rocky Point Park, Warwick, Rhode Island
Trustees - 153 Hamlet Avenue, Woonsocket, Rhode Island

SCHEDULE 3.14

INDEBTEDNESS

The Company - None

The Trustees - See attached Schedule A - Statement of All Liabilities of Debtor

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF Massachusetts

In re ONE FIFTY THREE HAMLET AVENUE REALTY TRUST, a partnership, a/k/a ONE FIFTY THREE HAMLET AVENUE LIMITED PARTNERSHIP, a partnership
Debtor*

Case No. 91-40354-JFQ

Debtor's Employer's Tax Id. No. 04-66006831

Soc. Sec. No.

Schedule A — STATEMENT OF ALL LIABILITIES OF DEBTOR

*This form is used by joint debtors wherever the question requires separate answers for Husband (H), Wife (W) or Joint (J) insert the appropriate symbol in column headed H, W or J. If the word "debtor" or words referring to debtor are used they shall be read as if in the plural.)*

Schedules A-1, A-2, and A-3 must include all the claims against the debtor or debtor's property as of the date of the filing of the petition by or against debtor.

Schedule A-1 — Creditors Having Priority

| (1) Nature of Claim | (2) Name of creditor and complete mailing address including zip code | (3) Specify when claim was incurred and the consideration therefor; when claim is subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor, so indicate; specify name of any partner or joint contractor on any debt | (4) Indicate if claim is contingent (C) unliquidated (U) or disputed (D) | (5) H W or J | (6) Amount of Claim ($) |
|---|---|---|---|---|---|
| Wages, salary, commissions, ... | NONE | | | | |
| Contributions to employee benefit plans ... | NONE | | | | |
| Claims of farmers ... | NONE | | | | |
| Claims of United States fishermen ... | NONE | | | | |
| Deposits by individuals ... | NONE | | | | |
| Taxes owing ... | City of Woonsocket<br>P.O. Box3320<br>Woonsocket, R.I. 02895 | real estate taxes | | | 90,000 |

Schedule A-2 — Creditors Holding Security

| (1) ...of creditor and complete mailing address including zip code | (2) Description of security and date when obtained by creditor (3) Specify when claim was incurred and the consideration therefor; when claim is subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor, so indicate; specify name of any partner or joint contractor on any debt | (4) Indicate if claim is contingent (C), unliquidated (U), or disputed (D) | (5) H W or J | (6) Market value (2) | (7) Amount of claim without deduction of value of security (4) |
|---|---|---|---|---|---|
| ...k of New England, N.A. ...Victor G. Milione, Esq. ...body & Brown ...Federal Street ...ton, Ma. 02110 | 1st mortgage on Debtor's real estate located at 153 Hamlet Ave., Woonsocket, R.I. recorded in Woonsocket Land Evidence Records Book 715, Page 327 | | | 2,200,000. | 2,369,000. |
| ...ge Botvin ...ACS Industries ...Hamlet Ave. ...socket, R.I. 02895 | 2nd mortgage on above described real estate recorded 10/11/88 | | | | 287,500. |
| ...he above claims is contingent, unliquidated or disputed unless otherwise stated. | | Total | | | 2,656,500. |

Schedule A-3 — Creditors Having Unsecured Claims Without Priority

| (1) ...editor (including last known holder of any negotiable instrument) and complete mailing address including zip code | (2) Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor, so indicate; specify name of any partner or joint contractor on any debt | (3) Indicate if claim is contingent (C), unliquidated (U), or disputed (D) | (4) H W or J | (5) Amount of claim (5) |
|---|---|---|---|---|
| ...liveau Electrical Supply, Inc. ...Clinton Street ...nsocket, R.I. | | | | 2,000. |
| ...ento & Sullivan ...State Street ...ton, Ma. 02109 | legal fees | | | 15,000. |
| ...tern Utilities | | | | |
| ...ckstone Valley Electric Co. ...coln, R.I.. 02895 | utility service | | | 8,000. |
| ...Trust ...James C. Callahan ...Chapman Street ...ton, Ma. 02021 | loan | | | 100,000. |

Schedule A-3 — Creditors Having Unsecured Claims Without Priority

| (1) Name of creditor (including last known holder of any negotiable instrument) and complete mailing address including zip code | (2) Specify when claim was incurred and the consideration therefor; when claim is contingent, unliquidated, disputed, subject to setoff, evidenced by a judgment, negotiable instrument, or other writing, or incurred as partner or joint contractor, so indicate; specify name of any partner or joint contractor on any debt | (3) Indicate if claim is contingent [C], unliquidated [U], or disputed [D] | (4) | (5) Amount of claim |
|---|---|---|---|---|
| 11 Realty Trust<br>/o Woonsocket Industrial Cpmplex<br>2 Mechanic Ave.<br>oonsocket, R.I. 02895 | | | | 8,500. |
| enmore management<br>10 Cpmmonwealth Ave.<br>oston, Ma. 02215 | | | | 9,000. |
| rovidence Journal<br>.O. box 404<br>rovidence, R.I. 02901 | | | | 950. |
| ocky Point Amusement, Inc.<br>arwick Neck<br>arwick, R.I. 02889 | | | | 710.000. |
| niversity Bank<br>5 Needham Street<br>ewton, Ma. 02161 | | | | 450,000. |
| enry D. Vara, Jr.<br>50 Chestnut Street<br>est Newton, Ma. 02165 | | | | 170,000. |
| | | Total | | 1,643,450. |

[illegible] of the above claims ... unliquidated or disputed unless otherwise stated

SCHEDULE 3.16

LEGAL COMPLIANCE DISCLOSURE

None

EXHIBIT 6.2(b)

EXISTING MORTGAGES AND SECURITY INTERESTS

Warwick

1. Mortgage dated April 12, 1984 to Alfred F. VArone recorded in Book 568, Page 226.

2. Mortgage dated October 9, 1985 to Conrad and Anita Ferla recorded October 9, 1985 at 4:06 p.m.

3. Mortgage dated November 26, 1985 to Q.L.C.R.I., as assigned, recorded November 26, 1985 at 2:16 p.m.

4. Mortgage dated July 13, 1978 to the Small Business Administration recorded in File 1, Drawer 3, Doc. Nos. 13276 and 13277.

5. Mortgage and Security Agreement dated as of the date hereof to Henry D. Vara, Jr. recorded hereafter.

Woonsocket

1. Mortgage dated October 7, 1988 to George Botvin recorded in Book _____, Page _____.

WPPKBPCT/1534