# EXHIBIT M

# (Part 2)

Thirty Thousand and 00/100 Dollars ($30,000.00), as well as the Operational Costs which Buyer has incurred with respect to the Premises as Buyer's liquidated damages in lieu of other rights and remedies available to Seller at law and in equity, and upon such payment, Buyer's rights to the Commitment, Survey and Environmental Site Assessments shall be assigned to Seller without the need for further documentation or (b) pursue the remedy of specific performance as Buyer's sole and exclusive remedy at law or in equity for such default. Notwithstanding the foregoing, in the case of a non-monetary default that is not capable of being cured within said thirty (30) day period, the Seller shall have an additional period of up to one hundred twenty (120) days (the "Additional Time") to cure such default provided that Seller commences such cure within said thirty (30) day period and diligently prosecutes such cure to completion. In the event the Seller reasonably believes that such cure will require time in excess of the Additional Time to complete such cure, the Seller may request further time to cure the default, which additional time may or may not be granted in the Buyer's sole and absolute discretion.

13. Notices. All notices required or permitted to be given hereunder shall be mailed postage prepaid, by registered or certified mail, addressed to the addresses set forth below:

If to Seller:

United States Small Business Administration
Receiver of Moneta Capital Corporation
666 Eleventh Street, N.W., Suite 200
Washington, D.C. 20001
Attn: Stephen Jones

With a copy to:

Shechtman Halperin Savage, LLP
86 Weybosset Street
Providence, RI 02903
Attn: Stephen J. Shechtman, Esquire

If to Buyer:

Vanderbilt Capital, LLC
136 West Richardson Avenue

Summerville, SC 29483
Attn: Arnold S. Goodstein, Esquire

With a copy to:

Meyer Capel, A Professional Corporation
306 West Church Street
Champaign, IL 61820
Attn: David B. Sholem, Esquire

With further copy to:

Kenneth J. Gary, Esquire
Senior Vice-President and General Counsel
Toll Brothers
3103 Philmont Avenue
Huntingdon Valley, PA 19006

And with additional copy to:

Caprio Law Offices
Caprio Building
One Center Place
Providence, RI 02903
Attn: Frank T. Caprio, Esquire

14. Development Restrictions. The Buyer acknowledges and agrees that the Buyer's proposed use of the Premises shall be subject to the following limitations and restrictions (in addition to any conditions, restrictions and/or limitations imposed in any of the Approvals):

(a) The development of the Premises shall not consist of a gated community (as such term is used, defined, and permitted by the City of Warwick, Rhode Island or as otherwise agreed by the parties hereto);

(b) The land shown on Exhibit B, attached hereto and incorporated herein by reference shall be made available for use by the public;

(c) Public access to the shoreline of the Premises shall be allowed;

(d) Any development of the Premises shall utilize Rocky Point Avenue as the route of primary ingress and egress to such development; and

(e) No home-based business and/or other commercial business shall be permitted in any residential development on the

Premises.

Items (a) through (e) are sometimes collectively referred to herein as the "Restrictions". At the option of the Seller, any or all of the Restrictions shall be contained in the Receiver's Deed referenced in Section 2 hereof, and shall be deemed covenants running with the land. Notwithstanding the foregoing, in the event Buyer obtains the written agreement of the City of Warwick to alter, modify and/or eliminate any or all of the Restrictions on or before the Closing Date, Seller shall agree to modify the Restrictions in accordance with the agreement between the City of Warwick and the Buyer.

15. No Recording. This Agreement may not be recorded in the Records of Land Evidence of the city, town or county wherein the Premises are located. In the event the Buyer records or causes the Agreement to be recorded in violation of the foregoing prohibition, the Buyer, at the Seller's election at any time thereafter, shall conclusively be deemed in default hereunder entitling the Seller to all the remedies provided herein for the Buyer's default including, without limitation, the right to retain the Deposit and all interest which has accrued thereon, if any. In addition, in the event this Agreement is recorded in violation of the foregoing prohibition against recording, the Seller is hereby authorized and empowered as the true and lawful attorney-in-fact for the Buyer to record in said Land Evidence Records an affidavit of the Seller stating that the Seller has elected to hold the Buyer in default hereunder and all third parties may conclusively rely upon the recording by the Seller of such an affidavit as establishing that the Buyer has released to the Seller and no longer has any right, title or interest in and to this Agreement or the Premises and this Agreement will be deemed terminated and discharged of record with the same force and effect as if it had never been recorded. The foregoing power of attorney shall be deemed irrevocable and coupled with an interest. The Buyer further agrees to execute, acknowledge and deliver, in recordable form, any further documents, assurances or instruments as the Seller may request (following Buyer's default and the termination of Buyer's rights hereunder) in order to further confirm that the Buyer no longer has any right, title or interest in and to this Agreement or the Premises and in the event that the Buyer refuses or fails to forthwith execute same, the Seller is hereby appointed the true and lawful attorney-in-fact as aforesaid of the Buyer to execute same, which power of attorney shall be deemed irrevocable and coupled with an interest. Notwithstanding the foregoing, upon the request of the Buyer, the Seller shall execute and deliver to the

Buyer a Memorandum of Agreement in recordable form satisfactory to Seller, which Memorandum of Agreement may be recorded in the Land Evidence Records for the City of Warwick and County of Kent, Rhode Island. Any such Memorandum of Agreement shall include, inter alia, a provision appointing Seller as Buyer's true and lawful attorney-in-fact for the purpose of executing a Memorandum of Termination of Agreement in the event this Agreement expires or is terminated. The foregoing power of attorney shall be deemed irrevocable and coupled with an interest.

16. Court Approval. This Agreement is contingent upon the approval of its terms by the federal court referenced in Section 5 hereof in connection with the Receivership of Moneta Capital Corporation ("Receivership"). Seller agrees to provide Buyer as soon as practical with photocopies of all motions, petitions, and other pleadings (including all attachments and exhibits attached thereto) filed by Seller in connection with this Agreement and the transactions contemplated hereby and orders entered in connection with this Agreement whereby such court approval is sought and obtained by Seller. Any such pleadings filed by Seller shall be provided to Buyer not later than the date of their filing by Seller with said court.

17. Seller's Closing Deliveries. The Seller hereby agrees to deliver to Buyer the following documents at or before the Closing:

(a) A certified copy of the Court Order;

(b) The Receiver's Deed referred to in Section 2 hereof;

(c) All documents reasonably required to comply with the provisions of the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA"); and

(d) Such other documentation as is reasonably and customarily required by Buyer and Buyer's title insurance company in the case of a sale of real estate by a Receiver.

Items (a) - (d) are sometimes collectively referred to herein as the "Closing Deliveries".

At Buyer's option, the Closing shall be extended on a day-to-day basis for each day the Seller is unable to provide its Closing Deliveries to Buyer under this Section 17; provided, however, at Seller's option, the Closing Date shall be extended on a day-to-day basis for a period not to

exceed sixty (60) days provided that the Seller is diligently working to obtain the Closing Deliveries.

18. Buyer's Access, Indemnity; Prohibition Against Liens. Buyer and its agents, contractors, and invitees shall be afforded access to the Premises at all times during the pendency of this Agreement. Buyer may perform or cause to be performed, at Buyer's sole cost and expense except as otherwise expressly set forth herein, tests, inspections, environmental audits and surveys of the Premises at all reasonable times prior to the Closing, including, without limitation, a Phase I Environmental Site Assessment and a Phase II Environmental Site Assessment (collectively, the "Environmental Site Assessments"). The Buyer shall promptly repair any damage to the Premises caused by the Buyer's activities in connection with this Agreement, and the Buyer agrees to indemnify, defend and hold the Seller harmless from and against any and all claims, demands, actions, causes of action or other liabilities arising out of or in connection with the Buyer's activities under this Agreement. Buyer shall prevent the placement or attachment of any mechanic's, materialman's, laborer's or other lien on the Premises arising out of or resulting from this Agreement and shall indemnify and hold harmless the Seller from and against any damages, losses, costs or liabilities connected therewith, and shall immediately discharge or bond any such lien that may be so placed or attached against the Premises. Buyer hereby agrees to indemnify and save harmless the Seller from and against all claims of whatever nature arising from any act, omission, or negligence of the Buyer or the Buyer's contractors, licensees, agents, servants or employees or arising from any accident, damage or injury whatsoever caused to any person or to the property of any person, or from any violation of any applicable law in or about the premises, or arising from any accident, where such accident, damage, injury or violation results or is claimed to have resulted from an act or omission on the part of Buyer or Buyer's contractors, licensees, agents, servants or employees. The foregoing indemnification shall include indemnity against all costs, expenses and liabilities incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof, including, without limitation, attorneys' fees. The provisions of this Section 18 shall survive the Closing and any termination of this Agreement.

19. FIRPTA. The Seller represents to the Buyer that FIRPTA withholding is not required.

20. Risk of Loss; Insurance Requirements. From and after the Final Court Order Date until the earlier of either

the Closing or the termination of this Agreement, the risk of loss shall be borne by the Buyer. In the event of any damage and/or condemnation of the Premises, the Buyer shall remain obligated to purchase the Premises pursuant to the terms of this Agreement without reduction in the Purchase Price.

On or before the Final Court Order Date, the Buyer shall obtain liability insurance covering the Premises in an amount of at least One Million and 00/100 Dollars ($1,000,000.00) per occurrence. Said insurance shall name Seller as additional insured and shall be issued by an insurance company licensed to do business in the State of Rhode Island reasonably acceptable to the Seller. Said insurance policy shall further provide that no amendment, modification or cancellation of insurance shall occur except upon thirty (30) days notice to Seller. In the event that the Buyer fails to provide the Seller with evidence of such insurance, in form and substance satisfactory to Seller on or before the Final Court Order Date, the Seller may terminate this Agreement upon written notice to the Buyer, whereupon this Agreement shall be deemed null and void and of no further force or effect, except for provisions that are expressly deemed to survive the expiration or termination of this Agreement.

21. Escrow Agent. The Escrow Agent, by executing this Agreement, acknowledges receipt of the Deposit paid by the Buyer to be held under the terms hereof. The Escrow Agent agrees to hold, keep and deliver the Deposit and all other sums delivered to it pursuant hereto in accordance with the terms and provisions of this Agreement. The Escrow Agent shall not be entitled to any fees or compensation for its services hereunder except in the event of costs and fees incurred in any litigation or controversy relating to the Deposit, in which case Buyer and Seller shall each be obligated to pay one-half of such costs and fees. The Escrow Agent shall be liable only to hold said sums and deliver the same to the parties named herein in accordance with the provisions of this Agreement, it being expressly understood that by acceptance of this Agreement the Escrow Agent is acting in the capacity of a depository only and shall not be liable or responsible to anyone for any damages, losses or expenses unless same shall have been caused by the gross negligence or willful malfeasance of the Escrow Agent. In the event of any disagreement among the parties to this Agreement, or among them or any of them and any other party resulting in any adverse claims and demands being made in connection with or for the monies involved herein or affected hereby, the Escrow Agent shall be entitled to refuse to comply with any such claims or demands

so long as such disagreement may continue; and in so refusing the Escrow Agent shall make no delivery or other disposition of any of the monies then held by it under the terms of this Agreement and in so doing the Escrow Agent shall not become liable to anyone for such refusal; the Escrow Agent shall be entitled to continue to refrain from acting until (a) the rights of the adverse claimants shall have been finally settled by binding arbitration or finally adjudicated in a court assuming and having jurisdiction of the monies involved herein or affected hereby, or (b) all differences shall have been adjusted by agreement between or among the parties and the Escrow Agent shall have been notified in writing of such agreement signed by the parties hereto. Further, the Escrow Agent shall have the right at all times to pay all sums held by it (i) to the appropriate party under the terms hereof, or (ii) into any court of competent jurisdiction after a dispute between or among the parties hereto has arisen, whereupon Escrow Agent's obligations hereunder shall terminate.

22. AS-IS. The Buyer acknowledges and agrees that the Premises are being sold in their "AS IS" and "WHERE IS" condition and "WITH ALL FAULTS". Notwithstanding anything contained in this Agreement to the contrary or which might be construed to the contrary, the Buyer acknowledges and agrees that the Buyer has not been influenced to enter into this transaction nor is the Buyer relying upon any representations, warranties or other statements, whether verbal or in writing, in connection with the Premises and the transactions contemplated hereunder and the Buyer further acknowledges and agrees that the Buyer is relying solely upon its own independent inspection and examination of the Premises, title to same and economic matters and as to whether the Premises or any use thereof is or would be in compliance with any and all applicable laws, ordinances and regulations including, without limitation, zoning, building codes or other laws, ordinances or regulations. Without limiting the generality of the foregoing, after the Final Court Order Date, the Buyer shall be responsible for all costs of environmental remediation required at the Premises, if any, and for all demolition costs. In addition, any verbal or written statement or other information or materials supplied or alleged to have been supplied to the Buyer on behalf of the Seller, including, without limitation, any information and/or documentation provided to Buyer pursuant to Section 25 hereof, shall be deemed to have been supplied or made available to the Buyer for informational purposes only and the Buyer may make whatever use of such information and materials the Buyer deems appropriate.

23. Title Insurance and Title Examination. The Buyer shall promptly cause title to the Premises to be examined and Buyer shall cause an owner's title insurance commitment in the amount of the purchase price ("Commitment") to be issued by a title insurance company licensed to do business in the State of Rhode Island and delivered to Buyer at Buyer's sole cost and expense within sixty (60) days following the date of this Agreement. On or before 5:00 p.m. on the thirtieth (30th) day following the Survey Completion Deadline, Buyer shall notify Seller in writing of any objection to the items disclosed on the Commitment, together with a copy of said Commitment and (if available) legible copies of any exceptions to title to which Buyer objects. Seller shall have ninety (90) days from the date of such objection to cure the same at Seller's option, but without obligation to do so except that Seller shall be obligated at Closing to cure any such title objections which are monetary in nature (such as delinquent taxes, assessments, interest and/or penalties, tax liens, mechanics' liens, provided that such matters were not caused or created by Buyer, Buyer's agents and/or consultants and mortgage indebtedness) which may be removed by the Seller's tender of a specific ascertainable amount of money ("Monetary Title Exceptions") and any record claims. If the objections, other than the Monetary Title Exceptions which Seller shall cure at Closing, are not satisfied within such time period, Buyer may (a) terminate this Agreement and receive a refund of the Deposit together with all interest accrued thereon and reimbursement from Seller for the cost of the Commitment, the cost of the hereinafter defined Survey, the cost of the Environmental Site Assessments in an amount not to exceed Thirty Thousand and 00/100 Dollars ($30,000.00) and Operational Costs that have been incurred by Buyer and Buyer's affiliates with respect to the Premises and this Agreement through the date of termination, and in such event, neither party shall have any further rights or obligations under this Agreement other than as stated in this Agreement, or (b) waive the unsatisfied objection and close this transaction without adjustment to the Purchase Price with respect to such objection. If Seller is not given timely written notice that Buyer is terminating the Agreement within the specified time period by reason of any title objection, than any such title objections shall be deemed as waived by the Buyer. At the Closing, Buyer shall obtain at Buyer's sole expense and election, as a condition precedent to Buyer's obligation to close, a pro forma title insurance policy (or an irrevocable commitment to issue a title insurance policy) in the amount of the purchase price issued by the title insurance company which issued the Commitment ("Title Insurance Policy") insuring that Buyer's nominee is acquiring good and marketable record title to the

Premises subject only to (a) the title exceptions and title matters permitted hereby and (b) any title exceptions and title matters created by Buyer. Seller agrees not to further encumber the Premises during the pendency of this Agreement.

24. Survey. The Buyer shall promptly obtain a Class I ALTA survey of the Premises incorporating a delineation of all wetlands on the Premises (the "Survey") to be completed by a Registered Land Surveyor in the State of Rhode Island at Buyer's sole cost and expense, with said Survey to be certified to Buyer and the title insurance company referenced herein. The Buyer agrees to promptly cause the Survey to be obtained on or before 5:00 p.m. on the one-hundred fiftieth (150th) day following the date of this Agreement (the "Survey Completion Deadline"), and within thirty (30) days of the Survey Completion Deadline the Buyer shall notify the Seller in writing of any matters reflected in the Survey which the Buyer reasonably determines are unacceptable to Buyers because such matters will adversely and materially affect Buyer's ability to develop and sell the Premises in accordance with its development and business plans therefor. In the event the Buyer shall fail to timely notify the Seller in writing of any such unacceptable Survey matters, Buyer will be conclusively deemed satisfied with the Survey of the Premises and all conditions shown thereon as of the date of the Survey. In the event the Buyer does not accept the Survey and provides the written notice provided hereinabove to Seller on a timely basis, then, subject to the parties' respective rights to elect to cure and/or waive as set forth in the preceding Section 23, this Contract shall be deemed as terminated and Buyer shall receive a refund of the Deposit together with all interest accrued thereon and reimbursement from Seller for the cost of the Commitment, the cost of the Survey, the cost of the Environmental Site Assessments in an amount not to exceed Thirty Thousand and 00/100 Dollars ($30,000.00) and Operational Costs that have been incurred by Buyer and Buyer's affiliates with respect to the Premises and this Agreement as of the date of termination.

25. Information and Documentation Concerning the Premises. Following the execution of this Agreement, Seller shall promptly provide Buyer with reasonable access during normal business hours upon reasonable prior written notice to all documentation and information within the possession of Seller, Seller's property managers and Seller's agents of a material nature with respect to the Premises, (and when requested, photocopies thereof) including but not limited to, any existing environmental audits, structural reports, security contracts, maintenance contracts and all

correspondence related thereto. At all times during the pendency of this Agreement, Seller shall cause its property managers and agents to be accessible at reasonable times upon reasonable prior written notice during normal business hours to Buyer and Buyer's agents and to fully and promptly respond to all reasonable inquiries made by Buyer concerning the Premises, tenants (if any) at the Premises, legal matters, financial matters, environmental matters, and other matters relating to the Premises, and in all such cases, Seller shall endeavor to provide full and complete responses to such inquiries to Buyer within thirty (30) days following any written inquiry for information. Notwithstanding the Seller's agreement to furnish the Buyer with such documentation or information, the Buyer acknowledges and agrees that the Buyer is solely responsible for conducting its own due diligence with respect to the Premises, and that any such information/documentation provided shall be for informational purposes only. Seller makes no representations about the accuracy or completeness of such information/documentation. In no event shall the failure of the Seller to provide the Buyer with any requested documentation and/or information pursuant to this Agreement be deemed a default by the Seller under the terms of this Agreement. Seller shall have no obligation to disclose confidential or privileged information and/or documentation.

26. Intentionally Omitted.

27. Intentionally Omitted.

28. Attorneys' Fees. In the event of any default hereunder, the non-defaulting party may recover from the defaulting party all reasonable attorneys' fees incurred in enforcing the terms of this Agreement.

29. Successors and Assigns. The Buyer shall not assign, transfer or convey all or any portion of the Buyer's rights and/or obligations under this Agreement without the prior written consent of the Seller, which consent may be given or withheld in the sole and absolute discretion of the Seller. Notwithstanding the foregoing, this Agreement may be assigned by Buyer to another entity in which Arnold S. Goodstein and/or Toll Brothers is a manager, member, or shareholder. Buyer shall provide Seller with written notice of such assignment and upon such assignment, the assignee of Buyer's rights and obligations hereunder shall be liable for all performance of the Buyer hereunder on a joint and several basis with Buyer. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and permitted assigns, as

applicable.

30. Entire Agreement; Modification of Agreement. This Agreement may not be amended or modified except pursuant to a written instrument executed by both Buyer and Seller. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and is subject to no other understandings, conditions or agreements other than those expressly contained herein.

31. Governing Law. The parties further agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Rhode Island.

32. No Brokerage. Each party represents to the other that such party has not dealt with any real estate broker or agent with respect to the Premises and hereby agrees to indemnify each other party from any claims made by any such agent or broker claiming to have dealt with such indemnifying party. The aforesaid indemnification shall survive the Closing Date and the delivery of the deed. Buyer discloses that Arnold S. Goodstein is a licensed real estate broker in the State of South Carolina although no real estate commission is being claimed by Arnold S. Goodstein in connection with this transaction.

33. Merger in the Deed. The acceptance of a deed by the Buyer shall be deemed full performance and satisfaction of all obligations of the Seller under this Agreement except for those provisions which are stated to expressly survive the Closing.

34. No Financial Assistance. The Buyer acknowledges and agrees that the City of Warwick has no obligation to make City financial assistance available to the Buyer in connection with the development of the Premises.

35. Financial Condition. Promptly upon the written request of the Seller, the Buyer shall provide such written information as may reasonably be required to satisfy the Seller that the Buyer has the financial capacity to consummate the purchase of the Premises without the need for financing.

36. Right of First Refusal. The Receiver shall grant the Rocky Beach Tenant's Association, Inc. (the "Association") a right of first refusal with respect to the sale of Rocky Beach despite the Receiver's belief that the statutory right of first refusal under R.I.G.L. § 34-18.2-3 (the "Leased Land Dwellings Act") has terminated and/or lapsed. Seller shall notify the Association of the

potential sale in accordance with Leased Land Dwellings Act and permit the Association to exercise a right of first refusal in accordance with the provisions of said Act. In the event that the Association exercises the right of first refusal with respect to Rocky Beach and successfully closes on Rocky Beach in a timely fashion, this Agreement shall be deemed automatically terminated upon such closing.

IN WITNESS WHEREOF this Agreement has been executed as a sealed instrument the day and year first set forth above.

WITNESS: Katy Vaughn

Buyer:

Vanderbilt Capital, LLC

By: [signature]
Arnold S. Goodstein
Its Manager

Seller:

United States Small Business Administration, as and only as Receiver of Moneta Capital Corporation

Elaine Hruschka

By: [signature]
Name: Thomas G. Morris
Title: Dir, office of SBIC Liq

Escrow Agent:

Shechtman Halperin Savage, LLP

By: [signature]
Stephen J. Shechtman
Partner

EXHIBIT A

Parcel I:

That parcel of land, situated on the easterly side of Palmer Avenue in the City of Warwick in the State of Rhode Island, bounded and described as follows:
Beginning at a point in the southerly line of land now or lately of Alfred F. Varone, said point being approximately fourteen hundred and fifty (1450') feet easterly from the easterly line of Palmer Avenue; thence turning an angle of 90° and running northerly bounded westerly by other land of this grantor, a distance of one hundred and seventy-five (175') to a point; thence turning an interior angle of 90° and running easterly still bounded northerly by other land of this grantor to the high water mark of Narragansett Bay; thence turning and running generally southerly along said high water mark of Narragansett Bay to the northerly line of land owned by Rocky Point Amusement Park, Inc., thence turning and running westerly, bounded southerly by said land owned by Rocky Point Amusement Park, Inc., a distance of five hundred and fifty (550'') more or less to the point and place of beginning. Meaning and intending to convey a parcel of land containing 2.21 acres more or less.

PARCEL II:

That parcel of land, situated on the easterly side of Palmer Avenue in the City of Warwick in the State of Rhode Island, Bounded and described as follows: Beginning at a point in the easterly line of Palmer Avenue at the northwesterly corner of land now or lately of Vincent Ferla and the southwesterly corner of said parcel; thence easterly bounding southerly on the last mentioned land nine hundred twenty-six and 2/10 (926.2) feet to a stone bound set in the ground; thence continuing easterly bounding southerly on said Ferla land to Narragansett Bay; thence northerly bounding easterly on Narragansett Bay to land now or lately of Mary Blatty; thence westerly bounding northerly in part on the last named land, in part on a street, in part on land now or lately of Harry A. Stowell, Jr. and wife, in part on land now or lately of Mary J. McGovern et al. in part on land now or lately of Robert Kindley Estate, in part on land now or lately of Samie Shaken, in part on land now or lately of Theodore C. Kanelos and wife, in part on land now or lately of Helma C. Evans, in part on land now or lately of Wilmer T. Cudworth and wife, in part on land now or lately of Francis Chapman and wife, in part on land now or lately of John E. Goulding and wife, in part on land now or lately of Annie Vesey et al., in part on land now or lately of John J. Callan and wife, in part on land now or lately of Frank Acella, in part on land now or lately of Walter E. Marshall, in part on land now or lately of Margaret Marshall et al., in part on land now or lately of Dumenico Buccini et al., in part on land now or lately of Ovid Monacelli et al., in part on land now or lately of Domenic Ballettio, in part on land now or lately of Erminio Fascitelli et al., in part on land now or lately of Angelo Caputo and wife and in part on land now or lately of Armen H. Johnson about sixteen hundred eighty (1680) feet to Palmer Avenue; thence southerly bounding westerly on Palmer Avenue seven hundred thirty two (732) feet, more or less, to said Ferla land and the point and place of beginning; BUT EXCEPTING THEREFROM Parcel I described above.

Parcels I and II are conveyed together with all right, title and interest of the grantor in and to any buildings and improvements located on the hereinabove described premises, but subject to all right, title and interest of others in and to buildings and improvements located on the said premises.

EXHIBIT B

