# EXHIBIT N

# (Part 1)

# PURCHASE AND SALES AGREEMENT

This Agreement (the "Agreement") is made and entered into as of the 19th day of May, 2004, by and between the United States Small Business Administration as and only as Receiver of Moneta Capital Corporation (the "Seller") and Vanderbilt Capital, LLC, a limited liability company organized and existing under the laws of the State of Rhode Island (the "Buyer").

W I T N E S S E T H:

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Premises. Subject to the terms and provisions hereof, the Seller agrees to sell and convey to the Buyer and the Buyer agrees to purchase those certain lots or parcels of land and all improvements and fixtures located thereon in which Seller may claim an interest or owns, located in the City of Warwick, County of Kent, State of Rhode Island, commonly known and numbered as (a) Assessor's Plat 379, Lots 8, 9, 158, 159, 425, 426 and 445, (b) Plat 380, Lot 1, and (c) Plat 381, Lots 38, 39, 40 and 41, more particularly described on Exhibit A attached hereto and incorporated herein by reference, together with all rights, privileges, and appurtenances pertaining thereto, including any right, title and interest of the Seller (and its predecessors in title) in and to adjacent streets, alleys, rights of way and adjacent properties, and Seller's interest in and to any licenses and permits with respect to the premises (collectively, the "Premises"). The legal description determined by the Survey (defined hereinbelow) will replace the legal descriptions described herein and described on Exhibit A in the event it should differ from the legal descriptions contained herein.

2. Title. The Premises are to be conveyed by the Seller by a good and sufficient Receiver's Deed running to Buyer, free from all mortgages or other encumbrances or matters of record, except:

(a) The Restrictions, as that term is defined in Section 14 hereof;

(b) Real estate taxes and general assessments that constitute a lien against the Premises, current as of the Final Court Order Date (defined in Section 10 hereinbelow); and

(c) All easements, restrictions, plat restrictions or other matters of record, if any, to the extent now in force and applicable.

3. Purchase Price. The agreed purchase price (the "Purchase Price") for the Premises is Thirteen Million Seven Hundred Fifty Thousand and 00/100 Dollars ($13,750,000.00), which shall be paid as follows:

(a) $300,000.00 shall be paid by the Buyer upon the Buyer's execution of this Agreement as a deposit (the "Deposit") to be held in escrow in an interest-bearing account, with a financial institution located in the State of Rhode Island mutually agreeable to Seller and Buyer, by Seller's counsel, Messrs. Shechtman Halperin Savage, LLP (the "Escrow Agent") and such amount plus the interest accrued thereon shall be accounted for at the time of Closing and credited against the Purchase Price, subject to adjustment in accordance with Section 7 hereof; and

(b) the balance of the Purchase Price, subject to the adjustments and credits at the closing to be made by the parties as hereinafter set forth, is to be paid at the time of delivery and recording of the deed in cash, by certified or bank check or checks or by federal wire transfer of immediately available funds.

The Buyer acknowledges and agrees that the Deposit (and all interest accrued thereon) shall be non-refundable except in the event of a default by the Seller and except as otherwise expressly set forth herein.

4. Closing. Unless otherwise extended as provided herein, the aforesaid deed is to be delivered (the "Closing") at the office of the Escrow Agent, 86 Weybosset Street, Providence, Rhode Island at 10:00 a.m. on the date (herein referred to as the "Closing Date") that is the earlier to occur of (a) the eighteen (18) month anniversary of the Final Court Order Date, (b) thirty (30) days following the date on which the Buyer receives the hereinafter defined Approvals or (c) thirty (30) days following the date when Buyer provides Seller written notice that it elects to close this transaction prior to Buyer's receipt of the Approvals. In no event, however, shall the Closing occur prior to the date of entry of the Court Order. Subject to the notice and cure periods contained herein, it is agreed that time is of the

essence of this Agreement. Seller shall pay or cause to be paid at Closing all of Seller's costs and expenses referenced herein, if any. Seller shall be responsible for any real estate transfer taxes customarily paid by Sellers upon the conveyance of real estate in the State of Rhode Island. At Buyer's option, Buyer may take a credit against the Purchase Price for any such amounts to be paid by Seller at the Closing. Any special assessments levied with respect to the Premises as of the Final Court Order Date (as defined in Section 10 hereinbelow) shall be paid by the Seller or credited to the Buyer at the Closing; provided, however, if any such special assessment may be paid in installments, the Seller shall be responsible for all installments due and payable prior to the Final Court Order Date, and the Buyer shall assume and be responsible for the balance of installments due from and after the Final Court Order Date. Any special assessments levied with respect to the Premises subsequent to the Final Court Order Date shall be the sole responsibility of the Buyer.

5. Conditions to Seller's Obligations. The Seller's obligations under this Agreement are subject to and contingent upon the Seller obtaining an order of the United States District Court for the District of Rhode Island which is final with all appeal periods having expired with no timely appeals being taken therefrom, or with any timely appeals being resolved by a final order of a court of competent jurisdiction (such final and non-appealable order is referred to herein as the "Court Order") authorizing the Seller to enter into this Agreement and approving the terms of the sale of the Premises. Seller agrees to use all reasonable best efforts to obtain the Court Order as soon as is practical. In the event that the Court Order has not been obtained on or before December 1, 2008, notwithstanding Seller's reasonable best efforts to do so (the "Court Order Deadline"), the Deposit and all interest accrued thereon shall be returned to the Buyer and this Agreement shall be deemed null and void and of no further effect without recourse to either party except for any provisions that are expressly stated to survive the expiration or other termination of this Agreement. In the event that the Court Order has not been obtained by 5:00 p.m. on December 1, 2005, at the Buyer's option, the Deposit and all interest accrued thereon shall be returned to the Buyer and this Agreement shall be deemed null and void and of no further effect without recourse to either party except as for any provisions that expressly survive the expiration or other termination of this Agreement. In the event that the Court Order is not obtained by the Court Order Deadline due solely to the approval by the Court of a higher offer for the Premises, the Seller shall pay to the Buyer a break-up fee in the amount of One Hundred Fifty Thousand and 00/100 Dollars ($$150,000.00) (the "Break-up Fee"), immediately following the execution of a contract providing for the sale of the Premises to such other buyer and the receipt from such other buyer of the deposit required under such third party buyer's purchase and sale

agreement. Any such third party buyer's purchase and sale agreement shall be in the same form as this Agreement.

6. Possession. Possession of the Premises shall be delivered to Buyer on the Closing Date; provided, however, that as of the Final Court Order Date, the Seller shall grant to the Buyer a license to occupy the Premises, which license shall remain in effect until the Closing Date, subject to revocation as set forth below. The Premises shall be delivered to Buyer in their "AS IS" and "WHERE IS" condition and "WITH ALL FAULTS". On or after the Final Court Order Date, Buyer may, at its sole cost, risk, and expense, (a) demolish building improvements, remedy environmental defects and environmental contamination, demolish asphalt parking surfaces, and remove other improvements on the Premises; provided that Buyer removes promptly all rubbish and debris that the Buyer does not intend to recycle or reuse and/or (b) subject to the written approval of the Seller which shall not be unreasonably withheld nor delayed, construct water, sewage and drainage-related infrastructure improvements at the Premises. In the event the sale of the Premises to the Buyer is not consummated for any reason, upon the expiration or termination of this Agreement, the Buyer's license to occupy the Premises shall be deemed revoked and the Buyer shall immediately remove all of Buyer's rubbish, if any, and vacate the Premises.

7. Extended Time for Closing. If Seller shall be unable to deliver title in accordance with Section 23 hereof, or to make conveyance, or to deliver possession of the Premises, all as herein stipulated, or if on the Closing Date the Premises do not conform with the provisions hereof, then, the Seller shall use reasonable efforts to remove any defects in title, deliver possession as provided herein, and make the Premises conform to the provisions hereof, as the case may be, and the Closing Date may be extended by either party for a period of up to sixty (60) days (the "Extended Time"). In connection with such reasonable efforts, the Seller will not be obligated to institute any litigation, to incur any indemnity obligation or to otherwise spend more than Fifty Thousand and 00/100 Dollars ($50,000.00). If, at the expiration of the Extended Time, the Seller shall have failed so to remove any defects in title, deliver possession, or make the Premises conform, as the case may be, all as herein agreed, then, at the Buyer's option, the Deposit (and all interest which has accrued thereon), and any other amounts paid by the Buyer hereunder as a part of the Deposit, shall be forthwith refunded and all other obligations of all parties hereto shall cease and this Agreement shall be void without recourse to the parties hereto unless the Buyer makes the election referred to below.

The Buyer shall have the election, at either the original or any Extended Time for performance, to accept such title as the Seller can deliver to the Premises in its then condition and to

pay therefor the Purchase Price without deduction, in which case the Seller shall convey such title. Provided that Buyer is not in default under the terms hereof beyond the expiration of any applicable grace or cure period, and provided, further that the Buyer files all necessary completed applications for the Approvals referenced in Section 11 hereof with the appropriate governmental agencies and/or authorities at reasonable times if one or more of the Approvals has not been obtained prior to the eighteen (18) month anniversary of the Final Court Order Date, the Buyer shall have the right, subject to the conditions set forth below, to extend the Closing Date for up to four (4) successive periods of six (6) months each, not to exceed twenty-four (24) months in the aggregate (each an "Extension Period" and together, the "Extension Periods"), to permit the Buyer additional time to obtain the Approvals. Any such elections by Buyer to extend the Closing Date shall be made by written notice (each, an "Extension Notice") provided to the Seller in accordance with the terms of this Agreement no later than thirty (30) days prior to the expiration date of the then applicable Closing Date provided in this Agreement. In order to be effective, each Extension Notice shall contain the following: (a) a statement of the Approvals obtained to date and the Approvals that Buyer believes remain pending or otherwise need to be obtained, (b) the estimated time frames in which the Buyer anticipates it may receive approval or disapproval of the remaining Approvals and (c) confirmation that Buyer and its affiliates (including but not limited to Toll Brothers, Inc. and its subsidiaries) have internally and externally expended not less than $150,000.00 in connection with their efforts to develop the Premises and the adjacent real estate to be sold by Seller to Buyer.

In the event of commencement of litigation that prevents the Buyer from proceeding with obtaining the Approvals or renders the continued prosecution of such Approvals impractical, then upon the expiration of the fourth (4th) Extension Period if Buyer has not obtained the Approvals, Buyer shall be entitled to an additional Extension Period for an amount of time negotiated by the Seller and the Buyer in good faith based upon the facts of the litigation in question and the amount of time reasonably required to resolve such litigation and obtain the Approvals; provided that in no event shall such Extension Period be less than six (6) months nor more than two (2) years, except as otherwise mutually agreed between the parties, in each party's sole and absolute discretion. In such event, the Buyer shall give reasonable notice of the commencement of such litigation and further comply with the other conditions and requirements set forth in this Section 7 for the previous Extension Periods as well as the Seller's Financing Costs provisions contained in this Section 7.

During each Extension Period for which the Buyer has properly exercised its option to extend, Buyer shall remain liable for the Operational Costs relating to the Premises in accordance with the

provisions of Section 10 hereof, and in addition, the Buyer shall be liable for a portion of the hereinafter defined Seller's Financing Costs, calculated as set forth below. Buyer's portion of the Seller's Financing Costs for each Extension Period shall be due and payable on the last day of the Extension Period in question. By execution of this Agreement, the Buyer irrevocably authorizes the Escrow Agent to deduct from the Deposit the amount of Buyer's portion of Seller's Financing Costs on the last business day of each Extension Period and to pay such amounts to the Seller. Any such amounts deducted from the Deposit and paid to the Seller pursuant to the terms of this Section 7 shall be deemed non-refundable under any and all circumstances, notwithstanding any contrary provisions contained in this Agreement.

The Seller is the obligor under certain loans by the United States Small Business Administration ("SBA") with respect to the Premises in the aggregate principal amount of Three Million One Hundred Sixty Two Thousand Twelve and 00/100 Dollars ($3,162,012.00)(the "Seller Loan") which presently accrue interest at the rate of Three Hundred Six Thousand Five Hundred and 00/100 Dollars ($306,500.00) per annum (the "Seller's Financing Costs"). For purposes of this Agreement, the Buyer and the Seller agree that the amount of interest that shall accrue on the Seller Loan during any Extension Period shall be referred to as the Semi-Annual Interest Expense, which shall not exceed One Hundred Fifty Three Thousand Two Hundred Fifty and 00/100 Dollars ($153,250.00) in any one Extension Period. During each Extension Period, Buyer's portion of the Seller's Financing Costs shall be calculated as follows: (a) Fifty percent (50%) of the Semi-Annual Interest Expense accrued during the Extension Period in question, less (b) Fifty percent (50%) of the amount of real estate taxes attributable to the Premises that are payable by the Buyer to the City of Warwick during the Extension Period in question to the extent that such taxes are paid by the Buyer to the City of Warwick; provided, however, that the Buyer's portion of the Seller's Financing Costs shall not exceed Fifty Thousand and 00/100 Dollars ($50,000.00) for each Extension Period and shall not exceed Two Hundred Thousand and 00/100 Dollars ($200,000.00) in the aggregate for all Extension Periods combined. In the event that such calculation produces a negative number, at Closing, the Buyer shall receive a credit against the Purchase Price in the amount by which the real estate taxes paid by Seller during such Extension Period exceed the Buyer's portion of the Seller's Financing Costs for such Extension Period; provided, however, that the credit received by the Buyer at closing shall not exceed Fifty Thousand and 00/100 Dollars ($50,000.00) for each Extension Period and shall not exceed Two Hundred Thousand and 00/100 Dollars ($200,000.00) in the aggregate for all Extension Periods combined. By means of illustration and not of limitation, if during the first Extension Period, the Semi-Annual Interest Expense equals One Hundred Seventy-Five Thousand and 00/100 Dollars ($175,000.00)

and during the same Extension Period, the Buyer pays to the City of Warwick One Hundred Forty-Five Thousand and 00/100 Dollars ($145,000.00) in real estate taxes attributable to the Premises, the Buyer's portion of the Seller's Financing Costs shall be calculated as follows: ($153,250.00/2)-($145,000.00/2) = $4,125.00. Accordingly, on the last business day of the first Extension Period, the Escrow Agent would deduct $4,125.00 from the Deposit and pay such amount to Seller. The $4,125.00 would then be non-refundable under any and all circumstances including, without limitation, default by the Seller.

8. Wetlands Disclosure. All or part of the Premises have or may have previously been determined to be a coastal wetland, bog, fresh water wetland, pond, marsh, riverbank or swamp, as those terms are defined in Chapter 2-1, R.I.G.L., as amended. The foregoing is intended as the disclosure required by said Chapter 2-1 if and to the extent said Chapter is applicable.

9. Use of Purchase Money. To enable Seller to make conveyance as herein provided, Seller may, on the Closing Date, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests provided that all instruments so procured are recorded simultaneously with the recording of said deed or that provision for prompt recording thereof subsequent to the Closing reasonably satisfactory to the parties are made on the Closing Date.

10. Early Possession and Operational Costs of the Premises. From and after ten (10) days following the Court Order having become final (the "Final Court Order Date") Buyer shall be entitled to possession of the Premises, pursuant to the license granted in Section 6 hereof, and in any event, regardless of whether Buyer takes possession of the Premises pursuant to such license, Buyer shall immediately assume and pay when the same become due and payable all operational responsibilities and all costs and expenses associated with ownership of the Premises (other than those otherwise allocated to Seller hereunder, if any) accruing on or after the Final Court Order Date, including, without limitation, payment of real estate taxes assessed against the Premises, payment of any unpaid betterment assessments, improvement assessments and/or special assessments constituting a lien against the Premises, whether now existing or hereafter arising, payment of all utility costs and water and sewer charges, maintenance of insurance as required by Section 20 hereof and performance of maintenance and repairs of the Premises (collectively, the "Operational Costs"). Operational Costs shall be adjusted as of the Final Court Order Date, with the Seller paying all amounts accruing prior to the Final Court Order Date,

and the Buyer assuming payment of the same from and after the Final Court Order Date. Buyer acknowledges and agrees that any and all amounts paid pursuant to this Section 10 are nonrefundable, except as otherwise expressly provided herein.

11. Conditions Precedent to the Buyer's Obligations. The Buyer's obligations to purchase the Premises under this Agreement are subject to and contingent upon the Buyer obtaining, at the Buyer's sole cost and expense, in such form and content as Buyer shall require in its reasonable discretion, the necessary final and non-appealable approvals, if any, from the City of Warwick Zoning Board and Planning Board, City of Warwick City Council, the U.S. Army Corps of Engineers, the Rhode Island Department of Environmental Management, Coastal Resources Management Council of the State of Rhode Island, United States Environmental Protection Agency, all public and quasi-public sewer and water authorities with jurisdiction over the Premises and all other local, state and federal governmental agencies and quasi-governmental entities with jurisdiction over the Premises and Buyer's proposed development thereon (collectively, the "Approvals") for the construction of not less than two hundred eighty (280) residential dwelling units on the Premises(the "Entitlements"). In the event that the Buyer has submitted applications (reasonably believed by Buyer to be complete) for the Approvals with the aforementioned public and quasi-public bodies, agencies and/or entities at reasonable times, but is unable to obtain the Approvals on or before the eighteen (18) month anniversary of the Final Court Order Date (the "Approvals Deadline") after using Buyer's commercially reasonable good faith efforts to do so Buyer may terminate this Agreement by written notice to the Seller on or before 5:00 p.m. EST on the Approvals Deadline (the "Approvals Termination Notice"), which Approvals Termination Notice shall contain, inter alia, the following: (a) an absolute assignment by the Buyer of all of the Buyer's right, title and interest in and to the hereinafter defined Documents, (b) originals of all of the Documents and (c) a representation by the Buyer that all persons and/or entities who performed work relating to the Documents have been paid in full. Upon the receipt of the Approvals Termination Notice that fully complies with the requirements of this Section 11, the Deposit, together with all interest accrued thereon, shall be returned to the Buyer and this Agreement shall be deemed null and void and of no further force or effect, except for such provisions that expressly survive the expiration or termination of this Agreement. The Approvals Deadline shall be extended through and including 5:00 p.m. on the last day of any Extension Period for which the Buyer has exercised its option to extend as set forth in Section 7 hereof. In the event the Buyer does not terminate this Agreement in strict compliance with the foregoing on or before the Approvals Deadline, the Buyer shall be deemed to have waived this contingency. Moreover, the obligations of the Buyer to examine title to the Premises and to order the Survey pursuant to Sections 23 and 24 hereof are not subject to any contingencies. The

parties acknowledge that Buyer obligations hereunder constitute adequate consideration for Seller's obligations hereunder. Notwithstanding the foregoing, the Buyer may apply for permission to construct additional residential dwelling units on the Premises; provided, however, that such application shall not alter the two hundred eighty (280) residential dwelling unit contingency.

Upon the request of the Buyer, if required by the applicable governmental agency in connection with an application for an Approval, the Seller shall, at no cost or expense to the Seller, join in any of the Buyer's applications for any Approval; provided, however, that the Seller shall have no obligation to join in any application that would increase the Seller's obligations with respect to the Premises in the event the sale of the Premises is not consummated for any reason, such as increasing the tax base of the Premises and/or agreeing to new assessments or betterment liens against the Premises. The Buyer shall provide to the Seller, within fifteen (15) days of Buyer's receipt of same, photocopies of any and all surveys, applications, consents, permits, title reports, environmental site assessments, including, without limitation, the Environmental Site Assessments, and/or other reports of a similar nature concerning the physical condition of the Premises (collectively, the "Documents") obtained by the Buyer in connection with the process of obtaining the Approvals or otherwise in connection with the Premises. In the event of the Buyer's default hereunder which is not remedied within any applicable cure period or the termination of this Agreement by the Buyer for any reason other than Seller's default, Buyer shall be deemed to have assigned automatically to Seller all of Buyer's right, title and interest in and to all of the Documents without the need for execution of any further documentation confirming said assignment. However, in such event, Buyer shall, upon the request of Seller, execute any and all instruments, documents and/or agreements necessary to effectuate such assignment, and the Seller shall be free to use such information and documentation for any purpose the Seller deems appropriate. Notwithstanding anything contained in this Agreement, in no event shall the Buyer have the authority to take any action that would result in an increase of or addition to the Seller's ownership obligations with respect to the Premises in the event the sale described herein is not consummated, without in each instance obtaining the prior written consent of the Seller, which consent may be given or withheld in Seller's sole and absolute discretion; provided, however, that the pursuit of the Entitlements and the rezoning of the Premises as contemplated hereby shall not be deemed as action which would increase or add to the Seller's obligations with respect to the Premises. By means of illustration and not of limitation, an increase in the obligations of the Seller would include an increase in the tax base of the Premises, additional betterments or assessments on the Premises, change of zone of the Premises to a zoning district that

is other than residential or otherwise permitted herein and/or allowance of activities that would increase insurance premiums. The Seller's consent on any one occasion shall not be deemed to constitute the Seller's consent on any other occasion. The provisions of this Section 11 shall survive the termination and/or expiration of this Agreement.

Seller shall further cooperate with Buyer and execute any documents reasonably requested by Buyer in connection with Buyer's efforts to obtain local, state and/or federal loans and grants for the acquisition, preservation and/or development of the Premises, provided that the Seller shall not be obligated to execute any document, instrument or agreement that imposes any liability or obligation upon the Seller, including, without limitation, any financial obligation. Any such funding shall become the property of Buyer upon the Closing of this transaction; provided, however, that the Buyer's obligations under this Agreement are not subject to or contingent upon the Buyer's receipt of a commitment for any such financing and/or funding nor are the Buyer's obligations under this Agreement subject to or contingent upon actual receipt of such funding or financing.

12. Default. If Buyer shall fail to fulfill Buyer's obligations hereunder and such failure is not remedied within thirty (30) days following written notice from Seller of such failure, the Deposit (and all interest accrued thereon) which is to be held in escrow by the Escrow Agent shall, at the Seller's option, be delivered by the Escrow Agent to the Seller and retained by the Seller, as liquidated damages in lieu of other rights and remedies available to Seller at law and in equity other than Seller's right to seek recompense from the Buyer for the cost of remediation of any environmental damage or other property damage to the extent caused by Buyer's possession of the Premises, and the Seller's right to seek damages and equitable relief relative to the terms of Section 11 and 18 of this Agreement that specifically survive termination hereof, which rights may be exercised by the Seller in addition to the retention of the Deposit. Notwithstanding the foregoing, in the case of a non-monetary default that is not capable of being cured within said thirty (30) day period, the Buyer shall have an additional period of up to one hundred twenty (120) days (the "Additional Time") to cure such default provided that Buyer commences such cure within said thirty (30) day period and diligently prosecutes such cure to completion. In the event the Buyer reasonably believes that such cure will require time in excess of the Additional Time to complete such cure, the Buyer may request further time to cure the default, which additional time may or may not be granted in the Seller's sole and absolute discretion.

In the event the Seller shall be in default hereunder, and such failure is not remedied within thirty (30) days following

written notice from Buyer of such failure or such longer grace period as may be provided herein, then at Buyer's option, Buyer shall be entitled to (a) a return of the Deposit (and all interest accrued thereon) held in escrow by the Escrow Agent less amounts, if any, deducted and paid to Seller pursuant to Section 7 hereof and recovery from Seller of (i) the cost of the Commitment, (ii) the cost of the Survey and (iii) the cost of the hereinafter defined Environmental Site Assessments, in an amount not to exceed Thirty Thousand and 00/100 Dollars ($30,000.00), as well as the Operational Costs which Buyer has incurred with respect to the Premises as Buyer's liquidated damages in lieu of other rights and remedies available to Seller at law and in equity, and upon such payment, Buyer's rights to the Commitment, the Survey and the Environmental Site Assessments shall be assigned to Seller without the need for further documentation or (b) pursue the remedy of specific performance as Buyer's sole and exclusive remedy at law or in equity for such default. Notwithstanding the foregoing, in the case of a non-monetary default that is not capable of being cured within said thirty (30) day period, the Seller shall have an additional period of up to one hundred twenty (120) days (the "Additional Time") to cure such default provided that Seller commences such cure within said thirty (30) day period and diligently prosecutes such cure to completion. In the event the Seller reasonably believes that such cure will require time in excess of the Additional Time to complete such cure, the Seller may request further time to cure the default, which additional time may or may not be granted in the Buyer's sole and absolute discretion.

13. Notices. All notices required or permitted to be given hereunder shall be mailed postage prepaid, by registered or certified mail, addressed to the addresses set forth below:

If to Seller:

United States Small Business Administration
Receiver of Moneta Capital Corporation
666 Eleventh Street, N.W., Suite 200
Washington, D.C. 20001
Attn: Stephen Jones

With a copy to:

Shechtman Halperin Savage, LLP
86 Weybosset Street
Providence, RI 02903
Attn: Stephen J. Shechtman, Esquire

If to Buyer:

Vanderbilt Capital, LLC
136 West Richardson Avenue
Summerville, SC 29483
Attn: Arnold S. Goodstein, Esquire

With a copy to:

Meyer Capel, A Professional Corporation
306 West Church Street
Champaign, IL 61820
Attn: David B. Sholem, Esquire

With further copy to:

Kenneth J. Gary, Esquire
Senior Vice-President and General Counsel
Toll Brothers
3103 Philmont Avenue
Huntingdon Valley, PA 19006

And with additional copy to:

Caprio Law Offices
Caprio Building
One Center Place
Providence, RI 02903
Attn: Frank T. Caprio, Esquire

14. Development Restrictions. The Buyer acknowledges and agrees that the Buyer's proposed use of the Premises shall be subject to the following limitations and restrictions (in addition to any conditions, restrictions and/or limitations imposed in any of the Approvals):

(a) The development of the Premises shall not consist of a gated community (as such term is used, defined, and permitted by the City of Warwick, Rhode Island or as otherwise agreed by the parties hereto);

(b) The land shown on Exhibit B, attached hereto and incorporated herein by reference shall be made available for use by the public;

(c) Public access to the shoreline of the Premises shall be allowed;

(d) Any development of the Premises shall utilize Rocky Point Avenue as the route of primary ingress and

egress to such development; and

(e) No home-based business and/or other commercial business shall be permitted in any residential development on the Premises.

Items (a) through (e) are sometimes collectively referred to herein as the "Restrictions". At the option of the Seller, any or all of the Restrictions shall be contained in the Receiver's Deed referenced in Section 2 hereof, and shall be deemed covenants running with the land. Notwithstanding the foregoing, in the event Buyer obtains the written agreement of the City of Warwick to alter, modify and/or eliminate any or all of the Restrictions on or before the Closing Date, Seller shall agree to modify the Restrictions in accordance with the agreement between the City of Warwick and the Buyer.

15. No Recording. This Agreement may not be recorded in the Records of Land Evidence of the city, town or county wherein the Premises are located. In the event the Buyer records or causes the Agreement to be recorded in violation of the foregoing prohibition, the Buyer, at the Seller's election at any time thereafter, shall conclusively be deemed in default hereunder entitling the Seller to all the remedies provided herein for the Buyer's default including, without limitation, the right to retain the Deposit and all interest which has accrued thereon, if any. In addition, in the event this Agreement is recorded in violation of the foregoing prohibition against recording, the Seller is hereby authorized and empowered as the true and lawful attorney-in-fact for the Buyer to record in said Land Evidence Records an affidavit of the Seller stating that the Seller has elected to hold the Buyer in default hereunder and all third parties may conclusively rely upon the recording by the Seller of such an affidavit as establishing that the Buyer has released to the Seller and no longer has any right, title or interest in and to this Agreement or the Premises and this Agreement will be deemed terminated and discharged of record with the same force and effect as if it had never been recorded. The foregoing power of attorney shall be deemed irrevocable and coupled with an interest. The Buyer further agrees to execute, acknowledge and deliver, in recordable form, any further documents, assurances or instruments as the Seller may request (following Buyer's default and the termination of Buyer's rights hereunder) in order to further confirm that the Buyer no longer has any right, title or interest in and to this Agreement or the Premises and in the event that the Buyer refuses or fails to forthwith execute same, the Seller is hereby appointed the true and lawful attorney-in-fact as aforesaid of the Buyer to execute same, which power of attorney shall be deemed irrevocable and coupled with an interest. Notwithstanding the foregoing, upon the request of the Buyer, the Seller shall execute and deliver to the Buyer a Memorandum of Agreement in

recordable form satisfactory to Seller, which Memorandum of Agreement may be recorded in the Land Evidence Records for the City of Warwick and County of Kent, Rhode Island. Any such Memorandum of Agreement shall include, inter alia, a provision appointing Seller as Buyer's true and lawful attorney-in-fact for the purpose of executing a Memorandum of Termination of Agreement in the event this Agreement expires or is terminated. The foregoing power of attorney shall be deemed irrevocable and coupled with an interest.

16. Court Approval. This Agreement is contingent upon the approval of its terms by the federal court referenced in Section 5 hereof in connection with the Receivership of Moneta Capital Corporation ("Receivership"). Seller agrees to provide Buyer as soon as practical with photocopies of all motions, petitions, and other pleadings (including all attachments and exhibits attached thereto) filed by Seller in connection with this Agreement and the transactions contemplated hereby and orders entered in connection with this Agreement whereby such court approval is sought and obtained by Seller. Any such pleadings filed by Seller shall be provided to Buyer not later than the date of their filing by Seller with said court.

17. Seller's Closing Deliveries. The Seller hereby agrees to deliver to Buyer the following documents at or before the Closing:

(a) A certified copy of the Court Order;

(b) The Receiver's Deed referred to in Section 2 hereof;

(c) All documents reasonably required to comply with the provisions of the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA"); and

(d) Such other documentation as is reasonably and customarily required by Buyer and Buyer's title insurance company in the case of a sale of real estate by a Receiver.

Items (a) - (d) are sometimes collectively referred to herein as the "Closing Deliveries".

At Buyer's option, the Closing shall be extended on a day-to-day basis for each day the Seller is unable to provide its Closing Deliveries to Buyer under this Section 17; provided, however, at Seller's option, the Closing Date shall be extended on a day-to-day basis for a period not to exceed sixty (60) days, provided that the Seller is diligently working to obtain the Closing

Deliveries.

18. Buyer's Access, Indemnity; Prohibition Against Liens. Buyer and its agents, contractors, and invitees shall be afforded access to the Premises at all times during the pendency of this Agreement. Buyer may perform or cause to be performed, at Buyer's sole cost and expense except as otherwise expressly set forth herein, tests, inspections, environmental audits and surveys of the Premises at all reasonable times prior to the Closing, including, without limitation, a Phase I Environmental Site Assessment and a Phase II Environmental Site Assessment (collectively, the "Environmental Site Assessments"). The Buyer shall promptly repair any damage to the Premises caused by the Buyer's activities in connection with this Agreement, and the Buyer agrees to indemnify, defend and hold the Seller harmless from and against any and all claims, demands, actions, causes of action or other liabilities arising out of or in connection with the Buyer's activities under this Agreement. Buyer shall prevent the placement or attachment of any mechanic's, materialman's, laborer's or other lien on the Premises arising out of or resulting from this Agreement and shall indemnify and hold harmless the Seller from and against any damages, losses, costs or liabilities connected therewith, and shall immediately discharge or bond any such lien that may be so placed or attached against the Premises. Buyer hereby agrees to indemnify and save harmless the Seller from and against all claims of whatever nature arising from any act, omission, or negligence of the Buyer or the Buyer's contractors, licensees, agents, servants or employees or arising from any accident, damage or injury whatsoever caused to any person or to the property of any person, or from any violation of any applicable law in or about the premises, or arising from any accident, where such accident, damage, injury or violation results or is claimed to have resulted from an act or omission on the part of Buyer or Buyer's contractors, licensees, agents, servants or employees. The foregoing indemnification shall include indemnity against all costs, expenses and liabilities incurred in or in connection with any such claim or proceeding brought thereon, and the defense thereof, including, without limitation, attorneys' fees. The provisions of this Section 18 shall survive the Closing and any termination of this Agreement.

19. FIRPTA. The Seller represents to the Buyer that FIRPTA withholding is not required.

20. Risk of Loss; Insurance Requirements. From and after the Final Court Order Date until the earlier of either the Closing or the termination of this Agreement, the risk of loss shall be borne by the Buyer. In the event of any damage and/or condemnation of the Premises, the Buyer shall remain obligated to purchase the Premises pursuant to the terms of this Agreement without reduction in the Purchase Price.