**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 99-565L** |
| | ) | |
| **MONETA CAPITAL CORPORATION** | ) | |
| | ) | |
| **Defendant.** | ) | |

**RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO THE MOTION OF NANCY TROY LOVETT, NANCY TROY LOVETT SELF-DIRECTED INDIVIDUAL RETIRMENT ACCOUNT AND THE RAUL LOVETT MARITAL TRUST OR , IN THE ALTERNATIVE, CROSS MOTION OF THE RECEIVER**

The U.S. Small Business Administration ("SBA"), as Receiver (the "Receiver") for Moneta Capital Corporation ("Moneta"), in support of its Response to the Motion of Nancy Troy Lovett, Nancy Troy Lovett Self-Directed Individual Retirement Account and the Raul Lovett Marital Trust ("Lovett") or, in the alternative, Cross Motion of the Receiver hereby states as follows:

**BACKGROUND**

By Order dated February 2, 2000 ("the Receivership Order") this Court appointed SBA as receiver for Moneta. The Receiver was made aware that Moneta held an interest in a syndicated loan ("the Loan") made to C.R. Amusements, LLC ("C.R. Amusements"), which loan was collateralized by a mortgage on real property

consisting of 124 acres in Warwick, Rhode Island ("the Property"). The Property is the site of the former Rocky Point Amusement Park which closed in or about 1996

From 1999 through July 2003, ownership of the property was vested in C.R. Amusements an entity that was under the protection of the United States Bankruptcy Court for the District of Rhode Island. From the inception of the bankruptcy proceeding through July 2003, Andrew Richardson held possession of the Property in his capacity as Chapter 7 Trustee of C.R. Amusements.

Receiver Becomes Titled Owner After Foreclosure

The Receiver became the titled owner of the Property as the result of a foreclosure sale held on or about July 29, 2003. Title to the Property was held for the benefit of the Moneta Receivership Estate and on behalf of various co-investors (the "Participants") in a syndicated loan. Lovett holds the largest participation interest in the syndicated loan. After the Receiver bid in its outstanding mortgage at the foreclosure sale and became the titled owner, the Receiver negotiated the sale of the Property to Vanderbilt Capital, LLC ("Vanderbilt") for the total price of $25,000,000. Ultimately in May 2004, the Receiver entered into two purchase and sale agreements (the "Vanderbilt Agreements") for the Property that were approved by the Court on November 10, 2004 (the "Vanderbilt Sale Order"). The Vanderbilt Sale Order became final on September 2, 2005, by virtue of the dismissal of an appeal filed by the Rocky Beach Association, Inc. The Vanderbilt Purchase and Sale Agreements contained numerous contingencies that required fulfillment prior to a closing on the Property and it also provided for Vanderbilt to carry the costs of the Property during the term of the Vanderbilt Agreements. From and after September 2005 up through February 2007, the Property remained under contract with

Vanderbilt.

Vanderbilt Termination

During the term of the Vanderbilt Agreement, Vanderbilt was unable to reach agreement with the City regarding a number of contingencies including the unit count for the development. In October 2006, the City of Warwick made demand upon the Receiver for the demolition of certain structures under R.I.G.L. § 23-27.3-100 et. seq. and the Receiver in turn made demand for Vanderbilt to assume the costs of such demolition. Initially, Vanderbilt refused the Receiver's demand, however, after negotiation Vanderbilt agreed to the release of its $500,000.00 deposit to the Receiver in consideration for the termination of the Vanderbilt Agreements.

Post Vanderbilt Negotiations

Commencing in February, 2007, the Receiver began marketing the Property for sale and discussed potential projects with numerous prospective buyers. Due to the inability of Vanderbilt to make any significant progress in obtaining the necessary approvals to meet the contingencies in the Vanderbilt Agreements, the Receiver determined that it would be in the best interest of the estate and the Participants to seek a prospective purchaser that did not require any contingencies to close on the Property. While the Receiver recognized that the ultimate purchase price for an agreement containing contingencies would likely be higher, the Receiver determined that the time and risk associated with such an agreement did not ultimately weigh in favor of such a contract. During this same period, the Receiver maintained an open dialogue with the City relative to the prospect of a separate sale of a discreet portion of the Property to take advantage of an existing $2,200,000.00 grant from the

National Oceanographic & Atmospheric Administration ("NOAA").

By the Spring of 2007, the Receiver had received expressions of interest in a non-contingent sale from two parties that would also involve the sale of certain acreage to the City. One group was headed by Nicholas Cambio (the "Cambio Group") and the other group consisted of the individuals affiliated with Rocky Point Partners, LLC ("Rocky Point Partners").

Because the Cambio Group was offering $19,000,000.00 payable within approximately eight months from closing, the Receiver continued negotiations solely with this Group throughout most of the summer of 2007[1]. In August 2007, the Cambio Group significantly altered the structure of its proposed transaction by seeking a staggered payout to the Receiver over some period of years. Thereafter, the Receiver and the Cambio Group continued negotiations for a brief period. On or about September 5, 2007, the Receiver presented its final proposal to the Cambio Group. Mr. Cambio determined that his group would be unable to commit to the terms required by the Receiver and indicated that he was no longer interested in the transaction.

Having been unable to come to an agreement with the Cambio Group, the Receiver contacted Rocky Point Partners, which indicated its continued willingness to proceed with a purchase of the back portion of the property. After some rapid negotiations between the Receiver and Rocky Point Partners, the parties were able to negotiate a purchase and sale agreement. Having already reached agreement with the City in August, 2007, the Receiver was able to present the Court with two separate

[1] The original proposal between the Receiver and the Cambio Group called for a closing to occur in September 2007, with payment of a $4,500,000.00 at the closing and the balance due and payable in March 2008.

purchase and sale agreements representing the sale of the Property for $20,000,000.00.

Sale To The City And AARPP

On September 30, 2007, the Receiver filed a Motion (the "Motion to Sell") seeking approval for the sale of the Property pursuant to a purchase and sale agreement (the "City Purchase and Sale Agreement") with the City of Warwick with respect to approximately forty-one acres of the Property (the "City Parcel") for the purchase price of $4,400,000.00 to be designated as open space, and a purchase and sale agreement with Rocky Point Partners, LLC (the "Rocky Point Purchase and Sale Agreement"), together with the City Purchase and Sale Agreement, the "Purchase and Sale Agreements") for the remaining acreage of the Property (the "Rocky Point Parcel"), for the purchase price of $15,600,000.00.

On October 24, 2007, the Court entered an Order granting the Receiver's Motion to Sell and set a hearing on confirmation of the sale for November 14, 2007. Prior to the confirmation hearing, Atlantic American Rocky Point Partners Group, LLC ("AARPP") submitted an offer of $17,161,000.00 for the Rocky Point Parcel but failed to provide the necessary evidence of its financial capacity to qualify as a bidder. Due to the prior failed negotiations and dealings with Nicholas Cambio, who was affiliated with AARPP, the Receiver required AARPP to deposit $12,000,000.00 with its own counsel as evidence that AARPP had the financial capacity to close on or before March 28, 2008. After hearing from the parties, the Court approved the sale to the City of Warwick and scheduled a subsequent hearing for December 5, 2007, to determine the qualification of AARPP as a bidder.

The Order (the "City Parcel Sale Order") entered approving the sale to the City of Warwick, specifically provided for a reconveyance of the City Parcel back to the Receiver if the sale of the Rocky Point Parcel is not consummated on or before March 28, 2008.[2] The purpose of this provision was to allow for the closing on the City Parcel prior to December 31, 2007, thereby enabling the City to take advantage of a $2,200,000.00 grant from the National Oceanic & Atmospheric Administration ("NOAA").[3]

AARPP was ultimately determined to be the successful bidder and an Order (the "Rocky Point Parcel Sale Order") was entered approving the sale to AARPP. Pursuant to paragraph 6 of the Rocky Point Parcel Sale Order, the Receiver was granted authority to proceed with the sale of the Rocky Point Parcel to Rocky Point Partners at its original bid of $15,600,000.00 in the event AARPP was unable to close. AARPP was unable to close and the Receiver sought an extension of the time for recording the instruments of reconveyance to allow for the prospective sale to Rocky Point Partners, LLC. On April 2, 2008, the Court granted an extension for recording the reconveyance documents to allow for the prospective sale to Rocky Point Partners. The Order entered by the Court extending the deadline for reconveyance provided for consummation of the sale of the Rocky Point Parcel on or before August 4, 2008.

<u>Rocky Point Partners Termination and Participation Buy Out</u>

Prior to the completion of its due diligence period, Rocky Point Partners opted to terminate the purchase and sale agreement (the "Rocky Point Agreement") for the Rocky

---

[2] The Receiver structured the transaction to allow for a reconveyance due to the concerns relative to the impact of an outright conveyance to the City on the value of the back acreage and because Lovett indicated, through counsel, that she would object to any outright conveyance to the City. By virtue of Ms. Lovett's most recent filing it appears she has altered her position on this issue and now appears amenable to permitting the finalization of the sale to the City of Warwick.

[3] On December 31, 2007, the Receiver and the City of Warwick closed on the City Parcel

Point Parcel. On July 7, 2008, the Receiver notified the Court that Rocky Point Partners had opted to terminate the Rocky Point Agreement. Due to the termination, the Receiver is presently obligated to record the reconveyance instruments on or about August 4, 2008.

In anticipation of the potential for the termination of the Rocky Point Agreement, the Receiver began exploring the potential for repurchasing the participation interests of the Participants by virtue of SBA funding and requesting that the Court modify its prior Orders and permit the finalization of the sale to the City of Warwick. The Receiver as lead lender, has the option to repurchase any Participant's interest for the sum of the Participant's outstanding investment, plus any charges or interest earned but undistributed less all outstanding expenses. The Receiver recently completed its analysis of the approximate administrative expenses through September 30, 2008, which are approximately $9,200,000.00.

The preferred participation interests of Lovett provide for rights in addition to those accorded junior participants. Specifically, the preferred participation interests have a right to demand turn over of the collateral from the lead lender to the control of the preferred participants two years after foreclosure[4] and, in addition, the preferred participants are given priority in payment (after administrative expenses) in the event of liquidation of the collateral.[5] Because of these provisions, the junior participants are put in a precarious position if the preferred participants exercise the power to take control of the collateral as such preferred participants would only need to realize the administrative expenses and amount they deem as a reasonable recovery from a sale of the Property.

[4] The Receiver does not dispute that two years have elapsed since the foreclosure of the property that is the collateral for the loan in question.

[5] The transfer of the Collateral does not relieve the Lovett entities from the obligation to pay administrative expenses first from the sale of the collateral or, in any way, void the junior participants interests and an argument to the contrary is not advanced by the Lovett entities.

Thus, the transfer of the Property would effectively render the junior participation interests valueless with little hope of any recovery. To prevent against such an outcome, the participation interests provide the lead lender with the power to repurchase any Participant's interest at any time.

After extensive negotiations with Lovett, the Receiver is recommending a buy out of these participation interests for the approximate amount of $4,200,000.00[6] provided the sale to the City of Warwick is made final and the Receiver is granted authority to use such funds to complete the repurchase of the Lovett participation interests.[7]

## ARGUMENT

### A. IT IS IN THE BEST INTERESTS OF THE MONETA ESTATE TO ALLOW THE BUY OUT OF LOVETT

Paragraph 1 of the receivership Order states that "The Receiver is appointed for the purpose of marshaling and liquidating all of Moneta's assets and satisfying the claims of creditors in the order of priority as determined by this Court." Paragraph 2 further defines the Receiver's mandate stating that it "... shall assume and control the operation of Moneta and shall pursue and preserve all of its claims."

One of the principal purposes of the e receivership Order is to provide the Receiver with the power to fully investigate the facts surrounding the assets of the receivership estate, and to properly and impartially evaluate such assets in order to determine the proper method of liquidating the assets. At the same time, the injunctive

---

[6] The Receiver intends to reserve a portion of the buyout price in reserve to account for anticipated administrative claims that have not yet been determined by the Court. To the extent such administrative claims are less than the reserve the Lovett Participants will receive a distribution based upon the existing interests held under the participation agreements.

[7] Because the Receiver and Lovett have reached agreement over the administrative expense issues raised in the Lovett Motion, the Receiver will not address each point but does note its objections to such contentions.

provision of the Order prevents all others who may have a claim against the same asset from enforcing their claims to the possible detriment of the Receivership Estate without approval from the Court.

After due consideration, the Receiver believes it is necessary to buy out Lovett to preserve any potential recovery for the remaining Participants, which includes the Moneta Receivership Estate. Without such approval, the preferred participation agreements held by Lovett s provide for turn over of the Property and a distribution scheme that effectively strips the remaining Participants of any recovery from the sale of the Property. As such, the Receiver submits that it is in the best interests of the Receivership Estate to allow for the repurchase of the Lovett participation interests.

## B. THE COURT HAS AUTHORITY TO MODIFY ITS PRIOR ORDERS AFFECTING THE SALE OF PROPERTY

Rule 66 of the Federal Rules of Civil Procedure governs the applicability of the Rules to receivership proceedings and it states as follows:

> These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.[8]

The United States District Court has not adopted any specific Local Rule(s) applicable to receivership proceedings. See LR Cv 5 through 81. Therefore, the Court must be guided by the historical practice in federal courts in administering an estate. See Phelan v.

[8] Rule 66 was amended effective December 1, 2007, however, the comment relative to the amendment indicates that the amendment was done as part of the "restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent through the rules. These changes are intended to be stylistic only." FRCP Rule 66, Advisory Committee Notes 2007 Amendments.

Middle States Oil Corp., 210 F.2d 360 (2nd Cir. 1954).

Under Rule 60(b)(6), the Court may grant relief from an Order for any justifiable grounds not set forth in subsections (1) through (5) of the Rule. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864; 108 S. Ct. 2194, 2204; 100 L. Ed. 2d 855, 875 (1988). As a court of equity has traditionally held the power to modify an order affecting a sale of property, Rule 60(b)(6) appears to provide the mechanism by which the Court may exercise this historical federal power by allowing for relief from a sale order.

While Courts of equity hold the discretionary power to amend an order affecting the sale of property, public policy dictates that such a sale should not be disturbed except for substantial reasons. See Manson v. Duncanson, 166 U.S. 533, 547; 17 S. Ct. 647, 652; 41 L. Ed. 1105, 1110 (1897). In exercising such authority a Court must determine the material nature of the amendment sought and the prejudice to interested parties. See Quinn v. S.S. Jian, 235 F. Supp. 975, 977 (Dist.MD 1964) (holding in the context of confirmation of a judicial sale that non-material modification after sale extending only the time for payment where no party is prejudiced was within the discretion of the Court).

In the present situation, the Receiver and the City of Warwick have closed on the sale of the City Parcel and the Receiver is presently holding $4,400,000.00 in an interest bearing account, which will be refunded to the City in the event of a reconveyance under the City Parcel Sale Order. The modification of this Court's prior Orders to permit the finalization of the sale to the City of Warwick and payment of such portion of those funds free from all other claims as is necessary to buy out the Lovett Participants would be beneficial to the Receivership Estate and remaining Participants. If the Court does not

modify its prior Orders, the Receiver will be required to record the instruments of reconveyance on or about August 4, 2008, resulting in the termination of the sale to the City of Warwick and the loss of the sale proceeds of $4,400,000.00. Without such a repurchase, the remaining Participants will be effectively stripped of any possible recovery from the sale of the Property in the event the Property is turned over to the preferred Participants. In addition, the Receiver submits that no party in interest would suffer prejudice as a result of permitting the Receiver to effectuate the repurchase by finalizing the sale to the City.

## CONCLUSION

For all of the reasons stated above, the Receiver requests that the Court modify its prior Orders to allow the Receiver to use the sale proceeds from the sale to the City of Warwick free from all claims and interests to buy out the participation interests of Lovett.

Respectfully submitted,

U.S. Small Business Administration as
Receiver for Moneta Capital Corporation
By its Attorneys,

/s/ Thomas E. Carlotto

Thomas E. Carlotto #6088
Shechtman Halperin Savage, LLP
1080 Main Street
Pawtucket, RI 02860
401-272-1400
401-272-1403 (fax)

Dated: July 24, 2008

**CERTIFICATE OF SERVICE**

*I HEREBY CERTIFY* that a true and correct copy of the RECEIVER'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO THE MOTION OF NANCY TROY LOVETT, NANCY TROY LOVETT SELF-DIRECTED INDIVIDUAL RETIRMENT ACCOUNT AND THE RAUL LOVETT MARITAL TRUST OR , IN THE ALTERNATIVE, CROSS MOTION OF THE RECEIVER was furnished via U.S. Mail, postage pre-paid this 24th day of July, 2008 to the following:

Jeffrey C. Schreck, Esquire
99 Wayland Avenue
Suite 200
Providence, RI 02906

Northeast Capital Pension Trust
c/o Arnold Kilberg & Co.
285 Governor Street
Providence, RI 02906

William J. Delaney, Esq.
Tillinghast, Licht, Perkins, Smith & Cohen, LLP
10 Weybossett Street
Providence, RI 02903

William R. Grimm, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2393

Patrick Conley, Esq.,
1445 Wampanoag Trail
Suite 203
East Providence, RI 02915

Christine Bush, Esquire
Duffy & Sweeney, LTD
One Turks Head Place
Suite 1200
Providence, RI 02903

Thomas Almeida, Town Solicitor
Town of Cumberland
P.O. Box 7
Cumberland, RI 02864

H. Marc Tepper
Buchanan Ingersoll, P.C.
1835 Market Street, 14th Floor
Philadelphia, PA 19103-2985

Robert D. Wieck
MacAdams & Weick Inc.
101 Dyer Street
Providence, RI 02903

Louis A. Geremia, Esq.
Geremia & DeMarco, Ltd.
99 Wayland Avenue
Providence, RI 02906

Joseph Ferrucci, Esquire
Ferrucci Russo
49 Weybosset St.
Providence, RI 02903

Lisa Dinerman, Esq.
Assistant United States Attorney
50 Kennedy Plaza
Providence, RI 02903

Allan E. Hanson, Esq.
U.S. Small Business Administration
380 Westminster Street
Providence, RI 02903

Andrew S. Richardson, Esq.
Ch. 7 Trustee
C.R. Amusements, LLC
182 Waterman Street
Providence, Rhode Island 02906

Jeffrey H. Gladstone, Esq.
Robert Taylor, Esq.
Partridge, Snow & Hahn
180 South Main Street
Providence, RI 02903

Edward Bertozzi, Esq.
Edwards & Angell, LLC
2800 Financial Plaza
Providence, RI 02903-2499

Norman J. Bolotow, Esq.
95 Chestnut Street
Providence, RI 02903

Vincent A. Indeglia, Esq.
Indeglia & Associates
1485 South County Trial, 2nd Fl
East Greenwich RI 02818

David B. Sholem
Meyer Capel
306 West Church Street
P.O. Box 6750
Champaign, IL 61826-6750

Gregory T. Parkos Revocable Trust
Joan M. Parkos Revocable Trust 1994
c/o Norman J. Bolotow, Esq.
99 Wayland Avenue
Providence, RI 02906

Ruth Haber Schonbrun
3507 Oak Way
Palm Air
Apartment 508
Pompano Beach, FL 33068

Estate of Arthur Schonbrun
c/o Lynn Stand, Executrix
555 North Avenue
Fort Lee, NJ 07024

Kevin McKenna, Esquire
23 Acorn Street
Providence, RI 02903

Robert Stolzman, Esq.
Adler Pollock & Sheehan
1 Citizens Plaza, 8th Floor
Providence, RI 02903

Paul Agatiello, 401K Pension Plan
220 Sanctuary Drive
East Greenwich, RI 02818

Joan Kilberg
3554 Pine Lake CT
Delray Beach, FL 33445-9045

Jeannine Bourassa
71 Bliss Road
Newport, RI 02840

Peter G. Berman, Esq.
Raskin & Berman
116 East Manning Street
Providence, RI 02906

Craig M. Scott, Esq. And
Stacey Nakasian, Esq.
Duffy & Sweeney, Ltd.
300 Turks Head Building
Providence, RI 02903

Lawrence L. Goldberg, Esq.
96 Jefferson Boulevard
Warwick, Rhode Island 02888

Richmond Square Capital Corp.
c/o Harold Schein
13844 Le Bateau Isle
Palm Beach Gardens, FL 33410-1262

Law Office of Lee Rohn
1101 King Street
Christiansted, St Croix,
U.S. Virgin Islands 00820

K. Joseph Shekarchi, Esq.
33 College Hill Road, Suite 15-E
Warwick, RI 02886

Frederick Raffeto, Esq.
1500 Lawrence Avenue
Ocean, NJ 07712

Steven M. McInnes, Esquire
Attorney for American Shipyard
Company, LLC
38 Bellevue Ave.
Newport, RI 02840

Waste Management of Rhode Island
575 West Street # 210
Mansfield, MA 02048-1164

Blish & Cavanagh, LLP
30 Exchange Terrace
Providence RI 02903

Township of Hopewell
C/o Michael W. Herbert, Esq.
Herbert, Van Ness, Cayci & Goodell
22 Chambers Street
Princeton, NJ 08542

Tax Collector
Cumberland Fire District
1530 Mendon Road
Cumberland, RI 02864

Town of Dighton, Massachusetts
Attn: Brendan Herbeck
Office of Town Clerk
979 Somerset Avenue
Dighton, MA 02715

Ocean State Planners
1255 Oaklawn Avenue
Cranston, RI 02920

John C. Gyorgy, Esquire
Noel & Gyorgy, LLP
50 South Main Street
Providence, RI 02903

John Dean, Esquire
Boisseau, & Dean LLP
155 South Main Street, Ste. 405
Providence, RI 02903

City of Providence
Tax Collector
City Hall
25 Dorrance
Providence, RI 02903

Richard Michaels, Esq.
Mintz Levin
1 Financial Center
Boston, MA 02111

Ann Mitchell, Esquire
Toll Brothers, Inc.
250 Gibraltar Road
Horsham, PA 19044

Francis and Rita DiMento
c/o DiMento & Sullivan
7 Fanueuil Hill Marketplace
Boston, MA 02169

Henry Varra
350 Chestnut Street
West Newton, MA 02465

James Callahan
269 Chapman Street
Canton, MA 02021

167 Hotel on the Cay Timeshare
c/o Donovan M. Hamm, Jr.
Attorney at Law
5030 Anchor Way, Gallows Bay
St Croix, U.S. Virgin Islands 00820

Belisle Group
c/o Donovan M. Hamm, Jr.
Hamm & Barry
5030 Anchor Way, Christianstead
U.S. Virgin Islands 00820

Rodio & Brown, Ltd.
Stephen A. Rodio, Esq.
91 Friendship Street
Providence, RI 02903

Jennifer C. Christopher
c/o Pamela Lynn Colon
Law office Lee J. Rohn
101 King Street, Suite 2
Christianstead St. Croix 00820

Northeast Capital Corporation
c/o Arnold Kilberg & Company
285 Governor Street
Providence, RI 02906

Phillip Belisle
3732 Village Center Way
Hoover, AL 35226-6327

Neal J. McNamara, Esquire
Holland & Knight, LLP
One Financial Plaza
Suite 1800
Providence, RI 02903

United States Department of Labor
Office of the Solicitor
John F. Kennedy Federal Building
Room -375
Boston, MA 02203

Gina Martin, Esquire
GOODWIN PROCTER, LLP
53 State Street
Exchange Place
Boston, MA 02109

Thomas W. Rigby, III, Esq.
SBA as Receiver for Fairway Cap.
Office of General Counsel
4093rd Street, SW, 7th Floor
Washington, DC 20416

Metacom Medical Assoc., Inc.
Paul Agatiello Pension Plan
c/o Paul Agatiello, M.D.
220 Sanctuary Drive
East Greenwich, RI 02818

Harris K. Weiner, Esquire
Law Office of Jeffrey B. Pine
321 South Main Street, Ste. 302
Providence, RI 02903

Cheryl Asquino, Esquire
Narragansett Bay Commission
One Service Road
Providence RI 02905

Acropolis Enterprises, Inc.
285 Governor Street
Providence, RI 02906

Gregory Hamilton, Esquire
154 Waterman Avenue
Providence, RI

Liu & Lu Realty, LLC
2856 Main Street
Glastonbury, CT 06033

John Earle, Esq.
City Solicitor of Warwick
3275 Post Road
Warwick, RI 02886

Gary Dale Kilberg
90 Irving Avenue
Providence, Rhode Island 02906

Karen Davidson, Esquire
1 Ship Street
Providence, RI 02903

Arnold Goodstein
Vanderbilt Capital, LLC
136 West Richardson Avenue
Summerville, SC 29483

Mary Kay, Esquire
Department of Environmental
Management
235 Promenade Street
Providence RI 02908

Zachary G. Darrow
Darrow Everett LLP
One Turks Head Place
Suite 500
Providence RI 02903

Legal Department
Coastal Programs Division N/ORM3
Office of Ocean and Coastal Resource
Management
NOAA Ocean Service
1305 West Highway
Silver Spring, MD 20910

Elisabeth Morgan
Coastal Programs Division N/ORM3
Office of Ocean and Coastal Resource
Management
NOAA Ocean Service
1305 West Highway
Silver Spring, MD 20910

Elizabeth Mountz
Coastal Programs Division N/ORM3
Office of Ocean and Coastal Resource
Management
NOAA Ocean Service
1305 West Highway
Silver Spring, MD 20910

Estate of Arthur Schonbrun
c/o Lynn Stand, Executrix
555 North Avenue
Fort Lee, NJ 07024

Ruth Haber Schonbrun
3507 Oak Way
Palm Air
Apartment 508
Pompano Beach, FL 33068

Gibraltar Corporation
1 Richmond Square
Providence, RI 02906

Patricia Betz
238 Armington Street
Cranston, RI 02905

Wallace Capital
C/o U.S. Small Business
Administration
409 3rd Street, SW
7th floor
Washington, D.C. 20416

The following parties were served via electronic notice on July 24, 2008:

| | |
|---|---|
| Atlantic American Rocky Point PartnersGroup, LLC | dfinkle@wszlaw.com |
| Joesph Avanzato | javazanto@apslaw.com, vlanctot@apslaw.com |
| Peter G. Berman | peter@raskinberman.com |
| Edward J. Bertozzi, Jr. | ebertozzi@eapdlaw.com |
| Jeffrey S. Brenner | jbrenner@nixonpeabody.com, proefile@nixonpeabody.com, myrone@nixonpeabody.com |
| Christopher R. Bush | cbush@riag.ri.gov, randrade@riag.ri.gov |
| Frank Caprio | frankcaprio@hotmail.com |
| Thomas E. Carlotto | tcarlotto@shslawfirm.com |
| Michael W. Carroll | mwc@carroll-law.net |
| William J. Delaney | wdelaney@tllaw.com, mmorrison@tllaw.com |
| John William Dineen | jwdineen1@yahoo.com |
| Joseph Michael DiOrio | jmdiorio@dioriolaw.com, spthomas@dioriolaw.com |

| | |
|---|---|
| Christopher R.Donato | chris.donato@usdoj.gov |
| Arlene Embrey | Arlene.embrey@sba.gov |
| Diane Finkle | dfinkle@wszlaw.com, efile@wszlaw.com, joyce.gauthier@wszlaw.com |
| Douglas A. Giron | dgiron@shslawfirm.com, asalvaggio@shslawfirm.com, dsmith@shslawfirm.com, phalperin@shslawfirm.com |
| Jeffrey H. Gladstone | jhg@psh.com, pds@psh.com |
| William R. Grimm | wgrimm@haslaw.com |
| Preston. W. Halperin | phalperin@shslawfirm.com, dsmith@shslawfirm.com |
| Vincent A. Indeglia | vaindeglia@aol.com, betty@indeglialaw.com |
| Stephen A. Izzi | sizzi@mosesafonso.com |
| S. Michael Levin | mlevin@wszlaw.com |
| Diana E. Pearson | diana@dpearsonlaw.com |
| Everett A. Petronio, Sr. | eapjr@loep.com |
| James P. Redding | reddingj@gtlaw.com |
| Peter D. Ruggiero | ruggieropd@ruggiero-orton-brochu.com |
| Jeffrey C. Schreck | jschreck@msn.com |
| Robert K. Taylor | rkt@psh.com, tlc@psh.com |
| H. Marc Tepper | marc.tepper@bipc.com |
| Harris K. Weiner | hkw@pinelaw.com, mav@pinelaw.com |
| Robert D. Wieck | rweick@mwdglaw, mdaugherty@mwdglaw.com |
| David A. Wollin | dwollin@apslaw.com, dciuffetelli@apslaw.com, epickett@apslaw.com |
| Donald E. d'Entremont | d'entremont.donald@dol.gov, bos-sol-ecf@dol.gov |

/s/ Thomas E. Carlotto